RECEIVED
AUG 18 2017
CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BROCK FREDIN,

        Plaintiff,

--against--

LINDSEY MIDDLECAMP,

        Defendant.

Case No. 0:17-cv-03058-SRN-FLN

**AMENDED COMPLAINT**
Jury Trial Demanded

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se*, hereby alleges the following against Defendant Lindsey Middlecamp ("Defendant"):

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendant for defamation *per se*, abuse of process and intentional infliction of emotional distress under Minnesota state common law. The events that give rise to the claims in this action began in January 2017 when Defendant began making unprompted and defamatory posts about Plaintiff on an anonymous Twitter account she operates known as @CardsAgstHrsmt. Prior to Defendant making these posts, Plaintiff never had any interaction with Defendant whatsoever and did not even know who she was. Since that time, Defendant has continued to harass Plaintiff, publish defamatory content about him on a seemingly weekly basis and commence frivolous proceedings against him in retaliation for Plaintiff's legitimate criticism of Defendant's unlawful conduct.

2. Plaintiff's defamation claims arise from Defendant's posting patently false and sordid statements and allegations concerning Plaintiff on her anonymous Twitter account @CardsAgstHrsmt. Specifically, Defendant posted on her Twitter account in January 2017 that

1

SCANNED
AUG 1 8 2017
U.S. DISTRICT COURT ST. PAUL

Plaintiff "raped" an unnamed woman – a woman that likely does not even exist and was wholly contrived by Defendant. This bogus and incendiary rape allegation is categorically untrue and defamatory, the publication of which on the @CardsAgstHrsmt Twitter account has inflicted substantial emotional distress on Plaintiff.

3. Defendant did not stop with posting the false rape allegation, unfortunately. Instead, Defendant subsequently continued for months to harass Plaintiff by repeatedly posting false and defamatory statements about him on her anonymous Twitter account @CardsAgstHrsmt. This included repeatedly posting Plaintiff's photograph and derogatory statements about Plaintiff on the @CardsAgstHrsmt Twitter account with false assertions claiming to "warn" single women that Plaintiff "victimized" women. She persisted even after Plaintiff requested that cease posting about him on her @CardsAgstHrsmt Twitter account.

4. Defendant is a public official employed as an Assistant City Attorney for the City of Minneapolis, Minnesota. Because of her position as a public official employed by the taxpayers of the State of Minnesota and the City of Minneapolis, Defendant admittedly attempts to conceal her identity by posting on the @CardsAgstHrsmt Twitter account anonymously. It is no secret why Defendant wishes to keep her identity anonymous based on the content of the posts on the @CardsAgstHrsmt Twitter account. They include sexist screeds about a non-existent "epidemic of street harassment against women," intolerant extremist rants about "rape culture" and ostensibly harassing posts targeting individual men by publicizing defamatory statements and unlawful content about them.

5. To illustrate, Defendant has taken the hate-filled rhetoric on her @CardsAgstHrsmt Twitter account so far that she proudly orchestrated and promotes a male

"slut-shaming" campaign known as Hashtag #ShirtlessShamers and #ShirtlessShamers2016. In these posts, Defendant admittedly singles out individual men by unlawfully posting nude and semi-nude photographs of them on her @CardsAgstHrsmt Twitter account.[1] These photo collages of nude and semi-nude men are often accompanied by defamatory statements about the men labelling them "stalkers," "harassers" and "abusers." Even more disturbing, many of these photo collages that Defendant stitches together herself for the #ShirtlessShamers campaign have photographs of nude and semi-men in comprising positions, such as using the bathroom, engaging in sexual acts or with their pubic hair and penis visible.[2]

6. Defendant's @CardsAgstHrsmt Twitter account also contains links to her YouTube videos as part of her so-called "Stop Street Harassment" campaign. In these videos, Defendant apparently walks up and down city streets with her phone in a continuously recording mode attempting to eavesdrop on conversations between pairs or groups of men. When Defendant finds a target, she verbally and physically confronts them in profanity-laced tirades, which she records on her phone. Defendant intentionally hides her face in these videos and posts them anonymously to her YouTube account.[3]

7. Based on the content on the @CardsAgstHrsmt Twitter account, is plain to see why Defendant would want to keep her identity anonymous. Defendant is a public official

---

[1] Defendant's conduct of publicly posting semi-nude photographs of men without their consent on her @CardsAgstHrsmt Twitter account violates Minnesota's newly enacted Revenge Porn Law. See Minn. Stat. § 617.261. It is also believed that she obtains the photographs from the men unlawfully and without their consent.

[2] See, e.g., https://twitter.com/CardsAgstHrsmt/status/870046804624191489; https://twitter.com/CardsAgstHrsmt/status/866784093182152706; https://twitter.com/CardsAgstHrsmt/status/832232755702353920;

[3] See https://www.youtube.com/channel/UCVTnOjyu7gxMCbh00aLS3gQ.

3

employed by the City of Minneapolis. She is also an Ivy-League educated attorney admitted to practice law in the State of Minnesota. If she were to be connected to disparaging and offensive content published on the @CardsAgstHrsmt Twitter account, Defendant's job would no doubt be placed in jeopardy, she may face disciplinary action from the Minnesota State Bar and could potentially face criminal liability under Minnesota's Revenge Porn laws. Of even more concern is the fact that timestamps on the vast majority of the inappropriate and unlawful posts on the @CardsAgstHrsmt Twitter account reveal that Defendant made them during regular business hours while employed as an Assistant City Attorney for the City of Minneapolis presumably using government computers and equipment.

8. When Defendant refused to cease her campaign to denigrate Plaintiff's reputation through her anonymous @CardsAgstHrsmt Twitter account, Plaintiff fired back by exercising his First Amendment right to criticize Defendant's maintaining and operating a flagrantly bigoted, sexist and harassment-focused Twitter account anonymously. In doing so, Plaintiff publicly exposed her name connecting her to the @CardsAgstHrsmt Twitter account. Defendant swiftly responded by retaliating against Plaintiff in which she commenced a baseless state court proceeding against Plaintiff seeking a Harassment Restraining Order ("HRO") in Ramsey County District Court. Defendant commenced the proceeding not because Plaintiff was in any way harassing her. Rather, she has acknowledged throughout the HRO proceeding that she has sought the HRO because Plaintiff has compromised her anonymity with respect to her maintaining and posting on the @CardsAgstHrsmt Twitter account. In other words, Defendant abused process by bringing the HRO proceeding against Plaintiff for the collateral purpose of

retaliating against Plaintiff and attempting to silence his legitimate First Amendment free speech publicly exposing her as the owner of the @CardsAgstHrsmt Twitter account.

9. As a result of Defendant's repeated tortious acts, Plaintiff has suffered significant damages and harm. This includes, but is not limited to, harm to Defendant's personal and professional reputation, lost employment opportunities, frivolous litigation expenses that Plaintiff has been forced to expend as a result of Defendant's frivolous litigation tactics and severe emotional harm inflicted through her continued campaign of harassment directed at him using the anonymous @CardsAgstHrsmt Twitter account. Consequently, Plaintiff seeks actual and punitive damages in addition to injunctive relief.

## JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. The Court also has federal question jurisdiction under 28 U.S.C. § 1331.

11. Venue is proper pursuant to 28 U.S.C. § 1332(b)(1) and (b)(2) because the events that gave rise to this action occurred in this Judicial District.

## THE PARTIES

12. Plaintiff Brock Fredin is a citizen of the State of Wisconsin and resides at an address of 1905 Iris Bay, Hudson, WI 54016.

13. Upon information and belief, Defendant Lindsey Middlecamp is a citizen of the State of Minnesota and resides at an address of 2110 Aldrich Avenue S., Minneapolis, MN 55405.

## **FACTUAL ALLEGATIONS**

### Background

14. Defendant is an attorney admitted to practice law in the State of Minnesota. She graduated from the University of Pennsylvania Law School in 2011. Defendant is a public official and is currently employed as an Assistant City Attorney for the City of Minneapolis.

15. Apart and aside from her law practice, Defendant is a fantasist and militant feminist bent on pressing forward a radical sexist agenda and desperate for attention. She runs a patently offensive, abusive and bigoted Twitter account entitled "Cards Against Harassment" that has a handle of @CardsAgstHrsmt. On this Twitter account, Defendant claims to be bringing awareness to so-called "Street Harassment." Yet, she uses the Twitter account – which she runs anonymously – to post abusive and vulgar feminist screeds and fantastical propaganda about "rape-culture" and non-existent "street harassment" of women. As a part of the offensive content on her Twitter account, Middlecamp targets and disparages individual men that she alone deems worthy of public ridicule by knowingly publishing false and defamatory information about them to admittedly shame and stigmatize them. Indeed, she labels these targeted men as "stalkers," "harassers" and "abusers" in an effort to publicly destroy their reputations, many times without these men even knowing that she is posting about them.

16. By way of example of her abusive conduct, Defendant has started and actively promotes the Twitter hashtags called #ShirtlessShamers and #ShirtlessShamers2016 in which she targets and admittedly "slut-shames" men through posts on her @CardsAgstHrsmt Twitter

account. Specifically, she accepts private photographs from scorned women of shirtless, naked and/or semi-naked men usually depicted in a sexually compromised manner. In the photo collages she creates for posts using the #ShirtlessShamers and #ShirtlessShamers2016 hashtags, Defendant habitually posts photographs of nude and semi-nude men without their consent using the bathroom, engaging in sexual acts or with their penis and pubic hair exposed. In addition, she scours the Internet downloading photographs of unwitting men who post innocuous photographs without shirts, which Defendant merges into collages. Defendant then posts these photo collages – without consent from the men – on her Twitter account under the #ShirtlessShamers and #ShirtlessShamers2016 Hashtags along with defamatory statements about the men in an attempt to permanently shame and stigmatize them on the Internet for the rest of their lives. These posts demonstrably break Minnesota's Revenge Porn laws. *See* Minn. Stat. § 617.261 (forbidding the "disseminat[ion] [of] an image of another person depicted in a sexual act or whose intimate parts are exposed").

17. In addition to the @CardsAgstHrsmt Twitter account, Defendant maintains a website and YouTube account called "Stop Street Harassment" (which are linked to on the @CardsAgstHrsmt Twitter account) in which she posts videos depicting her confronting and harassing men on the street who she deems have engaged in so-called "Street Harassment." Specifically, in these videos, Defendant walks up and down city streets with her phone in a continuously recording mode attempting to eavesdrop on conversations between men. When Defendant finds a target, she verbally and physically confronts them in profanity-laced tirades, which she records on her phone. Defendant intentionally hides her face in these videos and posts them anonymously to her YouTube account. Apart and aside from the harassing nature of these

videos, they are nothing more than low-brow attention seeking publicity stunts by Defendant who desperately seeks affirmation and attention for her self-imagined feminist cause.

18. Needless to say, Defendant's conduct is terribly disturbing and frightening. It is apparent that Defendant has created and runs the @CardsAgstHrsmt Twitter account (and accompanying website and YouTube accounts) as a revenge site seeking to ruin the lives of innocent and unsuspecting men to further a radical agenda. It is all the more concerning that she attempts to run the @CardsAgstHrsmt account anonymously, using her legal training to shield herself and escape liability for her unlawful and defamatory acts.

### Defendant Middlecamp's Defamation of Plaintiff Fredin

19. Unfortunately, Plaintiff became a victim of Defendant's campaign of misandrist terrorism. Without ever having met Plaintiff, she began making unprompted posts on the @CardsAgstHrsmt Twitter account about him in January 2017. Indeed, for months Defendant repeatedly made posts on this Twitter account about Plaintiff in an attempt to smear his character, cause him to lose his employment and subject him to public ridicule. Between January and February 2017, Defendant obsessively published over 40 posts on the @CardsAgstHrsmt Twitter account about Plaintiff as part of her campaign of harassment. The overwhelming majority of these posts contained patently false and defamatory statements concerning Plaintiff.

20. Defendant's smear campaign and defamatory postings concerning Plaintiff Fredin escalated to the point where she began publishing wholly baseless and unsubstantiated claims that Plaintiff engaged in horrific criminal conduct. On February 22, 2017, Defendant posted on

the @CardsAgstHrsmt Twitter account patently false and bogus claims that Plaintiff raped an unnamed women in 2010:



The rape allegations in Defendant's posts are patently false and defamatory *per se*. Plaintiff has never been accused of rape until Defendant began her campaign to publicly smear him. Upon information and belief, the allegations by the unnamed woman in Defendant's post claiming she went to the St. Louis Park police are to Plaintiff's knowledge entirely false and contrived. Indeed, Plaintiff believes that Defendant solicited this unnamed women to make these false allegations against him or, much more likely, Defendant fabricated the existence of this unnamed woman altogether to sensationalize and drum-up attention to her defamatory and harassing series of posts about Plaintiff.

21. Defendant published the above post containing defamatory statements about Plaintiff knowing that the statements were false and with reckless disregard for the truth. Moreover, to the extent she did not fabricate the existence of the unnamed woman, Defendant

clearly adopted the defamatory statements of the unnamed woman in her Twitter post by making the statements that the woman was a "rape survivor" and stating that Plaintiff "remains free." Upon information and belief, Defendant's defamatory post was published and seen by thousands of third-parties and remain publicly available on her @CardsAgstHrsmt Twitter account.

22.  As a result of Defendant's unlawful conduct and defamatory statements in the above-referenced post, Plaintiff has suffered immense harm. Defendant's defamatory statements have permanently stigmatized Plaintiff and subjected him to public ridicule. Moreover, Plaintiff has suffered the loss of employment and financial opportunities as a result Defendant's false and defamatory statements mentioned above. Plaintiff also continues to suffer severe and ongoing mental anguish due to Defendant's unlawful statements about him.

## Defendant Middlecamp's Abuse of Legal Process

23.  Unfortunately, Defendant's harassment of Plaintiff did not stop with the publication of the false rape claims on the @CardsAgstHrsmt Twitter account. Defendant continued to post disparaging and defamatory posts on the @CardsAgstHrsmt Twitter account from January to April 2017. These posts included false assertions that Plaintiff was a "danger" to women in Minnesota, that he "victimized" women and that Plaintiff was a "stalker." (*See* Exhibit 1.) Defendant even went to such extraordinary lengths to find Plaintiff's online dating profiles and post them to the @CardsAgstHrsmt Twitter account claiming to "warn" women and falsely insinuating that Plaintiff was a threat to them. (*See id.*) Defendant's harassment and defamation of Plaintiff persisted even though she openly acknowledged on her @CardsAgstHrsmt Twitter account that Plaintiff requested that she cease the needless and baseless attacks directed at him. (*See id.*)

10

24.  When it became clear that Defendant had no intention of removing her defamatory statements about Plaintiff or ceasing her campaign of harassment, Plaintiff began to exercise his First Amendment right to criticize Defendant and link her to the @CardsAgstHrsmt Twitter account.  Initially, Plaintiff did not know who owned the @CardsAgstHrsmt Twitter account.  In order to find out who to direct a communication to requesting that the posts on the @CardsAgstHrsmt Twitter account cease, Plaintiff was forced to conduct an entirely appropriate and reasonable investigation to discern the identity of the person who was repeatedly publishing defamatory content about him with the account.  Plaintiff did so by contacting a journalist who had written articles about Defendant, her Twitter account and her "Stop Street Harassment" campaign and asking them who operated the @CardsAgstHrsmt Twitter.  Plaintiff eventually learned Defendant's identity.  After Defendant rebuked Plaintiff's requests that she remove the defamatory content about him on the @CardsAgstHrsmt Twitter account, Plaintiff published a post on his personal Facebook account on April 4, 2017 linking and identifying Defendant by name as the owner and operator of the @CardsAgstHrsmt Twitter account.

25.  On April 14, 2017, Defendant retaliated against Plaintiff by initiating a proceeding against him in Ramsey County District Court seeking a Harassment Restraining Order.  In it, Defendant made baseless allegations that Plaintiff had "harassed" or "stalked" her. Her allegations consisted of a purported public Facebook post offering criticism of her actions, 3-5 public Twitter comments in which Plaintiff named Defendant as the perpetrator of the defamatory statements about him on the @CardsAgstHrsmt Twitter account, and two emails sent to third-parties whereby Plaintiff was seeking to uncover the identity of the owner of the @CardsAgstHrsmt Twitter account.  Defendant's allegations in the HRO petition are so

outlandish (much like her rhetoric published on the @CardsAgstHrsmt Twitter account) that she has attempted to brand Plaintiff a "stalker" in the HRO proceeding for sending a precise and well-worded email seeking the identity behind the @CardsAgstHrsmt account to a Journalist who had written and published pieces covered the @CardsAgstHrsmt Twitter account. As previously mentioned, Plaintiff trying to discern Defendant's identity so that he could contact her to ask her to remove the defamatory posts or otherwise take other appropriate and lawful legal action against her for her conduct.

26.     However, Defendant's harassment allegations were merely a rouse to conceal her true purpose in commencing the action as illustrated by her own statements in the HRO petition. Throughout the HRO petition, Defendant acknowledged that she seeks to maintain her anonymity in operating the @CardsAgstHrsmt Twitter account. Specifically, she states that she "posted content on a **personal anonymous**, social media account identifying Respondent [Fredin] ..." and that "[t]his post was made on a Twitter account that is **not and never has been associated with my real life identity, my surname, my employer ....**"

27.     On February 1, 2017, the Defendant sent a direct message to an anonymous email the Defendant alleges is owned by the Plaintiff. In the email, she made sweeping statements in an attempt to intimidate, harass, and once again defame the Plaintiff in yet another attempt to conceal her identity. She even posted the email to her public Twitter account to offer a secondary public communication portal to ensure he would feel intimidated. (*See* Exhibit 1.) In another absurd deviation from logic and illustrative of Defendant's insincere character, Defendant falsely claimed in the HRO petition that she "did not direct the post to Respondent [Fredin] or tag him or **in any matter attempt to communicate with Respondent.**" Given the fact Defendant

emailed the Plaintiff directly and then posted the email to her Public Twitter account, it is apparent she did in fact communicate with him in ongoing efforts to continually invade his privacy, harass, and conceal her own identity.

28.  In her exhaustive efforts to perpetuate her hate-filled, unlawful and defamatory activities online against defenseless men, without notifying her employer and the tax payers of Minnesota, Defendant further stated in the HRO petition that she has "gone to great lengths to omit (her employer) from all online presence and media appearances and which my employer protects as a matter of data privacy." Defendant's employer, the City of Minneapolis Attorney's Office, is responsible for prosecuting crimes throughout the City. It is quite apparent that Defendant wanted to maintain her anonymity with respect to her ownership of the @CardsAgstHrsmt Twitter account to avoid accountability and the consequences the unlawful and offensive content published on the account.

29.  In so far as the Plaintiff made a public Facebook post criticizing her conduct and mapping her identity onto the @CardsAgstHrsmt hate group platform, it was apparent that Defendant, suddenly running low on options, escalated her campaign of harassment directed at Plaintiff even further by filing the HRO petition. Defendant commenced the HRO proceeding against Plaintiff not because he actually harassed her. Rather, Defendant did so for the unlawful purpose of attempting to silence and deprive Plaintiff of constitutional free speech criticism right of a public official. By her own admissions, Defendant commenced the HRO proceeding with the collateral purpose of retaliating against Plaintiff for publicly linking her to the @CardsAgstHrsmt Twitter account. Indeed, the entire HRO proceeding is an unlawful attempt by Defendant to preserve her anonymity as the owner and operator of the @CardsAgstHrsmt

Twitter account in order to conceal and disassociate her identify with the wrongful acts with the wrongful acts perpetrated through the account. Defendant no doubt seeks to silence Plaintif in order to maintain her ability to attack and defame men anonymously online, post revenge pornography with the #ShirtlessShamers hashtag and to discretely maintain her cult status as a "Social Justice Warrior" through her contrived "Stop Street Harassment" campaign.

### COUNT I:  DEFAMATION *PER SE*

30. Plaintiff re-alleges and incorporates by reference paragraphs 1-29 of the Complaint as though fully set forth herein:

31. Defendant has made false and defamatory statements concerning Plaintiff as set forth above in this Complaint.

32. Defendant's statements are statements of fact and are demonstrably false.

33. Defendant's defamatory statements accused Plaintiff of committing a serious crime, *i.e.* rape, and are therefore defamatory *per se*.

34. Defendant has published and continues to publish these false statements to numerous individuals on her Twitter account.

35. Defendant enjoys no privilege concerning these statements.

36. As a result of Defendant's defamatory statements and unlawful conduct, Plaintiff has suffered severe harm and is entitled to actual and punitive damages in an amount to be proven at trial. Plaintiff also seeks injunctive relief requiring Defendant to remove the defamatory material and posts from her Twitter account @CardsAgstHrsmt.

### COUNT II: ABUSE OF PROCESS

37. Plaintiff re-alleges and incorporates by references paragraph 1-36 of this Complaint as though fully set forth herein.

38. Defendant used civil process against Plaintiff by filing commencing a proceeding against Plaintiff on April 14, 2017 seeking a Harassment Restraining Order in Ramsey County District Court.

39. Defendant initiated the HRO proceeding against Plaintiff with an unlawful and collateral purpose. Specifically, Defendant filed the HRO petition against Plaintiff in an effort to retaliate against him and to silence his legitimate exercise of his First Amendment right to free speech criticizing Defendant as a public official for unlawful and offensive acts. Furthermore, Defendant initiated the HRO proceeding against Plaintiff in an effort to intimidate, harass and silence Plaintiff from speaking out or taking action against Defendant so that Defendant could conceal and disassociate herself from prior unlawful acts perpetrated by her.

40. As a result of Defendant's malicious abuse of process, Plaintiff has suffered damages, including but not limited to, damage to his reputation and incurring legal expenses defending himself in abusive legal proceedings initiated by Defendant. Plaintiff is entitled to actual and punitive damages in an amount to be determined at trial.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41. Plaintiff Fredin re-alleges and incorporates by references paragraph 1-40 of this Complaint as though fully set forth herein.

42. Defendant has engaged, instigated, and directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard for causing, emotional

distress to Plaintiff, namely the publication and dissemination of patently false and sensational statements about him on her public Twitter account.

43. As a proximate result of Defendant's actions, Plaintiff has suffered, and continues to suffer severe and extreme emotional distress, entitling him to actual and punitive damages, in an amount to be proven at trial.

## JURY TRIAL DEMANDED

Plaintiff demands a jury on all issues which may be properly tried by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court:

a. Enter judgment in favor of Plaintiff against Defendant;

b. Enter judgment awarding Plaintiff compensatory damages on all counts herein to compensate Plaintiff for Defendant's activity complained of herein and for any injury complained of herein, inclusive of interest and costs, in an amount to be determined at trial;

c. Enter judgment awarding punitive, exemplary, enhanced and/or treble damages as allowed by applicable state and federal law in an amount to be determined at trial;

d. Enter judgment awarding Plaintiff injunctive relief requiring Defendant to remove her defamatory statements concerning Plaintiff from her Twitter account @CardsAgstHrsmt;

e. Enter judgment awarding Plaintiff his fees and costs reasonably incurred in this action as allowed by applicable state and federal law; and

f. Order such other relief that the Court deems just and appropriate.

Dated: August 18, 2017
Hudson, WI

/s/ Brock Fredin
_____
Brock Fredin
1905 Iris Bay
Hudson, WI 54016
(612) 424-5512 (tel.)
brockf12@gmail.com
*Plaintiff, Pro Se*