## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin, | Case No. 17-CV-03058 SRN-FLN |
| Plaintiff, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND TO STRIKE** |
| Lindsey Middlecamp, | |
| Defendant. | |

### INTRODUCTION

Following a contested hearing in state court, Defendant Lindsey Middlecamp obtained a harassment restraining order barring Plaintiff Brock Fredin from directly or indirectly contacting her. Unfortunately, this litigation affords Fredin a new venue for communicating with Middlecamp. It facilitates his efforts to disrupt Middlecamp's privacy and professional life as an attorney. However, because Counts II and III of Fredin's Amended Complaint fail to state a claim upon which relief can be granted, those counts should be dismissed under Fed. R. Civ. P. 12(b)(6).

Fredin's Amended Complaint contains three counts: (1) a defamation claim based on a February 22, 2017 tweet by Middlecamp sharing another local woman's social media post identifying Fredin as a rapist; (2) an abuse of process claim based on the harassment restraining order obtained by Middlecamp against Fredin; and (3) an intentional infliction of emotional distress claim arising from the same general set of facts related to Middlecamp's social media posts about Fredin.

Middlecamp adamantly denies a number of Fredin's key factual allegations. However, even if these disputed allegations are taken as true—as they must be at this Rule 12(b)(6) stage—Fredin has still failed to plead facts sufficient to state a plausible claim for abuse of process (Count II) or intentional infliction of emotional distress (Count III) under Minnesota law. Therefore, those claims should now be dismissed.

Furthermore, the Amended Complaint is replete with inflammatory and scandalous language focused on a singular purpose: to harass Middlecamp. These offending allegations, discussed in further depth below, are immaterial to Fredin's defamation claim. And they have no bearing on Fredin's request for relief. Fredin could only have included these claims in order to prejudice the Court or to bypass the protections contained in Ms. Middlecamp's restraining order against Fredin. For these reasons, this Court should also exercise its discretion under Fed. R. Civ. P. 12(f) to limit the Amended Complaint to *material* allegations by striking all inflammatory, scandalous and abusive allegations.

## **FACTUAL BACKGROUND**[1]

In his Amended Complaint, Fredin alleges that in early 2017, Middlecamp authored tweets that related to stalking, harassment, and sexual violence by Fredin against women who are not parties to this action. (*See* Amend. Compl. ¶¶ 2-3, 15, 19-20, 23, ECF Doc. 5.) Fredin acknowledges in the Amended Complaint that in response to these tweets, he sought

---

[1] The factual background is based on the allegations in the Amended Complaint, taken as true for purposes of this motion only, and those additional documents attached to the Declaration of Matthew Schaap falling within the scope of Fredin's Amended Complaint or are otherwise appropriate for this Court's consideration on a motion to dismiss.

2

to "expose" Middlecamp as the owner of an anonymous Twitter account, which focused on gender issues. (*Id.* at ¶¶ 8, 24.) Fredin further acknowledges that following his discovery of Middlecamp's identity, he engaged in a campaign against her. This included social media posts and contacts with third parties that conveyed derogatory assertions about Middlecamp. (*See id.*at ¶ 25.)

Although the Amended Complaint minimizes the severity of Fredin's conduct with regard to Middlecamp, Fredin affirmatively alleges that on April 14, 2017, Middlecamp commenced sought a harassment restraining order against Fredin in Ramsey County. (*Id.*) This Court may consider the publicly available documents comprising the harassment restraining order as within the scope of Fredin's pleadings, and should take judicial notice of the final Order and the findings issued on October 2, 2017 (after two evidentiary hearings were held in July and September 2017.) (*See* Schaap Decl., Ex. 1 ("Harassment Restraining Order").)

The Harassment Restraining Order includes the following factual findings: Fredin directed communications to Middlecamp's law school and legal professional associations sharing identifying information about Middlecamp and accusing her of criminal conduct, and eventually directed communications to her employer of a similar nature. (*Id.* at ¶ 5(d) and (f).) Fredin also registered the domain name "lindseymiddlecamp.com" and published content on that web site identifying Middlecamp and her employer, accusing her of criminal conduct, and soliciting others to make complaints against her. (*Id.* at ¶ 5(e).) Fredin repeatedly sent emails and other electronic communications to third parties sharing

information about Middlecamp, her employer, and her anonymous Twitter account, and accusing her of criminal conduct. (*Id.* at ¶ 5(f).)  Even after Middlecamp obtained an *ex parte* harassment restraining order on April 14, 2017, Fredin contacted an attorney adverse to Middlecamp in active litigation where Middlecamp, an attorney, was acting as counsel of record. (*Id.* at ¶ 5(g).)

The Harassment Restraining Order concluded that the repeated actions by Fredin were intended to or did have a substantial adverse effect on Middlecamp's safety, security, or privacy. (*Id.* at ¶ 6.) The Harassment Restraining Order bars Fredin from any direct or indirect contact with Middlecamp, and further states that "Writings or other communications by Respondent which are made available for public hearing or viewing and which contain addresses, telephone numbers, photographs or any other form of information by which a reader may contact, identify or locate [Middlecamp] are acts of harassment and are prohibited by this order.

Prior to commencing this federal action in the United States District Court, and prior to the  final order in Middlecamp's harassment restraining order proceeding, Fredin served Middlecamp with a Ramsey County state court defamation action containing similar allegations to those included in the current suit. (Court File No. 62-CV-17-3994.) Ramsey County denied Fredin's request to waive the filing fee for that action based on improper venue, directing him to re-file the action in Hennepin County. Instead, Fredin commenced the instant action.

## ARGUMENT

### I.   MOTION TO DISMISS STANDARD.

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal citation omitted).

Courts considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) must generally ignore materials outside the pleadings, but it may consider "materials that are part of the public record or do not contradict the complaint" as well as materials that are "necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)(citing *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir.), *cert. denied*, 527 U.S. 1039 (1999); *Piper Jaffray Cos. v. National Union Fire Ins. Co.*, 967 F.Supp. 1148, 1152 (D. Minn. 1997); and  5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 299 (1990)).

**II.    COUNT II OF THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE FREDIN HAS NOT PLED SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR ABUSE OF LEGAL PROCESS.**

Under Minnesota law[2], the tort of abuse of process has two elements: (1) the existence of an ulterior purpose; and (2) the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether or not the result might otherwise be lawfully obtained. *Hoppe v. Klapperich*, 28 N.W.2d 780, 786 (Minn. 1947); *VanDanacker v. Main Motors Sales Co.,* 109 F.Supp.2d 1045, 1057 (D. Minn. 2000). "The gist of such an action is the misuse or misapplication of the process, after it has once been issued, for an end other than that which it was designed to accomplish." *Behrendt v. Rassmussen*, 47 N.W.2d 779, 783 (Minn. 1951).

Here, Fredin's Amended Complaint alleges that Middlecamp's ulterior purpose in seeking a harassment restraining order against Fredin was to preserve her privacy and anonymity with regard to her anonymous twitter account. The public filings comprising the harassment restraining order proceeding and the findings of fact comprising the Harassment Restraining Order (all of which are publicly available and fall within the scope of these pleadings), demonstrate that Middlecamp raised both privacy and safety concerns in seeking a harassment restraining order.

Even if this Court assumed for purposes of this motion that Middlecamp's sole motive in seeking a harassment restraining order was to preserve the privacy between an

---

[2] Minnesota law applies to the substantive claims in this diversity action. *See Archer v. Pavement Specialist, Inc.,* 278 F.3d 845, 846–47 (8th Cir. 2002).

anonymous twitter account and her personal identifying details or offline professional activities, the Amended Complaint fails to sufficiently plead facts supporting the second abuse of process element (the use of the process to accomplish a result not within the scope of the proceedings in which it was issued.) That is because protecting privacy is one of the core stated purposes of harassment restraining orders under Minnesota law. Minn. Stat. § 609.748, which governs the purpose and process for harassment restraining orders, plainly provides that privacy concerns may alone be a sufficient basis to obtain a restraining order:

> (a)  "Harassment" includes
>
> (1)…repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, **or privacy** of another, regardless of the relationship between the actor and the intended target…

Minn. Stat. § 609.748 (emphasis added.)

The Minnesota Court of Appeals has affirmed that it is fully consistent with the intent and scope of Minnesota's harassment restraining order process for trial courts to issue a harassment restraining order in response to repeated contact made to third parties with an adverse effect on the victim's privacy. *See Johnson v. Arlotta,* No. A11-630, 2011 WL 6141651, at *4 (Minn. Ct. App. Dec. 12, 2011)(affirming the issuance of a restraining order in response to the respondent's repeated contacts to third parties and publication of blog posts about the petitioner, which were deemed detrimental to petitioner's privacy.)

Here, the result ultimately obtained by Middlecamp was a harassment restraining order with specific provisions protecting her safety and privacy—the very outcome the

harassment restraining order process is designed to provide. Fredin has failed to plead any facts which could support a claim that Middlecamp misused the process to obtain any improper result outside the scope of intended relief; his abuse of process claim should therefore be dismissed for failure to state a claim upon which relief may be granted.

**III.   COUNT III OF THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE FREDIN HAS NOT PLED SUFFICIENT FACTS TO SUPPORT A PLAUSIBLE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

Fredin's intentional infliction of emotional distress claim is legally deficient in a number of different respects. Therefore, it should be dismissed under Fed. R. Civ. P. 12(b)(6).

Minnesota law generally disfavors claims seeking damages for intentional infliction of emotional distress. *See Mrozka v. Archdiocese of St. Paul & Mpls.*, 482 N.W.2d 806, 813 (Minn. App. 1992), *review denied* (Minn. May 24, 1992). Such a claim requires the injured party to prove that (1) the conduct of the defendant was so extreme and outrageous that it passed the boundaries of decency and is utterly intolerable to the civilized community, (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress to plaintiff; and (4) the distress was so severe that no reasonable person could be expected to endure it. *See Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003); *Kelly v. City* of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999); *Hubbard v. United Press Int'l*, 330 N.W. 2d 428, 438-39 (Minn. 1983).

In the present case, Fredin's claim for intentional infliction of emotional distress fails to meet minimum pleading requirements in at least two ways. First, even when viewed

in a light most favorable to Fredin, the allegations establish only that Middlecamp's social media account shared allegations of sexual violence and other misconduct by Fredin originating from third parties. As a matter of law, her alleged behavior did not sink to the level of outrageously offensive conduct utterly intolerable to the civilized community as required for a claim of intentional infliction of emotional distress.

Courts applying Minnesota law have found far more severe factual scenarios insufficient to state a claim for intentional infliction of emotional distress. For instance, in *Strauss v.Thorne*, 490 N.W.2d 908 (Minn. Ct. App. 1992), *review denied* (Minn. Dec. 15, 1992), the defendant was a physician who wrote on a patient's chart that he was concerned about possible child abuse by the patient's spouse. *Id*. at 910. That notation caused the plaintiff's family to lose its medical coverage and to be denied coverage by another insurer. *Id*. at 910-11. The physician admitted to the patient that he intended to "get back" at him for "talking to him in a manner that he found offensive." *Id*. at 911. The Court of Appeals ruled that as a matter of law, the defendant's conduct was not sufficiently "extreme or outrageous by reasonable standards" to satisfy the first element of intentional infliction of emotional distress. *Id*. at 913.

The Minnesota Supreme Court reiterated the limited nature of the tort of intentional infliction of emotional distress and the high standard of proof required in *Langeslag v. KYMN, Inc.*, 664 N.W.2d 860, 864 (Minn. 2003). That Court noted that liability for intentional infliction of emotional distress may not be based on "'insults, indignities, threats, annoyances, petty oppression, or other trivialities.'" *Id*. at

865 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The *Langeslag* court reversed the jury's verdict finding intentional infliction of emotional distress, concluding it was unsupported by sufficient evidence, despite the following facts: (1) the alleged tortfeasor made two false reports to police; (2) the tortfeasor repeatedly threatened the alleged victim with legal action; and (3) the tortfeasor frequently engaged the alleged victim in loud arguments at their workplace. *Id*. The Supreme Court held that these actions did not constitute extreme and outrageous conduct as a matter of law. *Id*. at 865-68. Here, Middlecamp sharing publicly available accusations made by third parties about Fredin on her anonymous social media account clearly falls short of the egregiousness required.

In addition to Fredin's failure to set forth outrageous, conscience-shocking conduct by Middlecamp, Fredin has also failed to adequately plead the severity of his purported mental distress. In his Amended Complaint, Fredin alleges generally that he has suffered "mental anguish" as a result of Middlecamp's statements on social media; however, Courts applying Minnesota law have found a number of more specifically enumerated symptoms of distress insufficient as a matter of law to support a claim for intentional infliction of emotional distress. *See Besett v. Wadena County,* Civ. No. 10–934 (JRT/LIB), 2010 WL 5439720 at * 17 (D. Minn. Dec. 7, 2010) (gathering cases rejecting depression, impaired ability to trust, damaged relationships with children, vomiting, skin rashes, stomach disorders, high blood pressure, crying spells, humiliation, embarrassment, insomnia, difficulty sleeping, anxiety, lightheadedness, and shortness of breath as sufficient to support a claim for intentional infliction of emotional distress). A general "mental anguish"

allegation contained in the Amended Complaint should therefore be deemed insufficient to support a claim for intentional infliction of emotional distress.

For these reasons, Count III of Fredin's Amended Complaint should be dismissed for failure to state a claim.

**IV.    IN ADDITION TO DISMISSING COUNTS II AND III FROM THE AMENDED COMPLAINT, THE COURT SHOULD STRIKE SCANDALOUS AND IMMATERIAL ALLEGATIONS, WHICH SERVE ONLY TO FURTHER HARASS MIDDLECAMP.**

Fredin's Amended Complaint also includes blatantly scandalous and immaterial allegations designed purely to harass. Because of this, the Court should exercise its discretion to strike offensive, scandalous, immaterial allegations from the pleadings under Fed. R. Civ. P. 12(f).  Fed. R. Civ. P. 12(f) is designed to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case. *See Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997)(citation omitted). Allegations should be stricken as scandalous if they are irrelevant and "degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court." *Id.* (citation omitted); *see also* 2 *Moore's Federal Practice* § 12.37 [3], at 12-97;  *In re 2TheMart.com, Inc. Sec. Litig.,* 114 F. Supp.2d 955, 965 (C.D. Cal. 2000)(stating that a matter is scandalous where it casts 'a cruelly derogatory light on a party or other person.'"); *Judicial Watch, Inc. v. U.S. Dept. of Commerce,* 224 F.R.D. 261, 263 (D. D.C. 2004)(striking allegations of "outrageous," "atrocious," "improper," "unethical," and "dishonest" conduct as an impermissible attempt to place before the Court irrelevant, impugning and/or inflammatory statements in an obvious attempt to impugn the character

11

of persons employed by the defendant).

The decision to strike allegations from a pleading is within the sound discretion of the trial judge. *Wiggins v. Philip Morris, Inc.,* 853 F.Supp. 457, 457 (D.D.C. 1994). Although motions to strike under Rule 12(f) are generally not favored, a decision to strike is appropriate where the pleading's language is clearly prejudicial. *Tektel, Inc. v. Maier,* 813 F.Supp. 1331, 1334 (N.D. Ill. 1992)(citations omitted). Where, as here, a motion to strike removes scandalous name-calling or immaterial clutter from the case, it serves to expedite, not delay. *Foster v. Pfizer Inc.*, 00-1287-JTM, 2000 WL 33170897, at *2 (D. Kan. Dec. 12, 2000) (citation omitted)(striking allegations as immaterial, impertinent, and scandalous because they only served to confuse and inflame public opinion).

The need for judicial discretion is particularly evident here because Fredin filed this federal suit after Middlecamp applied for a harassment restraining order, and has included allegations and identifying details intentionally connecting Middlecamp, her home address, and her employer with a previously anonymous twitter account, allegations of criminal misconduct, and name-calling. This conduct was found to constitute harassment in the Harassment Restraining Order.

Middlecamp's home street address, educational background, and place of employment are immaterial to Fredin's claims, appear to have been included in the Amended Complaint for no purpose other than to further distribute previously private information about Middlecamp, and should be stricken. (*See* Amend. Compl. at ¶¶ 4, 13, 14.) Allegations related to Middlecamp's anonymously conducted advocacy against street

harassment and her anonymous social media series related to gendered double standards are immaterial to Fredin's claims, and should be stricken from the Amended Complaint. (*See id.* at ¶¶ 5, 6, 15, 16, 17, 18.) Allegations that Middlecamp misused resources of her employer or violated revenge porn laws are scandalous, prejudicial, and immaterial to Fredin's claims and should be similarly stricken. (*See id.* at ¶¶ 5, 7.)

In addition to the foregoing substantive categories of allegations that should be stricken, the Amended Complaint is replete with inflammatory language that is both prejudicial to Middlecamp and detracting from the dignity of the Court, including but not limited to the following:

- Fredin characterizes Middlecamp's social media activities as "sexist screeds about a non-existent 'epidemic of street harassment against women,' intolerant extremist rants about 'rape culture' and ostensibly harassing posts targeting individual men by publicizing defamatory statements and unlawful content about them" (Amend. Compl., ECF No. 5 at ¶ 4); "hate-filled rhetoric" (*Id.* at ¶ 5); "patently offensive, abusive and bigoted," "abusive and vulgar feminist screeds and fantastical propaganda about "rape culture" and non-existent "street harassment" of women. (*Id.* at ¶ 15.)

- Fredin describes Middlecamp as a "fantasist [sic] and militant feminist bent on pressing forward a radical sexist agenda and desperate for attention." (*Id.*)

- Fredin describes Middlecamp's anonymous anti-street harassment documentation and advocacy as "harassing," characterized by "profanity-laced tirades," and "nothing more than low-brow attention seeking publicity stunts by Defendant who desperately seeks affirmation and attention for her self-imagined feminist cause." (*Id.* at ¶ 15.)

- Fredin describes Middlecamp's conduct as "terribly disturbing and frightening," and Middlecamp's website as "a revenge site seeking to ruin the lives of innocent and unsuspecting men to further a radical agenda." (*Id.* at ¶ 18.)

- Fredin describes Middlecamp's online activities as a "campaign of

misandrist terrorism." (*Id.* at ¶ 19.)

In fact, the few paragraphs in Fredin's Amended Complaint that do *not* include inflammatory, scandalous language are those paragraphs that actually set forth relevant and material (though disputed) allegations relating to Fredin's defamation count. (*See id.* at ¶¶ 20, 21, 22.)

Given the unique nature of this case—and the extreme, scandalous language included in the Amended Complaint—it appears this litigation is being and will continue to be used by Fredin as a vehicle to harass Middlecamp in ways the Harassment Restraining Order is designed to prohibit. Therefore, Middlecamp respectfully requests that this Court exercise its discretion under Fed. R. Civ. P. 12(f) and limit the Amended Complaint to only the allegations (and language) that is material to Fredin's remaining defamation claim.

## CONCLUSION

For these reasons, Defendant respectfully requests that this Court 1) dismiss Counts II and III of Plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(6), and 2) strike portions of the Amended Complaint under Fed. R. Civ. P. 12(f).

Dated:  November 17, 2017

**DOUGHERTY, MOLENDA, SOLFEST, HILLS & BAUER P.A.**

s/ Matthew J. Schaap
Matthew J. Schaap, I.D. 323421
mschaap@dmshb.com
Robert B. Bauer, I.D. 227365
rbauer@dmshb.com
14985 Glazier Avenue, Suite 525
Apple Valley, Minnesota 55124
P: (952) 953-8816
F: (952) 432-3780

**Attorneys for Defendant**