**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| BROCK FREDIN,<br><br>             Plaintiff,<br><br>    --against--<br><br>LINDSEY MIDDLECAMP,<br><br><br>             Defendants. | Case No. 0:17-cv-03058-SRN-FLN<br><br><br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE PORTIONS OF THE AMENDED COMPLAINT** |

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se,* hereby submits this memorandum of law in opposition to Lindsey Middlecamp's ("Defendant") November 17th, 2017 Motion to Dismiss and Strike in the above-captioned matter.

**PRELIMINARY STATEMENT**

As set forth herein, Defendant's Motion to Dismiss Counts II and III of the Amended Complaint should be denied. Plaintiff has plausibly alleged facts to support claims for abuse of process (Count II) and intentional infliction of emotional distress (Count III) in the Amended Complaint as discussed more fully below. Furthermore, Defendant's demand that the Court strike portions of the Amended Complaint is completely frivolous and only further lends credence to Plaintiff's contentions that Defendant believes she is above the law. The portions of the Amended Complaint

1

identified by Defendant are plainly relevant to Plaintiff's claims – particularly Plaintiff's claim for defamation *per se* that Defendant does not oppose in her Motion to Dismiss.

As an initial matter, Defendant's memorandum of law in support of her Motion to Dismiss is replete with material misrepresentations, distortions of the facts and assertions that are simply not pertinent to the Motion to Dismiss. Plaintiff must set the record straight as a result. Defendant's attempts to portray herself as a victim are farcical and detached from reality. Rather, as the Amended Complaint sets forth in detail, Defendant is an individual who uses the Internet to terrorize, bully and destroy the lives of any man, many of whom she has never met, she alone decides should be publicly shamed while hiding behind the camouflage of an anonymous Twitter account, @CardsAgstHrsmt.

This course of behavior evident by the fact that nowhere in her Motion to Dismiss does she even attempt to deny or raise a defense to the assertion that she maliciously defamed Plaintiff. Indeed, Defendant would like for this Court to believe that this matter begins and ends with her state court action filed against Plaintiff seeking a harassment restraining order ("HRO"). What Defendant would like this Court to ignore that is that she authored over forty (40) defamatory and harassing tweets from the @CardsAgstHrsmt Twitter account targeting Plaintiff – a person that she had never met – before she ever sought the HRO. And, Defendant further glosses over the fact that she only sought an HRO in an attempt to conceal her identity after Plaintiff began engaging in legitimate and lawful actions to discern her identity and pursue legal remedies in order to remove the defamatory tweets Defendant posted about Plaintiff. As the Amended Complaint details, Defendant filed the state court proceeding seeking the HRO proceeding for the collateral

and illegitimate purpose of attempting to silence Plaintiff and as a means of thwarting his ability to exercise his right to take legal action against her seeking the removal of the defamatory tweets.

What makes Defendant's conduct all the more unconscionable and outrageous, however, is the actual content of these tweets. Defendant's tweets targeting Plaintiff were not simply limited to petty name-calling. Rather, Defendant posted and ostensibly endorsed completely false assertions that Plaintiff had "raped" a woman. These assertions were accompanied by postings containing other personal information about Plaintiff, including photographs that Defendant had apparently "catfished" from Plaintiff unbeknownst to him. Without question, Defendant's behavior of knowingly posting false rape allegations targeting Plaintiff was plainly outrageous and crossed the line of civility and decency. In fact, as a result of Defendant's malicious campaign to disparage and defame Plaintiff across the Internet through her anonymous Twitter account, Plaintiff lost his job and has had difficulty securing permanent employment as a computer programmer for nearly a year.

This matter is all the more important, though, because the facts alleged in the Amended Complaint are not unique. Defendant has engaged in the same type of terrorizing and menacing behavior through her anonymous Twitter account to dozens upon dozens of men. A simple review of her Twitter account @CardsAgstHrsmt shows Defendant posting numerous photographs of unclothed men whereby she mocks and disparages them to her

followers for anyone on the Internet to see.[1]  By all appearances, it has become an obsession

for Defendant through which she receives publicity.  Regardless, Defendant seeks to strike

portions of the Amended Complaint that establishing this pattern of behavior – which is

directly relevant to Plaintiff's defamation claims – as an apparent means of protecting her

identity to prevent a floodgate of legal actions filed against her.  This Court should not

entertain Defendant's demands.  The allegations that Defendant seeks to strike from the

Amended Complaint plainly serve as background facts in addition to establishing an

ongoing pattern going directly to Defendant's state of mind and intent in authoring the

defamatory post about Plaintiff.

As a result, Plaintiff respectfully requests that this Court dismiss the motion in its

entirety for the reasons set forth more fully below.

### STATEMENT OF FACTS

Defendant is an Assistant City Attorney for the City of Minneapolis and operates

the Twitter account @CardsAgstHrsmt.  (*See* Am. Compl. at ¶¶ 3-4.)  As evidenced by her

own statements in this action, Defendant has gone to great lengths to conceal her identity

and ownership of the account.  (*See id*. at ¶ 26.).  She proclaims to use the

@CardsAgstHrsmt Twitter account as a mechanism to bring awareness to street

harassment.  (*See id.*)  In actuality, Defendant uses the anonymous Twitter account to

unlawfully defame and destroy men as part of her radical feminist agenda.  (*See id*. at ¶¶

5-8, 15-18.)  She does so by posting sensitive and disparaging information about individual

---

[1] *See* https://twitter.com/CardsAgstHrsmt/status/870046804624191489; *see also*
https://twitter.com/CardsAgstHrsmt/status/866784093182152706

men without their knowledge. (*See id*.)  This even includes posting nude and semi-nude photographs of men – which are apparently "catfished" by Defendant – without their knowledge as part of her "#ShirtlessShamers" campaign.  (*See id*. at ¶ 5.)  Thus, the apparent purpose of Defendant's concealing her identity and association with the @CardsAgstHrsmt Twitter account is to avoid civil liability and criminal for her unlawful conduct, to keep her public employer from finding out about her activities and to avoid potential disciplinary action by the state bar.

Plaintiff unfortunately fell victim to Defendant's harassment through the @CardsAgstHrsmt Twitter account.  Even though Defendant had never met Plaintiff, she began making disparaging post about him on the @CardsAgstHrsmt Twitter account in January 2017.  (*See* Am. Compl. at ¶ 19.)  Defendant did not limit herself to one post or even a handful of posts about Plaintiff on the anonymous Twitter account. (*See id*.)  Rather, between January 2017 and April 2017, Defendant obsessively posted over forty (40) separate tweets about Plaintiff in an attempt to disparage and irreparably stigmatize him. (*See id*.)

For example, Defendant publicly disparaged and defamed Plaintiff by calling him a "stalker" in one tweet, which was accompanied by a photograph of Plaintiff she had illegally obtained.  (*See* Am. Compl. at ¶ 23.)  She has even gone so far as to falsely assert in numerous tweets on the @CardsAgstHrsmt Twitter account that Plaintiff was a "danger" to women in Minnesota and that he has "victimized" women.  (*See id*.)  Defendant has further unlawfully posted multiple private photographs of Plaintiff on the @CardsAgstHrsmt Twitter account mocking, disparaging and publicly bullying Plaintiff.

5

(*See id*.)    These photographs were obtained where Defendant engaged in fraudulent "catfishing" schemes – *e.g.,* impersonating another person – to obtain the photographs. (*See id*.)

The crux of this lawsuit, however, concerns Defendant's egregious and completely baseless Twitter posts that Plaintiff had "raped" a woman.    On February 22, 2017, Defendant posted a tweet on the @CardsAgstHrsmt Twitter account asserting that Plaintiff had "raped" an unnamed woman (Defendant purportedly redacted the name of the woman in her post) in 2010:



(*See* Am. Compl. at ¶ 20.)    As the tweet shows, Defendant fully endorsed the unnamed woman's post.    (*See id*.)    Defendant acknowledges that the post was "shared w/ her [the

unnamed woman's] permission" evidencing that Defendant had communications with the unnamed woman, to the extent she even exists.[2] (*See id*.) Furthermore, Defendant makes the statement in the tweet that Plaintiff "remains free," which evidences an affirmative assert by Defendant that Plaintiff actually raped the unnamed woman. (*See id*.) As stated in the Amended Complaint, Defendant's assertions that Plaintiff "raped" a woman are unequivocally false and defamatory. (*See id*. at ¶ 21.)

When Plaintiff learned of the posting about him on the @CardsAgstHrsmt Twitter account, he began a lawful search to discern the identity of the owner of the account. (*See* Am. Compl. a ¶ 24.) Plaintiff contacted several individuals who had been referenced on the @CardsAgstHrsmt account and journalists who had written about Defendant's escapades. (*See id*. at ¶ 25.) Plaintiff eventually learned Defendant's identity and asked her to remove the defamatory posts. (*See id*.) Defendant refused and continued to persist in using the anonymous @CardsAgstHrsmt Twitter account to disparage and defame him through April 2017. (*See id*.)

When it became absolutely clear that Defendant had no intention of removing her defamatory statements about Plaintiff or ceasing her campaign of harassment, Plaintiff began to exercise his First Amendment right to criticize Defendant as a public official employed as an Assistant City Attorney and publicly link her to the @CardsAgstHrsmt Twitter account. (*See* Am. Compl. at ¶ 24.) On April 4, 2017, Plaintiff published a post

---

[2] As mentioned in the Amended Complaint, Plaintiff has serious doubts as to whether this unnamed woman even actually exists. Given her conduct and the other content on Defendant's @CardsAgstHrsmt account, it would not be surprising to learn that Defendant made the entire post up, which would corroborate the fact that there is no police report on file with the St. Louis Park Police Department concerning the purported incident as claimed in Defendant's post.

on his personal Facebook account identifying Defendant by name as the owner and operator of the @CardsAgstHrsmt Twitter account.  (*See id*.)   On April 14, 2017, Defendant retaliated against Plaintiff by initiating a proceeding against him in Ramsey County District Court seeking an HRO.  (*See id*. at ¶ 25.)

As Defendant points out, the HRO was granted.  (*See* Def. Op. Br. at 3-4.).  However, it was granted only after a hearing in which Plaintiff was unable to call witnesses in his defense, conduct appropriate cross-examinations of Defendant to discern the facts of the case or obtain critical and necessary discovery from Defendant.  In fact, it was learned after trial that Defendant had unlawfully withheld subpoenaed documents from Plaintiff that affirmatively showed he was not the registrar of the domain http://www.lindseymiddlecamp.com.  In other words, the Ramsey County District Court rubber-stamped the HRO petition in a proceeding that lacked any notion of Due Process.  Regardless, as explained below, Defendant's obtaining an HRO against Plaintiff does not preclude Plaintiff from seeking relief in this action.

Plaintiff brings this action – which was filed before an adjudication took place in the Ramsey County HRO proceeding – seeking redress against Defendant for her false and defamatory statements published on the @CardsAgstHrsmt Twitter account, her intentional infliction of emotional distress on Plaintiff and her abuse of legal process in filing and pursuing the state court HRO proceeding.

## LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts, when accepted as true, that state a facially plausible claim for relief." *Jefferson v. Roy*, 2017 WL 4325704, at *1 (D. Minn. Sept. 28, 2017) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The factual allegations must be sufficient to "raise a right to relief" in order to "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). "When determining whether a complaint states a claim for relief that is plausible on its face, a district court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor." *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).

## ARGUMENT

As set forth herein, Defendant's Motion to Dismiss and to Strike Portions of the Amended Complaint should be denied in its entirety. First and foremost, Plaintiff has alleged sufficient facts to support his claims of abuse of process (Count II) and intentional infliction of emotional distress ("IIED") (Count III). Plaintiff has properly asserted sufficient facts to raise a claim of abuse of process that Defendant brought the state court HRO proceeding for an illegitimate collateral purpose. Plaintiff has further alleged facts to support a claim for intentional infliction of emotional distress where Defendant has falsely accused Plaintiff of "rape" in a public and persistent Internet forum. Furthermore, the portions of the Amended Complaint that Defendant requests that this Court strike are plainly material and relevant to Plaintiff's defamation and abuse of process claims. Given

9

the facts of this case discussed below, striking any portion of Plaintiff's Amended Complaint is not warranted.

I.    Plaintiff Has Plead Facts to State a Claim for Abuse of Process Where He Has Alleged that Defendant Initiated that State Court HRO Proceeding for an Illegitimate and Collateral Purpose

Defendant's motion to dismiss Plaintiff's abuse of process claim should be denied. Under Minnesota law, "[t]he essential elements of a claim for abuse of process are (1) the existence of an ulterior purpose, and (2) the act of using the process to accomplish a result not within the scope of the proceeding in which it is issued, whether such result might otherwise be lawfully obtained, or not." *Power-Bel Const. Corp. v. Gondek*, 291 Minn. 386 (1971.); *see also Kittler and Hedelson v. Sheehan Props., Inc.*, 295 Minn.  "The gist of the action is the misuse or misapplication of legal process to accomplish an end other than that which it was designed to accomplish." *Power-Bel Const. Corp.*, 291 Minn. at 386.

Here, the Amended Complaint alleges facts to satisfy both elements of an abuse of process claim.  Plaintiff has alleged that Defendant filed her petition seeking an HRO for the collateral purpose of suppressing Plaintiff's legitimate and truthful exercise of his First Amendment right to criticize a public official.  (*See* Am. Compl. at ¶¶ 8, 24.)  Defendant is a government employee who is employed as an Assistant City Attorney for the City of Minneapolis.  She also runs the vitriolic @CardsAgstHrsmt Twitter account in which she disparages and defames men, which includes posting nude and semi-nude photographs of men without their knowledge as part of her "#ShirtlessShamers" campaign.  Many of these inappropriate posts occur during the workday while she is employed as an Assistant City

Attorney. As such, Plaintiff had a legitimate First Amendment right to criticize Defendant and bring public awareness to Defendant's deplorable conduct taking place on the City of Minneapolis' time. *See New York Times v. Sullivan*, 376 U.S. 254, 273 (1964) ("The right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is the central meaning of the First Amendment.") That exercise of Free Speech includes publicly linking Defendant to that @CardsAgstHrsmt Twitter account. As the Amended Complaint alleges, Defendant sought to curb Plaintiff's right to exercise his First Amendment rights by bringing the state court HRO proceeding with the collateral purpose of restricting Plaintiff's exercise of free speech be restricted.

Defendant attempts to claim that the HRO proceeding was brought because she has a privacy interest in maintaining her anonymity and from being publicly linked to the @CardsAgstHrsmt Twitter account. While Defendant may have a First Amendment right to engage in anonymous free speech in some circumstances, that does not mean she has the right to initiate an action to thwart Plaintiff from exercising his legitimate First Amendments rights or to retaliate against him from taking steps to discern Defendant's identity so that he could file appropriate legal action to redress the defamatory material she published about him. In other words, Defendant cannot claim a legitimate privacy right when she is posting defamatory material about Plaintiff on the Internet. "[T]he courts must balance the First Amendment rights of anonymous speakers with the right of aggrieved individuals to address legitimate claims against anonymous posters in a judicial forum." *Taylor v. Does 1-10,* 2014 WL 1870733, at *4 (E.D.N.C. May 8, 2017) (applying the "motion to dismiss" standard to determining whether an anonymous individual's identity

11

should be revealed in a defamation case); *see also In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011) (summarizing the standards for determining whether an anonymous individual's identity should be revealed in a defamation case).

Here, Defendant does not even challenge Plaintiff's claim of defamation *per se* in her motion to dismiss. She cannot therefore assert that she has a legitimate privacy expectation in maintaining her anonymity with respect to that defamatory posts she made about Plaintiff on the @CardsAgstHrsmt Twitter account. Thus, Plaintiff has sufficient plead a claim of abuse of process where he has alleged that Defendant initiated the state court HRO proceeding for the collateral purpose of curbing his First Amendment right to criticize Defendant as a public official, his right to seek redress in a judicial forum for her defamatory statements and as to retaliate against Plaintiff for exercising his free speech to publicly link Defendant to the @CardsAgstHrsmt account. Defendant's motion to dismiss Count II should be denied.

II. Plaintiff Has Sufficiently Alleged Facts to Support a Claim for Intentional Infliction of Emotional Distress

Defendant's motion to dismiss Plaintiff's IIED must be denied. Under Minnesota law, "[f]our elements are necessary to sustain a claim for intentional infliction of emotional distress: 1) the conduct must be extreme and outrageous; 2) the conduct must be intentional or reckless; 3) it must cause emotional distress; and 4) the distress must be severe." *Ferrell v. Cross*, 543 N.W.2d 111, 116 (Minn. 1996). "Extreme and outrageous conduct is conduct that is so atrocious that it passes the boundaries of decency and is utterly intolerable to the

civilized community." *State by Woyke v. Tonka Corp*, 420 N.Y.2d 624, 628 (Minn. 1988) (internal quotation marks omitted).

In her moving papers, Defendant asserts that she did not engage in "extreme or outrageous" conduct and therefore Plaintiff's IIED claim must be dismissed.[3]  (*See* Def. Op. Br. at 9-10.)  The Amended Complaint alleges that Defendant publicly published and continues to maintain on the Internet a Twitter post falsely accusing Plaintiff of rape. Defendant cites no analogous cases to support her contention that a false rape allegation is not "extreme and outrageous conduct."  Indeed, several courts throughout the United States have held that a false rape allegation is sufficiently "extreme and outrageous" conduct to support a claim for IIED.  *See Mangan v. Rumo*, 226 F.Supp.2d 250, 254 (D. Me. 2002) (holding that "[i]ntentionally false allegations of rape could amount to outrageous behavior intolerable in a civilized society"); *Iglesias v. O'Neal*, 2017 WL 1170835, at *3 (D.N.J. March 29, 2017) (holding that "it is certain that a false accusation of rape is intolerable in a civilized community").  Based on this persuasive authority, Defendant's contention that she Plaintiff's IIED claim should be dismissed for failure to allege "extreme and outrageous" conduct should be denied.

---

[3] Defendant attempts to diminish her conduct by claiming that she was only "sharing publicly available accusations made by third parties."  The Court should not accept this argument.  First, Defendant wholly endorsed that false rape allegations based on her own statements that "[h]e remains free," certainly implying Plaintiff should be in jail for rape.  Second, Defendant acted in admitted collusion with the purported accuser by acknowledging that she was sharing the post "w[ith] her permission."  There is little question that to the extent the accuser actually exists, the accuser and Defendant admittedly colluded to get the false rape allegations out to a wider audience in a more persistent and recognizable forum.  Lastly, Plaintiff has been unable to find the purported original post anywhere that is "publicly available."  There is also no record on a police report in the St. Louis Park Police Department.  As mentioned in the Amended Complaint, Plaintiff believes that Defendant totally fabricated and manufactured the original post in an effort to defame Plaintiff and in order to later deflect responsibility.

13

Defendant further claims that Plaintiff's IIED claim should be dismissed because he has "failed to plead the severity of his purported mental distress." (Def's. Op. Br. at 10.) She asserts that Plaintiff has only alleged that he has suffered "mental anguish" as a result of Defendant's unlawful conduct. (*See id*.) Defendant's characterization of the Amended Complaint is inaccurate. In the Amended Complaint, Plaintiff specifically alleges that he has suffered and continues to suffer "severe and extreme emotional distress." (*See* Am. Compl. at ¶ 45.) Where Plaintiff has plead the necessary element of the claim, the where the extent and symptoms of his "severe and extreme emotional distress" meet the requisite levels of severity is a question of fact of the jury.

III.     The Amended Complaint Does Not Contain "Scandalous and Immaterial Allegations" Warranting That Portions of the Amended Complaint Be Struck

Defendant's request that portions of the Amended Complaint be struck is completely without merit and borders on the frivolous. The Court should be able to see right through her request. Defendant wants portions of the Amended Complaint struck not because it actually contains anything that is false, scandalous or immaterial. Rather, she asks that this Court grant her special treatment by striking portions of the Amended Complaint that will untether her name to the @CardsAgstHrsmt Twitter account. In other words, Defendant asks this Court for an order striking portions of the Amended Complaint that would bury allegations of persistent and ongoing unlawful and potentially criminal conduct engaged in by her. Such a request should not be countenanced.

Pursuant to Fed. R. Civ. P. 12(f), "the court may order stricken from any pleading … any redundant, immaterial, impertinent, or scandalous matter." However, motions to

14

strike are disfavored because they serve potentially only to delay proceedings.  *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000); *Lundsford v. U.S.*, 570 F.2d 221, 229 (8th Cir. 1977).  "A court enjoys liberal discretion under Rule 12(f) … however, motions to strike are viewed with disfavor and are rarely granted."  *H&R Black Eastern Enterprises, Inc. v. Intuit, Inc.*, 945 F.Supp.2d 1033, 1035 (W.D. Mo. 2013).  Furthermore, "[t]he standard of materiality in a Motion to Strike pursuant to Fed. R. Civ. P. 12(f) is a loose one:  [the movant] must show that the challenged allegations can have no possible bearing upon the subject matter of the litigation."  *Brown v. TA Operating LLC*, 2007 WL 2694484, at *2 (D. Ne. Sept. 11, 2007).  "A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may prejudice one of the parties."  *Miller v. Pfizer, Inc.*, 1999 WL 1063046, at *3 (D. Kan. 1999).

Defendant has not demonstrated that the identified portions of the Amended Complaint relating to Defendants history with the @CardsAgstHrsmt Twitter account "have no possible bearing on the subject matter of the litigation."  Indeed, the portions of the Amended Complaint identified by Defendant, which primarily relate to Defendant's conduct on the @CardsAgstHrsmt Twitter separate from the defamatory posts about Plaintiff, at minimum serve as relevant background to Plaintiff's defamation claim.  It is Plaintiff's position, however, that the identified portions of the Amended Complaint go further.  They allegations pertaining to the @CardsAgstHrsmt Twitter account that Defendant wishes be struck establish a pattern of unlawful and potentially criminal conduct engaged in by Defendant whereby she exclusively disparages and defames men

anonymously using the Twitter account. This information is directly relevant as to her

intent in publishing the defamatory material about Plaintiff at issue in this proceeding.

Moreover, Defendant appears to primarily take issue with the fact that Plaintiff has

publicly linked her to the @CardsAgstHrsmt Twitter in the Amended Complaint, which is

the impetus of the motion to strike. Defendant contends that:

> Fredin … has included allegations and identifying details intentionally
> connecting Middlecamp, her home address and her employer with a
> previously anonymous twitter account, allegations of criminal misconduct
> and name-calling.

(Def.'s Op. Br. at 12.) In other words, Defendant would like this Court to make new law

that anytime she is accused of doing something unlawful or wrongful that the complaint

must be struck and her name removed from the caption. Defendant's request is frivolous.

Here, Defendant – a public official – made the defamatory posts about Plaintiff on the

@CardsAgstHrsmt Twitter. Plaintiff must connect Defendant to that Twitter account in

order to state a claim for both defamation and abuse of process. Plaintiff also properly

included Defendant's address in the Amended Complaint as a requisite to making a *prima

facie* showing of diversity jurisdiction. Moreover, it is fairly simple: if Defendant does

not want to be accused of "criminal misconduct" and have "identifying details" connect

her to an anonymous Twitter account, perhaps she should not operate an anonymous

Twitter account whereby she defames strangers and unlawfully posts nude and semi-nude

photographs on men without their permission on the Internet. Defendant is a posterchild

for millennial entitlement.

16

It also appears that Defendant apparently takes issue with the language Plaintiff used to describe her conduct and the @CardsAgstHrsmt Twitter account. (*See* Def.'s Op. Br. at 12-14.) Although the language is strong, it is an accurate depiction of both Defendant and @CardsAgstHrsmt Twitter. If the Court has doubts, it should view the materials posted on the @CardsAgstHrsmt Twitter itself. The Court will find that Defendant has posted photographs of men without their knowledge in nude, semi-nude and with their penises exposed as part of her "#ShirtlessShamers" campaign. Plaintiff can think of nothing more "extreme," "harassing," "disturbing," "frightening," "offensive," "abusive" or "offensive." And, Defendant's defamatory statements about Plaintiff were directly a part of this campaign of harassment. There is simply no reason to strike any portion of Plaintiff's Amended Complaint filed in this action.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that Defendant's November 17, 2017 Motion to Dismiss and Strike Portions of the Amended Complaint be denied in its entirety.

Dated: December 8, 2017
Hudson, WI

/s/ Brock Fredin

_____

Brock Fredin
1905 Iris Bay
Hudson, WI 54016
(612) 424-5512 (tel.)
brockf12@gmail.com
Plaintiff, Pro Se

17

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2017, I caused the foregoing Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and to Strike Portions of the Amended Complaint to be filed with the Clerk of the Court using the CM/ECF system, which will then serve such filing to the following individuals registered to use the CM/ECF system in this matter:

Matthew J. Schapp
Robert B. Bauer
DOUGHTERY, MOLENDA,
  SOLFEST, HILLS & BAUER P.A.
14985 Glazier Avenue, Suite 525
Apple Valley, Minnesota 55124
*Attorneys for Defendant*
*Lindsey Middlecamp*

                                    __/s/__ Brock Fredin_____

18