**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| BROCK FREDIN, | Case No. **0:17-cv-03058-SRN-FLN** |
| Plaintiff, | |
| --against-- | **PLAINTIFF'S OPPOSITION TO THE APRIL 13TH, 2018 REPORT AND RECOMMENDATION AND ORDER TO DENY PLAINTIFF'S CLAIM II (ABUSE OF PROCESS)** |
| LINDSEY MIDDLECAMP, | |
| Defendants. | |

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se*, hereby submits this memorandum of law in opposition to the Court's April 13th, 2017 Report and Recommendation and Order to grant Defendant Middlecamp's dismissal of Claim II (Abuse of Process) in the above-captioned matter.

## INTRODUCTION

As set forth herein, Plaintiff's Count II ("Abuse of Process") of the Amended Complaint should be granted.  Plaintiff has plausibly alleged facts to support claims for Abuse of Process (Count II) evidenced by the Court's acceptance of Counts I (defamation) and Count III (intentional infliction of emotional distress) in the Amended Complaint as discussed more fully below.[1]  Furthermore, Plaintiff has uncovered new factual

---

[1] In support of this argument, this is only the third (3) time a federal court has accepted an intentional infliction of emotional distress claim for a false rape allegation.  Defendant Middlecamp used the false rape claim to abuse the state family court to fraudulently obtain an HRO.

1

developments that evidence Defendant's abuse of the state court hearing in *Middlecamp v. Fredin, Case No: 62-HR-CV-17-233* ("*Middlecamp v. Fredin*").

Therefore, Plaintiff opposes this Court's Report and Recommendation and Order as he has properly stated a claim for Count II.  Second, based on new factual developments in this case denying Count II would cause undue prejudice to Plaintiff in this case.  As a result, Plaintiff respectfully requests that this Court grant Plaintiff's Count II for the reasons set forth more fully below.

## STATEMENT OF FACTS

Plaintiff re-alleges and incorporates paragraphs 1-46 as set forth in the Amended Complaint.

## GOVERNING STANDARD

"The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential." *Roble v. Celestica Corp.,* 627 F.Supp.2d 1008, 1014 (D. Minn. 2007).  The Court will reverse such an order only if it is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3).  "A finding is clearly erroneous when `although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *Lisdahl v. Mayo Found.,* 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985)). "A decision is `contrary to law' when it `fails to apply or misapplies relevant statutes, case law or rules of procedure.'"  *Knutson v. Blue Cross & Blue Shield of Minn.,* 254 F.R.D.

553, 556 (D. Minn. 2008) (citation omitted).  "[T]he district court has inherent power to review the final decision of its magistrates." Bruno v. Hamilton, 521 F.2d 114, 116 (8 Cir. 1975).

## ARGUMENT

The U.S. Supreme Court has held that a Plaintiff must "[nudge] their claims across the line from conceivable to plausible." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).   This Court has held that a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Cox v. Mortgage Electronic Registration Systems*, 794 F. Supp. 2d 1060 (Dist. Ct. Minnesota 2011).  (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Circ. 2009)).   The Minnesota Supreme Court has set forth two factors to be considered in determining whether abuse of process occurred:  (1) the existence of an ulterior purpose, and; (2) the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued, whether such result might otherwise be lawfully obtained or not. *Hoppe v. Klapperich*, 28 N.W. 2d 780, 786 (Minn. 1947).  The U.S. Supreme Court has held the First Amendment protects anonymous speech when "First Amendment questions arise … when there is such a nexus between anonymity and speech that a bar on the first is tantamount to a prohibition on the second." *NAACP v. Alabama*, 357 US 449 (1958).  This Court held that "actions that may have the effect of chilling or curtailing the exercise of these first amendment freedoms must be closely scrutinized." *See Ellers v. Palmer*, 575 F. Supp. 1259 (Dist. Ct. Minnesota 1984).  In citing NAACP, the California Court of Appeals asserted in *Ghafari v. Municipal Court* "anonymity is essential to the exercise of constitutional rights." (*See NAACP v. Alabama*, 357 US 449 (1958) ¶¶ *At 260.) See* Also *Aryan v. MacKey*, 462 F. Supp. 90 (ND

3

Tex. 1978) ¶¶ At 92 holding (constitutional questions nevertheless arise when there is a nexus between anonymity and speech).

**I.     Defendant Middlecamp's Twitter Activity is NOT Anonymous and Therefore Not Entitled to Privacy inherent to Minn. Stat. § 609.748**

At the outset, there is a preponderance of evidence indicating Defendant Middlecamp's speech on @CardsAgstHrsmt is **NOT** anonymous.

First, Defendant Middlecamp used the @CardsAgstHrsmt platform while working as a public employee.[2]  For speech to be protected under the First Amendment, it must relate to "any matter of political, social or other concern to the community." *See Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). This means that:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters **only of personal interest**, absent the most unusual circumstances, a … court **is not** the appropriate forum in which to review the wisdom of a personnel decision…

(*See Id.* at 461.)  The Eighth Circuit cited employee First Amendment concerns in *Buazard v. Meridith* holding that the speech must relate to some "matter of political, social or other concern to the community." *See Buazard v. Meridith*, 172 F. 3d 546 (Ct. App. 8th Circuit) (citations omitted).  Most, if not all of Defendant Middlecamp's speech are matters of personal interest which removes First Amendment protections.   Second, Defendant Middlecamp's full name and biographical information in connection with @CardsAgstHrsmt is already published online in numerous public forums.  For instance, a simple Google search of @CardsAgstHrsmt reveals a March 22nd, 2016 article written

---

[2] Indeed, Defendant Middlecamp used City of Minneapolis Information Technology resources when posting on @CardsAgstHrsmt.

by *A Voice for Men* describing "Lindsey Middlecamp, a Minneapolis Lawyer and founder of Cards Against Harassment."  (*See* https://www.avoiceformen.com/feminism/racism-misogyny-misandry-and-lindsey-middlecamp/.)  Defendant Middlecamp has aggressively promoted herself within major news outlets e.g., Buzzfeed, New York Times, Daily Mail, City Pages, Wisconsin Public Radio, etc.[3] (Pl. Opp. MTD. ¶¶ at 19.)  Moreover, Wisconsin Public Radio published Defendant Middlecamp's full name in connection with Cards Against Harassment dated November 3rd, 2014:





**Lindsey Middlecamp**

Lindsey Middlecamp is a member of the board of directors for Stop Street Harassment, an advocacy group based in Washington D.C. She is also the creator of Cards Against Harassment, a project to educate men and women about the problem of street harassment.

@CardsAgstHrsmt

*Biographical information last updated on November 3, 2014 - 11:40am*

Featured In

THE JOY CARDIN SHOW   Tue, 11/04/2014 - 6:00am
**Ending Street Harassment**

---

[3] See https://www.wpr.org/people/lindsey-middlecamp

(*See* https://www.wpr.org/people/lindsey-middlecamp.)    Third, Defendant Middlecamp

operates campus advocacy workshops in futile attempts to promote the non-existent issue

of "street harassment" within Minnesota and Wisconsin.[4]  In doing so, she discloses her

media platform @CardsAgstHrsmt in connection with her full name, occupation, and

biographical information.  For instance, Defendant Middlecamp held a public workshop

on non-existent "street harassment" at Gustavus Adolphus College dated March 9th, 2015.

Moreover, she held a public "street harassment" event at Minnesota State University

Moorhead dated September 16th, 2016.[5]  Furthermore, Defendant Middlecamp often cross-

promotes her workshops or advocacy activities on her Twitter and media platform

@CardsAgstHrsmt:



[4] Defendant Middlecamp has been forced to cease her campus workshops after being outed as an obsessive revenge pornographer who catfishes naked photos of men without consent and ruthless online predator.  See e.g., https://twitter.com/CardsAgstHrsmt/status/953818041418096640;  See e.g., https://twitter.com/CardsAgstHrsmt/status/870046804624191489; See e.g., https://twitter.com/CardsAgstHrsmt/status/866784093182152706
[5] See e.g., https://news.mnstate.edu/tag/lindsey-middlecamp/; See e.g., https://news.mnstate.edu/tag/lindsey-middlecamp/

In light of the facts, Defendants claim that @CardsAgstHrsmt is entitled to anonymous speech and **privacy** fail as a matter of law.  As such, the Court should reconsider the April 13th, 2018 Order and grant Plaintiff's Abuse of Process claim.

## II.     Plaintiff's Alleged Speech on LindseyMiddlecamp.com IS ANONYMOUS and Entitled to Privacy Inherent to Minn. Stat. § 609.748

The Ninth Circuit has held anonymous "political speech usually merits great protection." *In re Anonymous Online Speakers*, 611 F. 3d 653 (9th Cir. 2010).  This Court has held "The Court must balance the … defendant's right to speak, and to speak anonymously, with the state's interest in regulating defamation and other forms of speech." *See East Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018 (Dist. Ct. Minn. 2016).  Political speech are expressions which comment on government action.  Defendant Middlecamp alleged, *inter alia*, that Plaintiff registered and erected the website lindseymiddlecamp.com following Defendant Middlecamp engaging in a vicious personal attack vis-a-vis @CardsAgstHrsmt.

First, Defendant Middlecamp was an employee of the City of Minneapolis, covertly used @CardsAgstHrsmt while working for the City of Minneapolis, leaked government information, and used her public government role in conjunction with @CardsAgstHrsmt to attack Plaintiff and destroy his professional livelihood.  (Pl. Opp. MTD. ¶¶ at 12.)  In criticizing Defendant Middlecamp's government actions, Plaintiff's alleged speech falls squarely within the nature of political speech described *In re Anonymous Online Speakers*. (*See In re Anonymous Online Speakers* ¶¶ At 9920.)  holding (the nature of the speech

should be a driving force in choosing a standard by which to balance the rights of anonymous speakers). In *East Coast Test Prep v. Allnurses* this Court held "The Supreme Court and the Eighth Circuit have not yet provided the Court with direction on this specific issue, but other courts have provided guidance ... These courts have formed a basic consensus about how a court should protect rights to anonymous speech in the context of a request for production". *See East Coast Test Prep LLC v. Allnurses.com, Inc.*, 167 F. Supp. 3d 1018 (Dist. Ct. Minn. 2016). It bears noting, Defendant Middlecamp improperly used a subpoena to uncover anonymous speech and registration information for lindseymiddlecamp.com that falls squarely within the "requests for production" standard cited in *East Coast Test Prep*. This Court **protected anonymous speech** by denying *East Coast Test Prep*'s request for the identities of anonymous speakers. Moreover, Plaintiff is a public figure and her conduct is a matter of public concern. The website contained political speech concerning Defendant Middlecamp's government activities:

> Lindsey Middlecamp is a licensed attorney employed by the City of Minneapolis. Lindsey Middlecamp has engaged in multiple acts of professional misconduct. Middlecamp has demonstrably harmed countless litigants, men, and, most importantly, families by engaging in acts and making statements contrary to the law and professional responsibility conduct. Sadly, Lindsey Middlecamp is still a licensed attorney in the State of Minnesota. Everyday that passes is another family harmed by Lindsey Middlecamp. We invite City of Minneapolis staff, judicial officials, attorneys, public, and the media to publicly rebuke Lindsey Middlecamp as her behavior has reached a point where it casts a very dark and lasting shadow on Minneapolis and the Minnesota Judicial Branch.

(*See* Ex. 2.) Second, Defendant Middlecamp issued a *subpoena duces tecum* dated July 17th, 2017 to command the production of registration details for lindseymiddlecamp.com records. Defendant Middlecamp deliberately engaged in bad-faith retaliatory conduct to

8

abuse court process in withholding subpoena results throughout all litigation stages. [6] (Pl. Opp. MTD. ¶¶ at 10.) Nevertheless, the subpoena results revealed an **anonymous registration** of lindseymiddlecamp.com:

| | | | Registrant Contact | |
|---|---|---|---|---|
| Shopper ID: | 153011100 | | Name: | ragnu grivae |
| Domain Name: | LINDSEYMIDDLECAMP.COM | | Company: | ragnu |
| Registrar: | GoDaddy.com, LLC | | Email: | ragnu92@gmail.com |
| Status: | Active | | Address 1: | 823 grivery |
| Name Servers: | | | Address 2: | |
| Auto Renew: | | | City: | new york city |
| Renew Period: | | | State/Province: | New York |
| | | | Postal Code: | 10001 |
| | | | Country: | United States |
| | | | Phone: | +1.2124524782 |
| | | | Fax: | |
| | | | Modify Time: | 5/8/2017 11:33:02 AM |

(*See* Ex. 1.) Third, Defendant failed to assert any set of facts to support Plaintiff had indeed registered or maintained control over the domain. In her testimony, Defendant Middlecamp made conclusory allegations that it was her **belief** that Plaintiff had exercised legitimate First Amendment rights in registering the domain.

Fourth, Plaintiff is a private citizen who has never fulfilled any obligation of public office. He is immune from public figure or public concern contentions inherent in defamation claims.

### III. **Defendant Middlecamp Improperly used Minn. Stat. § 609.748 and the false Rape Claim to Retaliate and Enjoin Plaintiff's alleged Anonymous Speech**

Defendant Middlecamp destroyed Plaintiff's professional livelihood, rigged frivolous criminal charges over an alleged Match.com profile edit, colluded with multiple parties, and tortuously interfered with Plaintiff's prospective economic advantage. After working sixteen (16) years, obtaining multiple University degrees, working twelve (12) hour days programming software platforms, Plaintiff sustained a relentless phony attack to the point he was led to homelessness and public financial assistance. Everything he worked for was taken away. Retirement fund drained. No money. No credit score. No way to

---

[6] Withholding lindseymiddlecamp.com subpoena results violated Minn. Civ. P. Rule 45.04(5) and 26.01(c).

obtain a job.  No way to financially support his elderly mother (who suffered a stroke the week of Defendant Middlecamp's *City Pages* article).  Family relationships destroyed.  No way to pay back student loan debt.  Plaintiff worked so very hard to build something in his life all to be crushed and utterly destroyed in a mere moment by Defendant Middlecamp's fraudulent and vicious campaign.   In financially bankrupting Plaintiff, Defendant Middlecamp than attempted to churn extraordinary legal fees from upwards of twelve (12) collateral legal proceedings to abuse the state court and coaching Ms. Schaefer and Ms. Miller to file hundreds of pages of irrefutably false police reports claiming telemarketers were Plaintiff.

After Plaintiff lost everything, Defendant Middlecamp alleges Plaintiff resorted to legitimate First Amendment speech by registering lindseymiddlecamp.com to discuss matters of public concern.  In doing so, Plaintiff allegedly anonymously posted proof of Defendant Middlecamp's conduct and results of subpoenas proving irrefutably the claims were false and contrived to harass and stigmatize Plaintiff in furtherance of a #metoo campaign to fraudulently obtain attention.

Defendant Middlecamp petitioned for an HRO on April 14th, 2017 to chill speech critical of her fraudulent conduct and phony campaign evidenced by her attempts to seek a settlement to silence Plaintiff and a retaliatory bad-faith swat Raid of his personal residence.  If Defendant Middlecamp truly cared about privacy inherent in the statute, she would have immediately deleted all Tweets publicizing Plaintiff.  Instead, she chose to exploit Plaintiff's privacy by twisting the statute for an unintended legal purpose.  Furthermore, assuming *arguendo*, if the Ramsey County court truly cared about privacy

inherent in the statute, the Ramsey County court would have granted Plaintiff's ex-parte HRO.   Instead, Referee Clysdale acted in joint participation with Defendant Middlecamp to turn a blind eye to privacy inherent in the statute.  In a similar case, the Ninth Circuit found that Nadia Naffe who made an outrageous false sexual assault claim was not entitled to two (2) privacy claims brought against a Los Angeles Assistant District Attorney ("District Attorney").  Ms. Naffe alleged the District Attorney used Twitter to harass, smear her character, and interfere with constitutional rights to petition the government for redress. The District Attorney posted "substantial private information, including Naffe's social security number and her mother's maiden name. After Frey posted this information, Naffe received emails from Experian—a credit reporting agency—notifying her that unauthorized individuals made changes to her credit report and were fraudulently using her social security number."  See *Naffe v. Frey*, 789 F. 3d 1030 (Ct. Ap. 9th Circuit 2015).  In a tentative ruling, however, the Ninth Circuit affirmed the dismissal of all privacy claims.

As discussed above, Defendant Middlecamp abused the state court by making a knowingly false rape claim to fraudulently obtain an HRO.   In Defendant Middlecamp's petition, she **flat-out lied** by alleging "a woman … accused and attempted to press charges against [Plaintiff] for rape." (*See* Ex. 3 and April 14th, 2017 *Middlecamp v. Fredin* Ex-Parte ¶¶ at 6)  This Court called Defendant Middlecamp's false rape allegations "extreme and outrageous and not tolerable to a civilized community" and "so atrocious it passes the boundaries of decency."  (*See* Report & Recommendation, *Fredin v. Middlecamp*, No. 17-CV-03058 (Dist. Ct. Minn. April 13th, 2018)).

**IV.** **Defendant Middlecamp Improperly used Minn. Stat. § 609.748 to Extort Plaintiff into Dropping This *Instant* Lawsuit**

The Eighth Circuit has held that "abuse of process cases usually involves some form of extortion." *See Reis v. Walker*, 491 F.3d 858, 870. (8th Cir. 2007) (citations omitted).

First, Defendant Middlecamp abused the state family court by attempting to extort Plaintiff dated September 22nd, 2017. After withholding subpoena results by abusing the state court to gain a favorable ruling to grant a final Order, Defendant Middlecamp sent an extortion letter that she would "delete all @CardsAgstHrsmt Tweets identifying Fredin, or referring to Fredin or claims against Fredin" in extorting Plaintiff to "agree to execute and file a Notice of Dismissal or such other pleadings as necessary to withdraw and terminate the Civil Lawsuits." Defendant Middlecamp's extortion to abuse the state family court is available here:

> 1.  Release. Fredin does hereby release Middlecamp from and against any and all claims, actions, demands, causes of actions, obligations, rights or damages of any nature, whether known or unknown, arising from, on account of, or in any way relating to the claims, events, and communications underlying Fredin's HRO and the Civil Lawsuits. Fredin further agrees to waive any appeal or additional motion practice related to Middlecamp's HRO.
>
> 2.  Consideration: In consideration of the above, and within 24 hours of the execution of this Agreement, Middlecamp shall delete all @CardsAgstHrsmt tweets identifying Fredin, or referring to Fredin or claims against Fredin.
>
> 3.  Full Satisfaction. Fredin understands and agrees that acceptance of the above consideration is in full and complete satisfaction of the afore-mentioned claims in Fredin's HRO and the Civil Lawsuits referenced above. Fredin further agrees that settlement of this matter is in no way or manner to be construed as an admission on the part of Middlecamp, or of the validity of Fredin's claims or of the liability of Middlecamp, which validity and liability Middlecamp expressly denies.

12

4.    Dismissal of Civil Lawsuits.    Within 24 hours of Middlecamp complying with the provisions of Paragraph 2, Fredin agrees to execute and file a Notice of Dismissal or such other pleadings as necessary to withdraw and terminate the Civil Lawsuits.

(*See* Ex. 1.)

## V.    Defendant Middlecamp Publicly Admitted to Colluding with the Presiding Judicial Officer Referee Clysdale to Abuse the State Family Court

The Supreme Court has held "a private individual may act under color of law in certain circumstances, such as when a private person is involved in a conspiracy or participates in joint activity with state actors." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52, (1970).  This Court held "Plaintiff would have to show that the Defendants were "willful participants in joint activity with the State or its agents" in depriving the Plaintiff of his constitutional rights." *See Singh v. Hannuman*, (Dist. Ct. Minn. 2008). The Fifth Circuit found attorneys could be held liable as state actors, nothing that private parties can be deemed state actors if they were "joint participants" with a government official in the unlawful action. *See Ballard v. Wall*, 314 F.3d 510 (5th Cir. 2005).[7]   The Amended Complaint does not include 42 U.S.C. §§ 1983 claims, however, the joint collusion between known state actors needs to be brought to the Court's attention.  This "joint activity" rises above the level for the purposes of holding Defendant Middlecamp liable under § 1983.

If the Court has any doubts to the veracity of Plaintiff's assertions, Plaintiff directs the Court to a text message he obtained on April 5th, 2018 within Saint Paul Police Complaint Number 17280176 originally filed on December 4th, 2017 which Plaintiff

---

[7] *Attorneys May be Sued as State Actors When Colluding with Judge.*  See e.g., https://www.prisonlegalnews.org/news/2007/dec/15/attorneys-may-be-sued-as-state-actors-when-colluding-with-judge/

believes originated from Defendant Middlecamp's friend and co-conspirater Catherine

Marie Schaefer.  The text message not only confirms the ongoing scheme of Defendant

Middlecamp to harass Plaintiff, but also demonstrates the fact that Defendant

Middlecamp and her co-conspirator believes she compromised the state family court:



Listen Brock, I have a hilarious secret for you. Lindsey and Clydesdale have a mutual bestie and have been hanging out for years. You are going down way further than you imagined. You messed with the wrong women.

7:03 PM

(*See* SPPD Complaint No: 17280176.)  Needless to say, the above message is disturbing and

conclusively evidences Defendant Middleamp's abuse of the state court system.  Referee Clysdale

presided over each state case involving Plaintiff including *Middlecamp v. Fredin*, Second Judicial

District, Case No: 62-HR-CV-17-233.

Moreover, Defendant Middlecamp abused the state court by deliberately engaging in

bad-faith retaliatory forum shopping in originating her lawsuit in Ramsey County where

Referee Clysdale would adjudicate the matter despite both Plaintiff and Defendant

Middlecamp having no personal or subject matter jurisdiction.  (*See* Am. Compl. ¶¶ At 4.)

Furthermore, Defendant Middlecamp acted as a *pro se* litigant/attorney at the outset of her

ex-parte petition lending credence her being a state actor under *Ballard's collusion doctrine.*

As such, Plaintiff's alleged anonymous conduct on lindseymiddlecamp.com as described

above in paragraph II is bolstered by *Ballard's* collusion doctrine as it falls within the nature

of legitimate First Amendment political speech to criticize a government action.

14

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that Plaintiff's Abuse of Process claim be granted in its entirety.

Dated: April 28, 2018
Hudson, WI

s/ Brock Fredin

_____

Brock Fredin
1905 Iris Bay
Hudson, WI 54016
(612) 424-5512 (tel.)
brockf12@gmail.com
*Plaintiff*, *Pro Se*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 30th, 2018, I filed the foregoing with the Clerk of Court through the CM/ECF system which will automatically send electronic mail notification of such filing to the CM/ECF registered participants as identified on the Electronic Mail Notice List.

s/ Brock Fredin

_____

Brock Fredin
1905 Iris Bay
Hudson, WI 54016
(612) 424-5512 (tel.)
brockf12@gmail.com
*Plaintiff, Pro Se*

# EXHIBIT 1

**MESSERLI & KRAMER**

Messerli & Kramer P. A.
ATTORNEYS AT LAW
1400 Fifth Street Towers
100 South Fifth Street
Minneapolis, MN 55402-1217

phone 612.672.3000
fax 612.672.3777
messerlikramer.com

Additional offices in:
St. Paul & Plymouth, MN

612.672.3639
mboulette@messerlikramer.com

October 16, 2017

*Via email*

Brock Fredin
1905 Iris Bay
Hudson, WI 54016

       Re:    In Re the Matter of Lindsey Middlecamp vs. Brock Fredin
              Court File No. 62-HR-CV-17-233

Dear Mr. Fredin:

I write in reply to your letter of October 11, 2017. Consistent with your request, attached please find the documents provided by Domains By Proxy, LLC in response to Ms. Middlecamp's subpoena.

Please note these documents have been provided as a courtesy. The record is closed and the discovery process ended. We will not be responding to any further discovery requests in the above matter.

Thank you.

Sincerely,

Michael P. Boulette

Enclosure

cc:    Lindsey Middlecamp

## Domain List for Shopper ID 153011100

| Domain Name | Status | Created | Expires | Order ID |
|---|---|---|---|---|
| LINDSEYMIDDLECAMP.COM | Active | 3/31/2017 | n/a | |

## Domain Information for Shopper ID 153011100

| | |
|---|---|
| Shopper ID: | 153011100 |
| Domain Name: | LINDSEYMIDDLECAMP.COM |
| Registrar: | GoDaddy.com, LLC |
| Status: | Active |
| Name Servers: | |
| Auto Renew: | |
| Renew Period: | |

### Registrant Contact

| | |
|---|---|
| Name: | ragnu grivae |
| Company: | ragnu |
| Email: | ragnu92@gmail.com |
| Address 1: | 823 grivery |
| Address 2: | |
| City: | new york city |
| State/Province: | New York |
| Postal Code: | 10001 |
| Country: | United States |
| Phone: | +1.2124524782 |
| Fax: | |
| Modify Time: | 5/8/2017 11:33:02 AM |

### Technical Contact

| | |
|---|---|
| Name: | ragnu grivae |
| Company: | ragnu |
| Email: | ragnu92@gmail.com |
| Address 1: | 823 grivery |
| Address 2: | |
| City: | new york city |
| State/Province: | New York |
| Postal Code: | 10001 |
| Country: | United States |
| Phone: | +1.2124524782 |
| Fax: | |
| Modify Time: | 5/8/2017 11:33:02 AM |

### Administrative Contact

| | |
|---|---|
| Name: | ragnu grivae |
| Company: | ragnu |
| Email: | ragnu92@gmail.com |
| Address 1: | 823 grivery |
| Address 2: | |
| City: | new york city |
| State/Province: | New York |
| Postal Code: | 10001 |
| Country: | United States |
| Phone: | +1.2124524782 |
| Fax: | |
| Modify Time: | 5/8/2017 11:33:02 AM |

### Billing Contact

| | |
|---|---|
| Name: | ragnu grivae |
| Company: | ragnu |
| Email: | ragnu92@gmail.com |
| Address 1: | 823 grivery |
| Address 2: | |
| City: | new york city |
| State/Province: | New York |
| Postal Code: | 10001 |
| Country: | United States |
| Phone: | +1.2124524782 |
| Fax: | |
| Modify Time: | 5/8/2017 11:33:02 AM |

# EXHIBIT 2

@CardsAgstHrsmt   About   Misconduct   Are you a Victim?   Laws Violated

# Attorney Lindsey Middlecamp

Lindsey Middlecamp is a licensed attorney employed by the City of Minneapolis. Lindsey Middlecamp has engaged in multiple acts of professional misconduct. Middlecamp has demonstrably harmed countless litigants, men, and, most importantly, families by engaging in acts and making statements contrary to the law and professional responsibility conduct. Sadly, Lindsey Middlecamp is still a licensed attorney in the State of Minnesota. Everyday that passes is another family harmed by Lindsey Middlecamp.

We invite City of Minneapolis staff, judicial officials, attorneys, public, and the media to publicly rebuke Lindsey Middlecamp as her behavior has reached a point where it casts a very dark and lasting shadow on Minneapolis and the Minnesota Judicial Branch.

## As any state complaint can explain in 124 pages with several pages of exhibits, Middlecamp is guilty of legal misconduct. This includes, but is not limited to, the following:

Middlecamp has made overtly sexist and discriminatory statements outside the courtroom detracting from the dignity of the legal community (see Professional Conduct 8.4(G))

Lindsey Middlecamp has engaged in improper ex parte communications - many time concerning confidential matters - with the media and witnesses (see Professional Conduct 3.6(A))

Middlecamp has compromised statutory confidentiality of the litigants appearing in family court cases for her personal interests of self promotion and grasps at notoriety by engaging in extrajudicial acts to publicize the matters and cases (see Professional Conduct 3.6(A))

## Lindsey E. Middlecamp represents banks and large businesses in real estate transactions or civil litigation. In one case, her actions helped deny a job opportunity to a disabled man who happens to be deaf:

In the fall of 2009, Brian Hile applied for a position as a delivery driver. Brian Hile is a deaf man who had significant prior experience as a delivery driver and sought employment with a local franchise. Lindsey Middlecamp or her firm attempted to argue that it was in fact the business who was under prejudice for being forced to provide opportunities to deaf people "Lastly, the Franchises argue they will be significantly prejudiced if Hile's claims are permitted to proceed". Fortunately, Judge Richard Kyle saw things justly and denied Lindsey Middlecam's firm motion. (see HILE V. JIMMY JOHNS HIGHWAY 55, GOLDEN VALLEY).

Lindsey Middlecamp has public record of providing legal representation to Bank of America. America's second largest lender has settled claims totalling over 17 billion for mortgage fraud. Does Lindsey Middlecamp really represent Social Justice? (see BOA vs Brandon R. Kent A12-1748).

# EXHIBIT 3



**Michael P. Boulette** <mboulette@messerlikramer.com>    9/22/17

to me, Amy

**FOR SETTLEMENT PURPOSES ONLY-NOT ADMISSIBLE AS EVIDENCE**

Mr. Fredin,

Following yesterday's hearing, you conveyed a desire to resolve this matter in a way that allows both parties move on with their lives. I'm writing to follow up on that discussion. Please note that this email and attachment are for settlement purposes only and not admissible as evidence pursuant to Minn. R. Evid. 408.

Consistent with your remarks from yesterday, I have attached a proposed settlement agreement memorializing terms which Ms. Middlecamp could accept. This offer will expire by Monday, September 25, 2017 at 5:00 PM.

To summarize its contents: Ms. Middlecamp would agree to delete all tweets referencing you or related to you as part of a global settlement of all claims. You would, in turn, agree to dismiss your civil defamation litigation (in state and federal court), and execute a release and waiver covering both harassment restraining order matters and all other claims.

I hope you will give this proposal serious thought. Please let me know by 5:00 pm on Monday, and let me know in the meantime if you have questions.

**Michael Boulette**
Attorney
Direct: 612.672.3639
Fax: 612.672.3777
mboulette@messerlikramer.com
www.messerlikramer.com

Messerli & Kramer P.A.
1400 Fifth Street Towers | 100 South Fifth Street
Minneapolis, MN 55402-1217



**MESSERLI & KRAMER**
MOVING WHAT MATTERS *FORWARD*

---

CONFIDENTIALITY NOTICE: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of any kind is strictly prohibited. If you are not the intended recipient, please contact the sender via reply e-mail and destroy all copies of the original message. Thank you.

**SETTLEMENT AGREEMENT AND**
**FULL RELEASE OF ALL CLAIMS**

A. <u>Identification of Parties and Agreement</u>.

This Settlement Agreement and Full Release Of All Claims made this

_____(date) is between Brock Fredin and Lindsey Middlecamp.

B. <u>Agreement Terms</u>.

WHEREAS, Middlecamp filed a petition for harassment restraining order

against Fredin ("Middlecamp's HRO") and Fredin subsequently filed a petition

for harassment restraining order against Middlecamp ("Fredin's HRO"), both in

Ramsey County, which are collectively referred to herein as the "HRO matters";

WHEREAS, Fredin has commenced civil litigation against Lindsey

Middlecamp in both Ramsey County District Court and the United States District

Court in the District of Minnesota alleging, among other claims, defamation and

personal injury associated with social media postings published by Lindsey

Middlecamp ("Civil Lawsuits");

WHEREAS, Fredin and Middlecamp wish to enter into a full and complete

settlement with regard to Fredin's HRO and the Civil Lawsuits;

NOW, THEREFORE, in consideration of the premises and the mutual

promises contained herein, the sufficiency and value of which is hereby

1

acknowledged, it is agreed as follows:

1.      Release.  Fredin  does hereby release Middlecamp from and against any and all claims, actions, demands, causes of actions, obligations, rights or damages of any nature, whether known or unknown, arising from, on account of, or in any way relating to the claims, events, and communications underlying Fredin's HRO and the Civil Lawsuits. Fredin further agrees to waive any appeal or additional motion practice related to Middlecamp's HRO.

2.      Consideration:  In consideration of the above, and within 24 hours of the execution of this Agreement, Middlecamp shall delete all @CardsAgstHrsmt tweets identifying Fredin, or referring to Fredin or claims against Fredin.

3.      Full Satisfaction.  Fredin understands and agrees that acceptance of the above consideration is in full and complete satisfaction of the afore-mentioned claims in Fredin's HRO and the Civil Lawsuits referenced above.  Fredin further agrees that settlement of this matter is in no way or manner to be construed as an admission on the part of Middlecamp, or of the validity of Fredin's claims or of the liability of Middlecamp, which validity and liability Middlecamp expressly denies.

4.      Dismissal of Civil Lawsuits.   Within 24 hours of Middlecamp complying with the provisions of Paragraph 2, Fredin agrees to execute and file a

Notice of Dismissal or such other pleadings as necessary to withdraw and terminate the Civil Lawsuits.

5.    <u>Complete Agreement</u>.  This Agreement contains and sets forth all of the terms agreed upon by the parties. This agreement may not be modified or changed except with the express, written agreement of all parties to this agreement.

6.    <u>Voluntary Agreement</u>.  Fredin acknowledges and agrees that he has read this agreement, and that he has the right and ability to discuss this with an attorney if he so chooses, and that he understands all of its provisions, and that he signs and agrees to all of its terms voluntarily and without coercion.

*Signatures to follow:*


_____          Dated: _____
Brock Fredin

         Subscribed and sworn to before me
         this ___ day of _____, 2017


         _____
         Notary Public


3

_____        Dated: _____

Lindsey Middlecamp

    Subscribed and sworn to before me
    this ___ day of _____, 2017


    _____

    Notary Public

    DATE:_____


4