**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

BROCK FREDIN,

                    Plaintiff,                    Case No.  17-CV-3058

          --against--

LINDSEY MIDDLECAMP                    **DECLARATION OF BROCK FREDIN**


                    Defendants.

---

BROCK FREDIN,

                    Plaintiff,                    Case No.  18-CV-466

          --against--

GRACE MILLER,                    **DECLARATION OF BROCK FREDIN**
CATHERINE SCHAEFER


                    Defendants.

---

STATE OF WISCONSIN          }
                                        ss:
COUNTY OF SAINT CROIX          }

          BROCK FREDIN, being duly sworn, deposes and says:

          1.     I am the Plaintiff in the above-captioned proceeding.   I submit this

declaration in support of my motion for limited discovery and opposition to Defendants

motion to compel filed at [Docket 97][Docket 88] dated October 24, 2019 and [Docket 96]

[Docket87] dated October 22, 2019.   For the reasons stated herein and within my

memorandum of law dated October 24, 2019, my motion for limited discovery should be granted in its entirety and Defendants motion to compel should be denied in its entirety.

2.     The state court cases in Ramsey County District Court underlying this proceeding are provided as follows:

- *Middlecamp v. Fredin*, Case No: 62-HR-CV-17-233
- *Middlecamp v. Fredin*, Case No: 62-HR-CV-19-621
- *Miller v. Fredin*, 62-hr-cv-16-46
- *Miller v. Fredin*, 62-hr-cv-18-202
- *Schaefer v. Fredin*, 62-hr-cv-16-411
- *Schaefer v. Fredin*, 62-hr-cv-18-527
- *State of MN. v. Brock Fredin*, 62-CR-17-3156
- *State of MN. v. Brock Fredin*, 62-CR-18-157

## **AUTHENTICATION OF DOCUMENTS**

3.     Attached hereto as **Exhibit A** is a true and correct copy of the email dated January 24, 2017 executed by Lindsey Middlecamp to Mary Ellen Heng.

4.     Attached hereto as **Exhibit B** is a true and correct copy of the email dated January 24, 2017 executed by Mary Ellen Heng to Tara Patet.

5.     Attached hereto as **Exhibit C** is a true and correct copy of the email dated January 24, 2017 executed by David McCabe to Mary Ellen Heng, Tara Patet, and Lindsey Middlecamp.

6.     Attached hereto as **Exhibit D** is a true and correct copy of the email dated January 24, 2017 executed by Lindsey Middlecamp to Tara Patet.

7.     Attached hereto as **Exhibit E** is a true and correct copy of Lindsey Middlecamp's @CardsAgstHrsmt tweet concerning me dated January 24, 2017.

8.      Attached hereto as **Exhibit F** is a true and correct copy of Facebook posts published on April 4, 2017 identifying Lindsey Middlecamp as the identity behind @CardsAgstHrsmt.

9.      Attached hereto as **Exhibit G** is a true and correct copy of April 13 and 14th, 2017 emails between Minneapolis City Attorney Office Officials disclosing my April 13, 2017 Facebook post identifying Lindsey Middlecamp as the creator of @CardsAgstHrsmt.

10.     Attached hereto as **Exhibit H** is a true and correct copy of emails between Paula Kruchowski and Thomas Miller requesting that Thomas Miller do lookups on me.

11.     Attached hereto as **Exhibit I** is a true and correct copy of a text message entered within Saint Paul Police Complaint Number 17280176 originating from Catherine Schaefer.

12.     Attached hereto as **Exhibit J** is a true and correct copy of a Minneapolis Police Public Record Service emails April 2018 – October 15, 2019 emails between workers Kyle H. MacDonald, Lisa Lamor, and Mary ZenZen, and Roger Hagedorn

13.     Attached hereto as **Exhibit K** is a true and correct copy of an email dated August 22, 2017 originating from Susan Segal to Erik Nillsen.

14.     Attached hereto as **Exhibit L** is a true and correct copy of an Order signed by Minnesota Court of Appeals Chief Judge Edward Cleary granting post-conviction relief in *State v. Fredin,* Minnesota Court of Appeals, Case No. A19-0085 and *State of MN. v. Brock Fredin*, 62-CR-17-3156 dated June 26, 2019.

15.     Attached hereto as **Exhibit M** is a true and correct copy of an Order signed by Judge Vuelo reversing and vacating gross misdemeanor stalking by mail charges in *State of MN. v. Brock Fredin*, 62-CR-17-3156 dated September 3, 2019.

16.     Attached hereto as **Exhibit N** is a true and correct copy of a September and/or October status pleadings signed by Appellate Public Defender Melissa Sheridan confirming charges have been reversed and vacated in *State v. Fredin,* Minnesota Court of Appeals, Case No. A19-0085 and *State of MN. v. Brock Fredin*, 62-CR-17-3156.

17.     Attached hereto as **Exhibit O** is a true and correct copy of a email from Minneapolis Records Management Specialist Jacob Crawford dated October 18, 2019

## **PLAINTIFF BROCK FREDIN'S APRIL 2018 FOIA REQUEST**

18.     On October 28, 2019, I received a freedom of information act ("FOIA") production by way of the City of Minneapolis.  The request was made in April 2018 related to records associated with Lindsey Middlecamp's improper activities in reference to me.

19.     Lindsay Middlecamp unequivocally committed felony obstruction of justice and assault by requesting that the Saint Paul City Attorney's Office issue frivolous criminal charges in *State v. Fredin*, Ramsey County District Court, Case No. 62-CR-17-3156 and (indirectly) *State v. Fredin*, Ramsey County District Court, Case No. 62-CR-18-157 against me to serve her April 14, 2017 harassment restraining order petition ("Middlecamp HRO"), and, most importantly, to provide tabloid fodder to her personal media platform @CardsAgstHrsmt by and through improper use of her then-Assistant Minneapolis City Attorney position.  Lindsey Middlecamp also instigated criminal charges against me based on this Court's January 23, 2017 ruling in *Miller v. Fredin*, Case No. A16-0613 ("Miller

Decision"). Lindsey Middlecamp sent an email ("Middlecamp Email") to Deputy

Minneapolis City Attorney Mary Ellen Heng dated January 24, 2017 at 3:44PM stating:

> Do you know/have contact info for your counterpart at the City of St. Paul? This is something of a professional courtesy email that, if you felt it was appropriate, I was hoping could be forwarded to their attention.
>
> I have a friend who, in November of last year, got a restraining order against a man in St. Paul who stalked her for nearly two years even after she moved out of state all because she declined to meet him after brief contact on a dating site. He has retaliated against the restraining order in several dramatic ways; after storming out of the hearing at which it was granted, he promptly registered and launched a website referring to her by full name as a stalker and sexual predator and linking to her contact
>
> Yesterday, the Court of Appeals issued an opinion in a different matter brought by a different woman against the same man. I'm attaching it here. I can tell you that I've spoken with several of his former colleagues or acquaintances and this seems like a very troubled individual with a documented history of serial harassment and escalation. He has been kicked out of a local gym for concerning threatening behavior towards a trainer, has been blacklisted from certain community groups for his alarming online conduct, etc. I have serious concerns that if he is not held accountable for violations of this restraining order, he will escalate either in his aggression against my acquaintance, or in parallel tracks against other women.
>
> The "professional courtesy" angle here is that I'm also aware my friend is being contacted by journalists with MPR and City Pages about her experiences with this man and other women's restraining orders and issues with him. I believe it is likely the narrative will take a position that "St. Paul is doing nothing to protect them" in light of the cops basically telling her her (sic) main recourse was stop googling her own name and try to move on with her life despite his persistent attempts to sabotage and harass her. I thought it was worth at least forwarding the Court of Appeals decision to the potential prosecutors to see if the pattern/trend of this man's troubling behavior causes them to have more confidence in the need to pursue him in 13.82 case. I know resources and other considerations dictate case load but sometimes having another lawyer confirm this isn't a total goose chase seems helpful in giving                things                another                look.

(*See* Exhibit A.) Under the plain language of the Middlecamp Email, Lindsey Middlecamp

states that Mary Ellen Heng should do a "professional courtesy" and contact her

"counterpart" in the Saint Paul City Attorney's Office to bring frivolous criminal charges to benefit Linsey Middlecamp's "friend".  It is believed the "counterpart" is Saint Paul Assistant City Attorney Tara Petit.

20.     The plain language of the Middlecamp Email states that Lindsey Middlecamp has "a friend".  This friend is believed to be Catherine Schaefer.  Lindsey Middlecamp alleges that I "storm[ed] out of a hearing .. registered and launched a website referring to [Catherine Schaefer] by full name as a stalker and sexual predator."     With respect to instigated criminal charges, the Middlecamp Email states "the professional courtesy angle here is that I'm also aware my friend is being contacted by journalists with MPR and the City Pages…"  (*See Id*.)

21.     With respect to "storming out of a hearing" and registering a website, these allegations are simply not substantiated.  I quickly leave all hearings to avoid adverse parties.  (*See Id*.)

22.     It is worth noting that Lindsey Middlecamp had already began tweeting about me on January 24, 2017 at around 9AM and arranged for the journalists from the City Pages to contact Catherine Schaefer.  Upon information and belief, Lindsey Middlecamp feigned ignorance about the multiple angles she was playing.  (*See* Exhibit E.)

23.     In order to effectuate her improper scheme, Ms. Middlecamp states that "yesterday the Court of Appeals issued an opinion in a different matter brought by a different woman."  Upon information and belief, this woman is believed to be Grace Miller. (*See* Exhibit A.)

24.     As mentioned above, Catherine Schaefer and Grace Miller's HRO petition was intended to be used by Lindsey Middlecamp to bring frivolous criminal charges and launch an unlawful no-knock search warrant dated April 28, 2017.  Lindsey Middlecamp and Grace Miller and their representatives have acknowledged that they have spoken to and coordinated with Catherine Schaefer and her legal representation.  Upon information and belief, Catherine Schaefer's HRO petition was filed in coordination with Grace Miller and her counsel.  It is believed that Lindsey Middlecamp intended to cite Catherine Schaefer's and Grace Miller's HRO petition against me to bring frivolous criminal charges by and through her then Assistant Minneapolis City Attorney Position. Most recently, however, Catherine Schaefer's and Grace Miller's filings were cited by Lindsey Middlecamp in the instant proceedings and the January 24, 2017 email to Mary Ellen Heng as well as on her personal Twitter account @CardsAgstHrsmt.  This is exemplified by the fact that Catherine Schaefer's allegations were found to be knowingly false and made with bad faith when the Saint Paul Police conducted search warrants finding her phone allegations originated from telemarketers.  I had never met, spoken to, or knew Catherine Schaefer prior to her petition.

25.     It is worth noting that because Lindsey Middlecamp had fabricated a rape allegation, knowing that her allegation was false, Lindsey Middlecamp instead relied upon a pile-on scheme and harassment restraining order violations as her method to incite frivolous criminal charges.

26.     I have also asserted knowledge that Catherine Schaefer was provided with a *pro bono* lawyer named Peter R. Mayer from Dorsey and Whitney coordinated by Lindsey

Middlecamp.  Upon information and belief, Dorsey and Whitney also have a contract with the City of Minneapolis to augment prosecutorial staff for petty crimes.  I believe this to be the conduit for which Lindsey Middlecamp could commit to an unethical quid-pro-quo scheme to obtain *pro bono* assistance on behalf of Catherine Schaefer.

27.     In order to apply media pressure to the Saint Paul City Attorney to bring frivolous criminal charges against me, Ms. Middlecamp states that "I believe it is likely the narrative will take a position that "St. Paul is doing nothing to protect them" in light of the cops basically telling her her (sic) that her main recourse was stop googling her own name … I thought it was worth at least forwarding the Court of Appeals decision to the potential prosecutors to see …"  Upon information and belief, the term "narrative" refers to a media narrative used to exaggerate claims or to make her colleagues fearful that they may be impugned in the media over their charging decisions.  (*See Id*.)

28.     In her lengthy email, Ms. Middlecamp appears to acknowledge that all charges do not have merit and were declined multiple times by stating that it is a "total goose chase" but that Ms. Heng could promote the allegations by "giving another look" in an effort to convince Ms. Heng to adopt the bogus allegations and persuade the Saint Paul City Attorney's Office to bring frivolous criminal charges against me and serve Lindsey Middlecamp's April 14, 2017 harassment restraining order.  (*See Id*.)

<u>Persuading the Saint Paul City Attorney's Office</u>

29.     As described above, Lindsey Middlecamp drafted the Middlecamp Email intending to persuade the Saint Paul City Attorney's Office to bring frivolous criminal

charges against me and to commence a violent April 28, 2017 no-knock raid to serve her

harassment restraining order.  (*See* Exhibit A.)

30.     On January 24, 2017 at 10:06AM the Middlecamp Email was forwarded

from Ms. Heng's personal email of MaryEllen.Heng@minneapolismn.gov to Saint Paul

Assistant   City   Attorney   Tara   Patet   with   a   recipient   email   address   of

tara.patet@ci.stpaul.mn.us  In the email, Ms. Heng states "Tara ~ I am forwarding you this

email from a colleague of mine who works in our civil division.  She is friends with victim

[Catherine Schaefer or Grace Miller].  I believe you reviewed a case involving [Catherine

Schaefer or Grace Miller] and Brock Fredin.  [Lindsey Middlecamp] asked me to forward

on her email and this case to you."  Ms. Heng adopts Lindsey Middlecamp's (false)

allegations in the Middlecamp Email presented to her as a matter of course.  (*See* Exhibit

B.)

31.     On January 24, 2017 at 10:15 AM, Ms. Patet responds by indicating her

knowledge of the (false) allegations contained in the Middlecamp Email by stating, "we

just haven't had a prosecutable case presented to us yet."  Despite her knowledge the

allegations in the Middlecamp Email are false, Ms. Patet adopts the allegations contained

in the Middlecamp Email as a matter of course.  Ms. Patet states "it is clear that he's

intentionally trying to "get around" the HRO."  Ms. Patet indicates her knowledge of the

(false) allegations contained in the Middlecamp Email by declaring that all charges have

been declined multiple times.  As to vindictive prosecution, Tara Patet states "As much as

we want to get this guy, we just haven't had a prosecutable case presented to us yet."  (*See*

*Id*.)

32.     Additionally, Tara Patet also copies Saint Paul Police Officer David McCabe in her email response.  (*See Id*.)

33.     Mary Ellen Heng asks Tara Patet if she can "share" the contents of the email with Lindsey Middlecamp.  (*See Id*.)

34.     It is worth noting that Lindsey Middlecamp, Grace Miller, and Catherine Schaefer had already initiated an Internet smear campaign against me.  In attempting to refute the allegations with one or two Facebook posts, Ms. Miller, Schaefer, and Middlecamp would file knowingly false police reports to silence me while misrepresenting the public posts as "communication" in order to bring (false) frivolous charges against me. (*See* Exhibit D.)

35.     As described above, the Middlecamp Email was sent to Saint Paul Police Officer David McCabe.  On January 24, 2017 at 10:33AM, Saint Paul Police officer David McCabe states that "[Lindsey Middlecamp], I saw your email to Mary Heng, then to Tara Patet, I have been working on this case for several years now and so far everything I submitted has been declined."   Officer McCabe indicates his knowledge of the (false) allegations contained in the Middlecamp Email by stating "charges have been declined multiple times.". (*See* Exhibit C.)  Despite David McCabe's knowledge the allegations in the Middlecamp Email are false, Officer McCabe adopts the (false) allegations as a matter of course.  (*See Id*.)

36.     On January 24, 2017 at 6:41PM, Lindsey Middlecamp sends a direct email to Tara Patet without any copied parties.  The email states: "Tara, Thank you so much for

such a prompt reply and I understand the challenges and frustrations with perps who are strategic in their contact."  (*See* Exhibit D.)

37.    On January 24, 2017 at 6:41PM, Lindsey Middlecamp sends a direct email to Tara Patet without any copied parties.  The email states: "Tara, Thank you so much for such a prompt reply and I understand the challenges and frustrations with perps who are strategic in their contact. Anyway—I just wanted to be a conduit for that [Miller] decision to make it to your office and make sure the recent contact gets considered. I do think she'll take comfort knowing that the investigator and your office have a consistent set of eyes on this guy." (*See Id.*)

38.    It is worth noting the phrase "recent contact gets considered" is referring to my Match.com profile edit.  It appears that Lindsey Middlecamp is using extrajudicial avenues to seek revenge for her friends, and, most importantly, to prosecute me extrajudicially.  This is particularly so where they were attempting to collaterally use bogus harassment restraining order violations as some form of revenge for Lindsey Middlecamp's (false) and fabricated rape allegation.  (*See Id.*)

39.    It should be further noted that Lindsey Middlecamp began posting my photos, defamatory statements, and legal pleadings to her Twitter account @CardsAgstHrsmt the same day prior to the Middlecamp Email.  Lindsey Middlecamp began tweeting about me at 9AM and sent the Middlecamp Email at around 3:44PM.  It is believed Lindsay Middlecamp publicized the same (false) or petty allegations to apply pressure to the Saint Paul City Attorney's Office to reopen multiple previously declined

frivolous charges in *Miller v. Fredin,* Ramsey County District Court, Case No. 62-HR-CV-16-46 (*See* Exhibit E.)

<u>Leaking of the Miller Decision</u>

40.     As described above, Lindsey Middlecamp drafted the Middlecamp Email intending to persuade the Saint Paul City Attorney's Office to bring frivolous criminal charges against me and serve Lindsey Middlecamp's April 14, 2017 harassment restraining order.  The Middlecamp Email cited my ex-girlfriend Grace Miller and her friend Catherine Schaefer to further persuade Tara Patet and Mary Ellen Heng in the Saint Paul and Minneapolis City Attorney's Office.  (*See* Exhibit A.)

41.     Most egregious of all, I indicated that Ms. Middlecamp began tweeting about the Miller Decision in early to middle January 2017 prior to its official release of January 23, 2017.  In those tweets on @CardsAgstHrsmt, Ms. Middlecamp or her parties indicated that Minnesota Court of Appeals Judge Kevin G. Ross "destroyed Brock Fredin" in the Miller Decision.   Knowing that her improper conduct would be potentially criminal and discoverable, Ms. Middlecamp deleted those tweets and began a new set of tweets about the Miller Decision on January 24, 2017 following the Miller Decision's official release.

42.     In that decision, the Ramsey County District Court redacted and removed Ms. Miller's continuing emails to me (even after she filed her harassment restraining order) making it impossible for the Court of Appeals to be completely informed and totally unable to ascertain the true fact that I updated the public portion of a Match.com profile to say "I am so sorry" after receiving countless unsolicited emails from Ms. Miller.   I never responded, sent messages, particularly after any order was issued.

43.     The panel in the Miller decision included Judge Ross, Jesson, and Schellhas. Upon information and belief, both Judge Lucinda E. Jesson and Ms. Middlecamp attended the same law school (although at very different times).

### Lindsey Middlecamp's Fictious Rape Allegations

44.     As described above, Lindsey Middlecamp drafted the Middlecamp Email intending to persuade the Saint Paul City Attorney's Office to bring frivolous criminal charges against me and serve Lindsey Middlecamp's April 14, 2017 harassment restraining order.  It is believed Lindsey Middlecamp scheme was part-in-parcel to a fabricated rape allegation she presented to Saint Paul Police Officer David McCabe who began an investigation. (*See* Exhibit A; C)

45.     It is worth noting that because Lindsey Middlecamp knew her rape allegation was false, Lindsey Middlecamp instead relied upon a pile-on scheme and harassment restraining order violations as her method to incite frivolous criminal charges.

46.     As to the false rape allegations, the Middlecamp Email appears to be directed at the Saint Paul Police Sex Crimes Unit.  It is my belief that this is the first time I have seen such evidence and had no idea that David McCabe was associated with the "Sex Crimes Unit".  (*See* Exhibit C)

47.     As described above, the Middlecamp Email was forwarded with a subject line titled "Brock Fredin" through Mary Ellen Heng and Tara Patet to Saint Paul Police officer David McCabe.  David McCabe responded on January 24, 2017 at 10:33AM.  David McCabe appears to respond to Ms. Middlecamp by name.   David McCabe's email signature is "Sergeant David McCabe Sex Crimes Unit."  (*See Id*)

48.     In his response, David McCabe responds by saying, "[Lindsey Middlecamp], I saw your email to Mary Heng, then to Tara Patet, I have been working on this case for several years now and so far everything I submitted has been declined."  David McCabe's reference to "them" is believed to be the Saint Paul City Attorney's Office.  (*See Id*)

49.     With respect to David McCabe investigation, it is my belief that he was investigating a fabricated rape allegation presented to him from Lindsey Middlecamp. (*See Id*)

50.     As to David McCabe's knowledge of Lindsey Middlecamp's false allegations, he states everything he has submitted "has been declined."  (*See Id*)

51.     Most egregious of all, on February 22, 2017 Ms. Middlecamp made a false rape allegation against me on her @CardsAgstHrsmt Twitter account.  The tweet was retweeted thousands upon thousands of times.  I had never spoken to, met her, knew anything about her, or knew who she was.  The allegation also contained tweets where Lindsey Middlecamp calls herself "the henchman of the totalitarian feminist movement" and several other completely improper remarks.[1]  (*See* Exhibit *E.*)

52.     Moreover, Ms. Middlecamp has made similar false allegations against hundreds of men on the same or similar accounts and has generated a significant media presence describing "rape culture" and making anonymous rape allegations against

---

[1] *See* e.g., https://twitter.com/CardsAgstHrsmt/status/844180580237365248; https://twitter.com/cardsagsthrsmt/status/823941229079470080?lang=en

unnamed men in various national publications e.g., BuzzFeed, Yahoo news, Huffington Post, etc.

53.     More importantly, in order to amplify her false allegation, Ms. Middlecamp timed her false rape allegation release the same day as a February 22, 2017 article concerning me in the *City Pages*.  Upon information and belief, Lindsey Middlecamp's false rape allegation was retweeted thousands of times.

54.     In April 2017, David McCabe stated his knowledge that he had investigated rape allegations originating from Lindsey Middlecamp concerning me.  Officer McCabe stated to me "you did not rape anyone."

55.     Lastly Lindsey Middlecamp drafted the Middlecamp Email intending to persuade the Saint Paul City Attorney's Office to bring frivolous criminal charges against me and serve Lindsey Middlecamp's April 14, 2017 harassment restraining order collaterally over a fabricated rape allegation and to reopen previously declined charging decisions.  It is my belief these allegations were also used to silence my criticism of her activities.  (*See* Exhibit A.)

### The April 14, 2017 Middlecamp *Ex-Parte* HRO

56.     As described above, Ms. Middlecamp leaked the Miller Decision to her own anonymous media platform @CardsAgstHrsmt.   (*See* Exhibit *E.*)

57.     On April 4, 2017, after discovering Lindsey Middlecamp's identity, I published a Facebook post identifying Grace Miller, Catherine Schaefer, and Lindsey Middlecamp by name.  (*See* Exhibit F.)

58.    On April 14, 2017, after learning of the Facebook post identifying Ms. Middlecamp by name, Ms. Middlecamp filed an *ex-parte* harassment restraining order in Ramsey County captioned *Middlecamp v. Fredin*, Case No: 62-HR-CV-17-233 ("Middlecamp HRO").  (*See Id*.)

59.    With respect to the Middlecamp HRO, on April 14, 2017 at 9:24AM it is believed that Ms. Middlecamp alerted the Minneapolis City Attorney's Office of the Middlecamp HRO and used the Middlecamp HRO to create a (false) security alert bulletin by either directly herself or telling her boss to send a group interoffice email attaching the Facebook post titled "Attention: Security Matter" to:

- Laroen, Barb G.;
- Criminal Division Attorneys;
- Criminal Division Specialists;
- Civil Division Attorneys;
- Civil Division Specialists;
- Mawer, Emily

(*See* Exhibit F; G *Id.* ¶ at 1.)

60.    With respect to the security bulletin, several Assistant Minneapolis City Attorneys stated confusion as to how such a harmless post identifying Lindsey Middlecamp could create a security bulletin:

- "I hate it when the bosses send cryptic shit like that and don't inform folks about what the fuck is actually going on."  - Burt T. Osborne (*See* Exhibit G.)

- "I have no idea.  It's weird because his legal stuff never happened even happened in Hennepin County."  - Paula Kruchowski (*See Id*.)

- Furthermore, Paula Kruchowski appears to have taken improper steps to research or investigate my name without valid reason.[2]  It is believed Paula Kruchowski requested Thomas Miller improperly do the lookup: Thomas Miller responded by email to Paula Kruchowski stating: "Thanks!  F.Y.I. I could not locate anything in civil PM that involves him."  (*See* Exhibit H.)

-  "Brock is my friend … here's what I know.  It's totally Jerry Springer too." – Paula Kruchowski (*See* Exhibit G.)

- In reference to the Miller Decision, "The decision is awesome so pull it up on Westlaw. It's written by Ross, which should tell you a lot right there". – Paula Kruchowski (*See Id*.)

61.    It should be further noted that there was no threat and that Lindsey Middlecamp deliberately created such a threat to incite frivolous criminal charges after filing her April 14, 2017 Middlecamp Order in Ramsey County to pile-on without proper jurisdiction in what appears to be a way to avoid being held accountable for the Middlecamp Email.   Lindsey Middlecamp knew that I was domiciled in Hudson, Wisconsin when she used a no-knock search warrant to serve me here.   Lindsey Middlecamp lived and worked in Hennepin County.  As to her forum shopping, Lindsey Middlecamp filed her Middlecamp Order in Ramsey County in seeking Referee Clysdale's friendly rubber-stamp and to pile-on orders.  (*See Id*.)

---

[2] Minneapolis Attorney claims she was "oogled by scores of men."  *See* e.g., http://www.startribune.com/mpls-attorney-claims-she-was-oogled-by-scores-of-men/236425531/

<u>The April 28, 2017 No-Knock Violent Raid</u>

62.     As described above, Lindsey Middlecamp drafted the Middlecamp Email intending to persuade the Saint Paul City Attorney's Office to bring frivolous criminal charges against me and the April 28, 2017 raid was procured to serve her April 14, 2017 Middlecamp Order.  Moreover, in the proposed Writ of Prohibition and the IFP motion, I incorporated identical allegations.

63.     I have alleged that criminal charges were only reopened following Lindsey Middlecamp's April 14, 2017 Middlecamp Order petition.  As to the merits of that petition, I was denied any rights, and Referee Clysdale entered a profoundly unconstitutional gag order to silence me and coverup Lindsey Middlecamp's improper actions including the January 24, 2017 Middlecamp Email.  (*See* Exhibit A.)  This order was lampooned by legal circles, including former 9th Circuit Appellate judge Alex Kozinski and UCLA law professor      Eugene      Volokh.      See      comments      section      in https://reason.com/2018/05/08/minnesota-court-apparently-orders-man-no-/#comments

64.     Catherine Schaefer entered a police report alleging that Referee Clysdale and Lindsey Middlecamp have a "mutual bestie" and have been "hanging out for years".  Upon information and belief, this "mutual bestie" is Mary Ellen Heng and/or Tara Patet.  (*See* Exhibit I.)

65.     As to Susan Segal's knowledge, Susan Segal sent another email to deputy Minneapolis City Attorney Erik Nilssen on August 22, 2017 concerning me.  This time window lines up with a final order and hearing in the April 14, 2017 Middlecamp HRO. (*See* Exhibit K.)

66.     The above emails indicate that at a minimum the April 14, 2017 Middlecamp harassment restraining order, security alert bulletin, and the false flags were used to vindictively prosecute me over First Amendment based activity as a red herring over a false rape allegation.

## MINNEAPOLIS CITY ATTORNEYS OFFICE
## DELETION OF ALL FOIA PRODUCTION RECORDS

67.     On April 17, 2018 Minneapolis Police records supervisor Lisa Lamor sent an email to Mary Zenzen, manager of Minneapolis Police Record Services, that she "received the following request" and that it may "apply potentially to MPD". (*See* Exhibit J.)

68.     On October 28, 2018, shortly after I was sentenced to a year in jail, it appears that Mary Zenzen sent an email to Minneapolis Police records specialist Kyle H. MacDonald saying "Kyle, please see the attached request … we can discuss how to approach the review."  The term "how to approach review" appears to indicate a deliberate delay in response.  (*See Id.* ¶ at 5.)

69.     As evidence of the Minneapolis City Attorneys oversight into such records, On October 31, 2018, Kyle MacDonald responds to Mary Zenzen stating that he has "completed reviewing a number of emails related to the requestor.  I initially searched MPD/police locations which yielded around 120 documents."  Mr. MacDonald also states that "I'm not sure if others have reviewed these emails as part of City Clerk review or City Attorney's Office.  I marked many documents for Attorney review, mainly because most of these documents involve Susan Segal and other attorneys in the CAO. The documents

are in DISCO under the folder MPD 9648.  I've included Carol on this email as part of Attorney review."  (*See Id.* ¶ at 5.)

70.    In line with the deliberate delay in production, On April 1, 2019 Kyle H. MacDonald stated, "I've completed the review of the Brock Fredin documents. I think this one initially came through the clerk's office. Everything has been reviewed by me and Carol B. I'll load this and the Horowitz request on to a flash drive. I'm assuming that you would want to handle contact with the requestor?"  It is believed the requests were strategically delayed to hide production concerning a June 2018 criminal trial in *State v. Fredin*, Ramsey County District Court, Case No. 62-CR-17-3056 and a March 2019 trial in *State v. Fredin*, Ramsey County District Court, Case No. 62-CR-18-157 ("Middlecamp Criminal") concerning Ms. Middlecamp.  Moreover, the requests were timed to coincide with my release from the Ramsey County workhouse on June 12, 2019.  (*See Id.* ¶ at 6.)

71.    In order to cover up Ms. Middlecamp and the Minneapolis City Attorney's Office official misconduct, on Mary 31, 2019, Minneapolis Police Departments records unit specialist Kyle H MacDonald sent an email to his supervisor Lisa Lamor stating: "I'm not sure what happened with this request.  I have a folder labeled Fredin production however its empty.  I'm looking through my assorted flash drives and I don't see anyone labeled 9648 or 181303."  The production requests appear to have been deleted at some point after the Minneapolis City Attorney's Office review to deliberately hide the records."  Upon information and belief, Mary Ellen Heng has knowledge and motive concerning the deletion of this record set concerning me. (*See Id.* ¶ at 7.)

72.     On October 18, 2019, I received an email from Minneapolis Records

Management Specialist Jacob Crawford stating:

> Good morning,
>
> I'm reaching out to you today because our records show that you
> submitted a Data Practices request to the City of Minneapolis at the
> beginning of April in 2018. Unfortunately, our office has experienced a
> significant amount of turnover in the last year, and the person previously
> working on your request is no longer at our office. We noticed that we
> couldn't find a record of data ever being sent to you for your request.
>
> If you are still interested in receiving data, could you please reply all to
> the to this email letting us know? If we do not receive a response from
> you by COB on October 28th, we will assume that you are no longer
> interested in receiving the data you requested.
>
> If you have any questions or concerns, please let us know.

73.     As to a cover up, the phrase "We noticed that we couldn't find a record of

data ever being sent to you for your request." Is illustrative of deliberate attempts to prevent

the January 24, 2017 Middlecamp Email from being disclosed through trial sequences in

1) *State of MN. v. Brock Fredin*, 62-CR-17-3156; and 2) *State of MN. v. Brock Fredin*, 62-

CR-18-157.   (*See* Exhibit O.)   Most importantly, previous email exchanges between

records employee state "do not communicate directly with the requestor" appears to

indicate a planned delay or instructions from the Minneapolis City Attorney's Office to

strategically delay the release of these records.

74.     It should be further noted that the FOIA request was only provided to me

following the September 30, 2019 close of discovery in the above-captioned federal cases.

It is my belief that this delay was coordinated and aligned by the Minneapolis City

Attorney's Office to bypass discovery in these matters.   (*See Id.*)

75.     Unfortunately, I believe that K. Jon Breyer and the Ballard/Spahr/Lindquist Vennum Firm maintain a conflict of interest.  K. Jon Breyer is deeply entrenched in an Inn of Court maintained, governed, and run by my biological sister and this FOIA request provides significant information (not disclosed here) indicating a conflict of interest with K. Jon Breyer 's representation.  Paula Kruchowski uses my sister's last name in reference to me in an attempt to do improper lookups in reference to the Middlecamp Email and/or the April 28, 2017 Raid or the Middlecamp HRO to either prevent it or inflict it upon me.  Upon information and belief, K. Jon Breyer is using free *pro bono* representation as a vehicle to protect information passed between Paula Kruchowski and sadly between sister or to generally hide information.  (*See* Exhibit H.)

76.     K. Jon Breyer has represented each of these women in several cases, including practicing law in Saint Croix County, Wisconsin without a known Wisconsin attorney license registration or *pro hace vice* status.  Upon information and belief, this is illustrative of ongoing coverups.

## CONCLUSION

77.     Based on Lindsey Middlecamp's felony obstruction of justice, I was given an illegal executed jail sentence.  Between October 17, 2018 to June 12, 2019 I was illegally jailed at the Ramsey County Workhouse on a first-time misdemeanor level (false) offense.  During this time, I lost my mother.  Lindsey Middlecamp deprived me of access to my dying mother and continued to taunt me while she was dying to thousands of users on @CardsAgstHrsmt and @TonyWebster.  Between June 29, 2019 and September 3, 2019,

I was exonerated on First Amendment grounds.  (*See* September and October Status Letters

in *State v. Fredin,* Minnesota Court of Appeals, Case No. A18-0085.)  (*See* Exhibit L-N.)

### Damages for Defendants Conduct

78.    As to costs, Defendants have maliciously entered between nine (9) to twelve

(12) frivolous cases against me without justification. I paid counsel Halberg Defense

around $16,000 and Nathan Hansen $12,000.   I paid other lawyers around $1000 for other

consulting fees.

79.    I have paid Referee Street and Clysdale's court reporter between $1,000 and

$2,000 for transcripts.

80.    I have incurred other expenses to defend these actions, such as travel costs,

printing costs, and other expenses.  I will be able to provide an exact total at trial in this

matter.

### Other Damages Based on Lindsey Middlecamp, Grace Miller, and Catherine Schaefer's Actions

81.    In addition to the costs associated with defending the criminal and family

court actions, I suffered significant damages as a result of Defendants conduct.

82.    I have incurred other expenses to defend these actions, such as costs to

replace iphones, computer equipment, and other electronics taken during the April 28, 2017

raid.  I will be able to provide an exact total at trial in this matter.  I paid to replace and

install the front door that was destroyed upon entry, as well as, damage to the hardwood

flooring, and carpet during the April 28, 2017 raid.

83.    For the reasons stated above and in my accompanying memorandum of law,

I respectfully request that a professional responsibility complaint be asserted against

Lindsey Middlecamp, a referral to the Hennepin County and Ramsey County Attorney's Office for possible felony prosecution, a harassment restraining order issued in favor of me asserted against Lindsey Middlecamp, and that a preemptory Writ be issued with respect to my October 13, 2019 Writ of Prohibition and IFP motion.

Pursuant to Minn. St. 358.116, I declare under penalty of perjury that everything I have stated in this document is true and correct.

Dated: October 29, 2019
Milwaukee, WI

/s/ Brock Fredin

_____

Brock Fredin
Milwaukee, WI
(612) 424-5512 (tel.)
brockfredinlegal@icloud.com
*Plaintiff, pro se*