## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BROCK FREDIN,<br><br>                    Plaintiff,<br><br>--against--<br><br>LINDSEY MIDDLECAMP,<br><br><br>                    Defendant. | Case No. **0:17-cv-03058-SRN-HB**<br><br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS** |

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se*, hereby submits this memorandum of law in opposition to Lindsey Middlecamp's ("Defendant") February 7, 2020 Motion for Sanctions ("Sanctions Motion") in the above-captioned matter.

## PRELIMINARY STATEMENT

As set forth herein, Defendant's Sanctions Motion (disguised as a Summary Judgement motion) seeking to Dismiss Counts I and III of the Amended Complaint should be denied with prejudice, struck, and sanctioned.  Plaintiff has plausibly alleged facts through all pleading stages and completely complied with the Court's October 25, 2019 Order compelling discovery by providing responsive documents, interrogatories, and attending the December 5, 2019 deposition in good faith to support claims for defamation (Count I) and intentional infliction of emotional distress (Count III) in the Amended Complaint as discussed more fully below.  Furthermore, Defendants were unable to provide any new evidence whatsoever through any pleading stage or

1

discovery to contravene the substantive basis for Count I and III on the merits.[1]   Instead, Defendants missed all deadlines related to filing a summary judgement motion and now improperly attempt a desperate post-fourth quarter Hail Mary pass (when the game is already over) in seeking sanctions based off gratuitous and ad-hominem attacks.   Defendant throws a temper tantrum alleging she was "fram[ed]" with respect to her own actions and the fact Plaintiff outed her while attending the December 5, 2019 deposition.   (*See* Def. Mot. Sanc. 9;  *See* also Breyer Decl. Ex. A at 143-147, Ex. B.)   Defendant never claimed she was "fram[ed]" prior to this motion despite access to the same evidence and having years of opportunity to make the argument.   Even at this late stage, however, Defendant's refusal to take responsibility for her actions is extremely concerning and outrageous.   Defendant's claim that she is a victim is still farcical.    Defendant even continues her cowardly acts to silence Plaintiff within the February 7, 2020 Sanctions Motion. Defendant's motion for sanctions is completely frivolous and only further lends credence to Plaintiff's contentions that Defendant is operating in coordination with several other counsel to harass and silence Plaintiff.   In line with this desperation, Defendant improperly published bloody photographs in her Sanctions Motion of Plaintiff's dead bruised mother in an effort to cause Plaintiff even further emotional distress and sicken the Court.[2]  *Id.*   These photographs have no casual connection to this motion or the case and must be struck and sanctioned as described below. Furthermore, it appears that the portions of the deposition Defendant specifically targeted in her Motion for Sanctions are K. Jon Breyer's ("Attorney Breyer") questions related to Plaintiff's family, namely his biological sister and late mother who knew about relevant discoverable details

---

[1] Plaintiff is severely prejudiced without obtaining limited discovery from Defendants.

[2] Because Defendant and her counsel K. Jon Breyer and Adam C. Ballinger viciously published bloody photos of Plaintiff's dead mother on ECF, Plaintiff will be challenged to have a civil conversation with these two (2) individuals ever again.   He requests that any future meet and confer be suspended.   Plaintiff also requests an immediate redaction and apology.   Defendant sealed the basis for Count III by filing these photographs.   Plaintiff alleges that this is an act of Defendant's bad faith.

of the issues in this case.  In addition to attacking Plaintiff, Defendant is now blatantly attacking

Plaintiff's family in legal pleadings.  Moreover, Plaintiff complied with all discovery requirements

to the best of his ability.   The portions of interrogatories or requests for production identified

initially by Defendant as disorganized or relevant to their defense – were completely refactored,

answered again and organized to match each numbered request – providing exhaustive lists of

likely hundreds or thousands of documents and succinct answers neatly organized.  They were

timely delivered by email and posted to the discovery Dropbox.com folder.  (*See* Pl. Decl. Ex. A-

D.)  Defendant utterly failed to provide any documents leaving Plaintiff to rely on Freedom of

Information Act ("FOIA") requests to unearth her felony misconduct which she conveniently

withheld from Plaintiff for upwards of three (3) years and twelve (12) pile-on state court cases.

Moreover, as further proof of state coordination and collusion, the FOIA documents were released

shortly after the October 1, 2019 discovery deadline in this action.  (*See* Pl. Decl. Ex. E.)  Plaintiff

requests that this Court compel Attorney Breyer and Ballinger to release any communication or

documents passed between other counsel related to this litigation and the three (3) pile on sanctions

motions described below.  This document passing is not protected by attorney-client privilege.

Therefore, Plaintiff opposes Defendant's Sanctions Motion as he has properly stated claims

for Counts I and III, complied with the October 25, 2019 Order compelling discovery, provided

responsive documents, and attended the December 5, 2019 deposition in good faith.  Second,

Defendants Motion for Sanctions substantially missed the dispositive deadline by a week causing

prejudice to Plaintiff.  Plaintiff requests sanctions seeking relief that the motion be excluded

or struck for improperly filing a non-dispositive Motion for Sanctions week(s) past the

January 24, 2020 dispositive deadline where it was disguised as a Summary Judgement

motion.  Furthermore, this appears to be a pile-on tactic where counsel from several cases

all file or make frivolous sanctions request at the same or similar time further proving Defendants coordination and collusion.[3]  As a result, Plaintiff respectfully requests that this Court dismiss the Sanctions Motion in its entirety and order sanctions against Defendant and her counsel for the reasons set forth more fully below.

## STATEMENT OF FACTS

As an initial matter, Defendant's memorandum of law in support of their Motion for Sanction is replete with material misrepresentations, distortions of the facts and assertions that are simply not pertinent to the Motion for Sanctions.  Plaintiff must set the record straight as a result.  Defendant's attempts to portray herself as a victim is still farcical. Rather, as the December 5, 2019 deposition attendance details, along with all responsive documents produced, including the October 28, 2019 FOIA production, Defendant is an individual who used her official position as an Assistant Minneapolis City Attorney to terrorize, bully and destroy the lives of Plaintiff and his family, a man she had never met, she alone deciding if he should be publicly shamed, tortured, assaulted, imprisoned, and destroyed while hiding behind the camouflage of an anonymous Twitter account, @CardsAgstHrsmt, and her extremely powerful role as a then state prosecutor.  It remains concerning that she now possesses an even more powerful role as a federal prosecutor in this District.

The course of behavior is evident by the fact that nowhere in her Sanction Motion does she even attempt to deny that she maliciously destroyed Plaintiff's life.  Indeed,

---

[3] The Court can see the pile-on coordination and collusion he has experienced for the past five (5) years in state court.

4

Defendant would like for this Court to believe that this matter begins and ends with the October 25, 2019 Motion to Compel Discovery.   What Defendant would like this Court to ignore is that she sent numerous emails as an Assistant Minneapolis City Attorney to maliciously prosecute Plaintiff over her false rape allegation – a person that she had never met – in retaliation for her contention that Plaintiff called her friend a "stalker" and "sexual predator". (*See* Pl. Decl. Ex. E.)  And, Defendant glosses over the fact that she only sought an HRO in an attempt to conceal her identity and felony actions after Plaintiff began engaging in legitimate and lawful actions to discern her identity and pursue legal remedies to start removing the defamatory tweets Defendant posted about Plaintiff on @CardsAgstHrsmt.   Defendant concedes that the impetus of the Sanctions Motion stems from Plaintiff's December 5, 2019 deposition attendance. (*See* Def. Mot. Sanc. ¶ 10.) Defendant claims that sanctions are appropriate for attendance to a seven (7) hour deposition where he answered questions in good faith are unequivocally fabricated, including her accusations that Plaintiff harassed her by speaking to others about her abhorrent behavior.   Moreover, the City of Minneapolis produced an early 2018 FOIA request after the October 1, 2019 discovery deadline in this case.

As the October 28, 2019 FOIA request indicates, Defendant made the false rape allegation in retaliation for Plaintiff allegedly calling Defendant's friend, Catherine Schaefer, a "stalker" and "sexual predator".  (*See* Pl. Decl. Ex. E.)  Plaintiff further contends that after Plaintiff allegedly called Defendant's friend, Ms. Schaefer, a "sexual predator" and "stalker", Defendant contacted the Bloomington[4] City Attorney's Office, Saint Paul Assistant City Attorney Tara Patat, and Saint

---

[4] In March 2018, Plaintiff's brother's family was inadvertently and innocently eating at Twin Cities Grill at the Mall of America while Defendant was apparently also there likely for a legal conference related dinner.  Plaintiff was not in attendance and his brother or his family were not doing anything wrong nor do they have any history of misconduct.  Defendant called the Bloomington Police department on his family including young children.  Upon information and

Paul Police Sergeant David McCabe to make a false rape allegation in retaliation.  (*See* Pl. Decl. Ex. F.)  Specifically, Deputy Saint Paul City Attorney Laura Pietan sends an email to Deputy Minneapolis City Attorney Mary Ellen Heng stating "I'd like to reach out to Bloomington Criminal Deputy to see if she/he would consider reviewing a case involving Brock Fredin and one of our employees.  I'd ask you – but I understand your office has ties to this defendant as well.  I went to the Blooming CA website, (sic) but can't locate info on Deputy – can you hook me up?  (*See* Pl. Decl. Ex. F at p 7.)  Deputy Minneapolis City Attorney Mary Ellen Heng sent an email on December 14, 2017 to then Saint Paul Assistant City Attorney and current Washington County Judge Laura Pietan stating "I always contact their senior attorney Erica Glassberg.  Her email is eglassberg@bloomington.gov.":  *Id at page 7.*  Plaintiff also provided this evidence to Defendant through discovery.  (*See* Pl. Decl. Ex. A-D.)

In yet even more retaliation, Defendant leaked fodder to the *City Pages* alleging Plaintiff was a "stalker" and Defendant published a February 22, 2017 Twitter post alleging he "raped" an unknown woman.  (*See* Pl. Decl. Ex. E.)   Both the *City Pages* article and Defendant's false rape Tweet occurred on the same day lending further credence to coordinated activities.  *Id.*  The FOIA request was suspiciously timed to be excluded from discovery in this matter that may have otherwise granted the October 22, 2019 limited discovery motion.  (*See* Pl. Decl. Ex. H.)

On November 15, 2019, Plaintiff timely emailed Attorney Breyer and Ballinger with responsive documents, interrogatories, and attended the December 5, 2019 deposition.

---

belief, the children began crying when Bloomington police officers arrived.  After reviewing this FOIA email to the Bloomington City Attorney's Office, Defendant's outrageous March 2018 action makes greater sense.  (*See* Pl. Decl. Ex. F at 7.)

Plaintiff confirmed his attendance to the December 5, 2019 deposition by emailing Attorney Breyer and Ballinger on December 4, 2019.

## **LEGAL STANDARD**

Stating that Rule 37(c) sanctions apply only if the party fails to disclose a Rule 26 expert report in a timely manner. *North Star Mutual Insurance Company v. Zurich Insurance Co*., 269 F. Supp. 2d 1140 (D. Minn. 2003)  Rule 16(b) assures that '[a] magistrate judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . without peril.'"  *Archer Daniels Midland v. Aon Risk Servs*., *Inc*., 187 F.R.D. 578, 582 (D. Minn. 1999)" *Klein v. Affiliated Grp., Inc.*, Civil No. 18-cv-949 DWF/ECW, at *9 (D. Minn. Jan. 17, 2019)  ""The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks*, *Inc*., 532 F.3d 709, 716-17 (8th Cir. 2008) (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006))" *Klein v. Affiliated Grp., Inc.*, Civil No. 18-cv-949 DWF/ECW, at *9 (D. Minn. Jan. 17, 2019)  The Eighth Circuit has strictly construed Rule 37(d) to only to apply to a failure to appear at a deposition, as opposed to not answering questions.  *See Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir. 1994); *see also AGinformationData*, *LLC v. Integrated Sols*. *Grp*., *Inc*., No. 11-cv-3673 (DWF/JSM), 2014 WL 12610208, at *11 (D. Minn. Mar. 20, 2014)  *Klein v. Affiliated Grp., Inc.*, Civil No. 18-cv-949 DWF/ECW, at *28 (D. Minn. Jan. 17, 2019)  "Rule 37(c)(1)'s imperative serve "to avoid unduly harsh penalties" that may result from an inflexible application of the Rule. " *Transclean Corporation v. Bridgewood Services*, 101 F. Supp. 2d 788 (D. Minn. 2000)  "[E]xclusion of evidence should not apply if the offending party's failure was `substantially justified,' or if the failure was `harmless.'"  *Corporation v. Bridgewood Services*, 101 F. Supp. 2d 788 (D. Minn. 2000)  Rejecting "contention that Fed. R. Civ. P. 37(b) 'dictates' that sanctions 'must be awarded'

against a party who fails to obey a discovery order. Instead, Rule 37(b) vests courts with broad discretion to issue sanctions for failure to comply with discovery orders." *Ackerman v. PNC Bank*, Civil No. 12-CV-42 (SRN/JSM) (D. Minn. Jan. 23, 2014)

## ARGUMENT

The dismissal of Counts II and III would be improper in this case as a matter of law. First and foremost, Defendant cannot win on the merits so she files a frivolous Rule 37 Sanctions Motion not designed for dismissal.  Additionally, as this memorandum of law will describe in more detail below, sanctions must be rejected because Plaintiff did not willfully violate any discovery order and did not act in the presence of bad-faith.  Plaintiff's complete compliance with the October 25, 2019 Order Compelling discovery does not prejudice Defendant.  Rule 37 provides that sanctions can only be used if a party fails to attend a deposition and not for refusing to answer unrelated questions. Thirdly, Plaintiff timely provided responsive documents, interrogatories, and attended the December 5, 2019 deposition in good faith.  Plaintiff answered questions completely.  Fourth, Plaintiff believes that Defendant was actually using her December 5, 2019 deposition to seek insights and gain admissions in her state court fifty-year harassment restraining order case. Finally, as the memorandum will describe, Plaintiff requests sanctions where Defendant collaterally piled-on three (3) frivolous sanctions requests in coordination with several other counsel at the same time.  This includes a request that Attorney Breyer and Ballinger produce any documents or communication passed between counsel in other cases related to the pile-on sanctions requests.  And, a sanction requiring limited discovery by Defendant that includes all documents and communication passed between Defendant and Ms.

Schaefer and Miller, and, most importantly, the identity of the false rape allegation. Defendant crossed the line by publishing an exhibit containing unredacted photographs of Plaintiff's bloodied mother.  Plaintiff respectfully requests the Court sanction by striking Defendants portion of the exhibit containing these photographs of Plaintiff's mother.  For the reasons set forth below, the Court should dismiss the motion in its entirety.

## I. Defendant Cannot Win on the Merits, so She Files a Frivolous Rule 37 Sanctions Not Ordinarily Designed for Dismissal

As described above, a Rule 37 sanction is ordinarily designed to exclude evidence.  In determining whether the automatic exclusion provisions of Rule 37(c)(1) should apply, the Court considers the following four (4) factors in assessing the substantiality of any proffered justification for the failure to disclose, as well as the harmlessness of that failure: 1) the importance of the excluded material; 2) the explanation of the party for its failure to comply with the required disclosure; 3) the potential prejudice that would arise from allowing the material to be used at Trial, or on a Motion; and, 4) the availability of a continuance to cure such prejudice. *See*, *Transclean Corp. v. Bridgewood Services, Inc*., supra at 1064, citing *Citizens Bank v. Ford Motor Co*., 16 F.3d 965, 966 (8th Cir. 1994); Millen v. Mayo Foundation, 170 F.R.D. 462, 465 (D. Minn. 1996); *see* also, *Trilogy Communications. Inc. v. Times Fiber Communications*, Inc., 109 F.3d 739, 744 (Fed. Cir. 1997).  *Transclean Corporation v. Bridgewood Services*, 101 F. Supp. 2d 788 (D. Minn. 2000)

As to the first prong, Plaintiff contends the evidence was provided.  The same evidence was already proffered in this discovery, outlined in state court case discovery, and provided to Defendant.  Moreover, the same originally sourced evidence was obtained through Gmail,

Dropbox, Google One Drive, and the like which is not tied to a specific physical device.  Therefore, the device used to acquire the evidence is not important.  Moreover, it is harmless.

As to the second prong, Plaintiff believes he has provided the same discovery.  The evidence was primarily through email or documents contained in state court cases that were already produced.  Plaintiff was technically homeless, did not have income, or funds during discovery.  Moreover, the devices were seized during the April 28, 2017 raid and were tainted.  Plaintiff opened one phone, which he searched, and a MacBook Pro (with the same evidence) which he searched and provided as discovery in this case.  The macbook pro contained the exact same evidence from Apple's iCloud.  Defendant seems overly obsessed with Plaintiff's devices particularly those devices that were never used during the same timeline as these allegations.  Defendant seeks exhaustive burdensome searches through Plaintiff's private life spanning likely ten (10) to fifteen (15) years as evidenced by these tactics, questions related to his past relationships, and so on.  As evidenced by the FOIA request, discovery should have been limited to allegations related to calling Ms. Schaefer a "stalker" and "sexual predator" and Defendant's retaliation.  Instead, she timed the FOIA release to conduct broad searches through Plaintiff's personal life to advance her doxing campaign.  Many of the usernames reported (that were unknown to Defendant) were suddenly "reported" and banned.

As to the third prong, excluding any evidence from Plaintiff's case particularly when Defendant has withheld evidence for years evidenced by the October 28, 2019 FOIA production would be severely prejudicial.  This is particularly so where Plaintiff has already been denied discovery and is severely prejudiced.

As to the fourth prong, there is availability for a continuance.

## II.   <u>Sanctions Must be Rejected</u>

In her Sanctions Motion, Defendant claims that Plaintiff "willfully" violated the October 25, 2019 Order Compelling Discovery and that it caused "prejudice" to her. (*See* Def. Mot. Sanc. ¶ 7-9 generally.) Plaintiff contends that he (1) timely provided discovery in good-faith; (2) attended the deposition in good faith and fully answered relevant questions in good-faith; and (2) therefore caused no prejudice to Defendant.

## A.  Willful Violation

A willful violation can only include making "no effort to respond to the document requests at all and has [providing [ no excuse … [answering] a portion of the Defendants' interrogatories and objected to and refused to answer the rest … constitute[ing] a deliberate failure to comply with the Discovery Order." *Haggins v. Ramsey Cnty.*, No. 0:15-cv-00059-DWF-KMM, at *6 (D. Minn. Aug. 22, 2017)  Pursuant to the original discovery Order and the October 25, 2019 Order to Compel, Plaintiff contends that he timely answered interrogatories completely in good-faith, attended the December 5, 2019 deposition, and provided timely document productions. (*See* Pl. Decl. Ex. C.; D.)  Moreover, his original single inadvertent error or violation was a mistake and not residue of bad-faith.  Any "Court makes plenty of inadvertent errors itself, and thus [any] Court generally overlooks inadvertent errors, as it did with respect to [a party's] first violation of the rule." *Northbrook Digital, LLC v. Vendio Services, Inc.*, No. 07-CV-2250 (PJS/JJG), at *5 (D. Minn. June 9, 2008)

Plaintiff has not "repeatedly failed to comply with discovery orders or destroyed evidence." *Schubert v. Pfizer, Inc.*, 459 Fed. App'x 568, 572-73 (8th Cir. 2012)  Dismissal is only appropriate when a party repeatedly failed to comply in bad-faith.  Other cases involve multiple violations of discovery orders, which are not present here.  *See*, *e.g.*, *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 722-23 (8th Cir. 2010) *Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202, 1208 (8th Cir.1983)

(affirming the district court's dismissal sanction for failure to comply with a discovery order where the plaintiff "repeatedly failed to respond to discovery requests on time, even after [defendant] agreed to extensions," then failed to comply with a discovery order, and failed to appear at a hearing on a second motion to compel). *See Keefer v. Provident Life and Acc. Ins. Co.*, 238 F.3d 937, 940 (8th Cir. 2000)" at 941 (affirming dismissal where the plaintiff admitted obliterating golf tee times from the calendar and failed make a good-faith effort to reconstruct entries as required by court order);

## B. Prejudice to Defendant

In the context of a Rule 37(b)(2) motion "'prejudice' exists if the failure to make discovery impairs the opponent's ability to determine the factual merits of the party's claim." *See Haggins v. Ramsey Cnty.*, No. 0:15-cv-00059-DWF-KMM, at *7-8 (D. Minn. Aug. 22, 2017) (quoting *Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 559 (8th Cir. 1992)) Plaintiff contends that Defendant seeks to determine the merits of her false rape allegation. Plaintiff has never raped anyone. Defendant is unable to disclose the identity of any known individual alleged to have been raped. Defendant is unable to disclose any factual details that would lend credence to her allegation through multiple pleading stages and years of evidence gathering. Moreover, Defendant is unable to disclose details of any investigation, police report, or any other related information into the matter. Plaintiff contends that he received an October 28, 2019 FOIA request that indicates Defendant made the false rape allegation in retaliation for Plaintiff allegedly calling Defendant's friend, Ms. Schaefer, a "stalker" and "sexual predator". (*See* Pl. Decl. Ex. E.) Plaintiff provided this discovery. (*See* Pl. Decl. Ex. A-D.) Plaintiff also made calls to the Bureau of Criminal Apprehension, the Minneapolis, Saint Louis Park, Saint Paul, and Bloomington police departments. Plaintiff contends that he was unable to gather any evidence because that evidence

does not exist.  Plaintiff provided this evidence to Defendant by disclosing it during the December 5, 2019 deposition.  He did not make any handwritten notes or receive any documents when conducting this informal investigation.  Plaintiff further contends that after Plaintiff allegedly called Defendant's friend, Catherine Schaefer, a "sexual predator" and "stalker", Defendant contacted the Bloomington City Attorney's Office, Saint Paul Assistant City Attorney Tara Patat, and Saint Paul Police Sergeant David McCabe to make a false rape allegation in retaliation.  (*See* Pl. Decl. Ex. F.)  Specifically, Deputy Minneapolis City Attorney Mary Ellen Heng sent an email on December 14, 2017 to then Saint Paul Assistant City Attorney and current Washington County Judge Laura Pietan stating "I always contact their senior attorney Erica Glassberg.  Her email is eglassberg@bloomington.gov."



*Id.*  Plaintiff also provided this evidence to Defendant through discovery.  (*See* Pl. Decl. Ex. A-D.) Defendant seeks unlimited discovery.  The Court must balance the goals of enforcing the process of discovery and ensuring adherence to policy aims of discovery with the right of a party to have its case heard on the merits. *Card Technology Corp. v. Datacard Inc.*, 249 F.R.D. 567, 571 (D. Minn. 2008) (quoting *SeeInsurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 705, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982))  Defendant's request for all "emotional content", "phones", or "iMac" is vague, overly broad, unduly burdensome, harassing, and invasive.  *Holter v. Wells Fargo and Co.*, 281 F.R.D. 340, 343 (D. Minn. 2011)

The discovery demanded in the request at issue is "burdensome and not proportional to the needs of the case." *Diaz-Lebel v. TD Bank U.S.*, Civ. No. 17-5110 (MJD/BRT), at *6-7 (D. Minn. Aug. 30, 2018) *quoting Nece v. Quicken Loans, Inc.*, Case No. 8:16-cv-2605-T-23CPT, 2018 WL 1072052, at *1 (M.D. Fla. Feb. 27, 2018) (denying discovery where plaintiff sought class-wide data "[r]ather than request a reasonable sample")

## C.  Sanctions for Deposition

Defendant requested monetary sanctions under Rule 37(d) for not answering questions that are not related to the case or where Defendant used questions to harass him.  (*See* Def. Mot. Sanc. ¶ 9.)  Rule 37(d) permits courts, on a motion by the aggrieved party, to order sanctions if a party "fails, after being served with proper notice, to appear for that person's deposition[.]" Fed. R. Civ. P. 37(d)(1)(A)(i). The Eighth Circuit has strictly construed Rule 37(d) to **only to apply to a failure to appear at a deposition**, as opposed to not answering questions.  *See Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir. 1994); *see also AGinformationData, LLC v. Integrated Sols. Grp., Inc.*, No. 11-cv-3673 (DWF/JSM), 2014 WL 12610208, at *11 (D. Minn. Mar. 20, 2014)  *Klein v. Affiliated Grp., Inc.*, Civil No. 18-cv-949 DWF/ECW, at *28 (D. Minn. Jan. 17, 2019)  There is no dispute that Plaintiff appeared at the December 5, 2019 deposition.  Upon information and belief, Defendant conducted a nearly (7) hour deposition – the maximum time allowed – under Fed. R. Civ. P. Rule 30 (d)(1).  This is particularly egregious considering that this case involves a single February 22, 2017 post on Twitter and Plaintiff's knowledge as it relates to the post.  And, Defendant failed to stipulate questions that related to her case during the deposition.  Attorney Breyer asked questions related to a website.  (*See* Pl. Decl. Ex. G.)  Plaintiff contends that Defendant withheld evidence containing registrar information of the website.  *Id.*

## D.  Presence of Bad Faith

Before "dismissing a case under Rule 37(b)(2), the Court must investigate "whether a sanction less extreme than dismissal would suffice, unless the party's failure was deliberate or in bad faith." *Avionic Co.* v. *Gen. Dynamics Corp*., 957 F.2d 555, 558 (8th Cir. 1992)" *Haggins v. Ramsey Cnty.*, No. 0:15-cv-00059-DWF-KMM, at *4 (D. Minn. Aug. 22, 2017)  "*Bergstrom v. Frascone*, 744 F.3d 571, 576 (8th Cir. 2014) (indicating district courts must consider lesser sanctions if there is no finding of bad faith in the record)" (quoting *Haggins v. Ramsey Cnty.*, No. 0:15-cv-00059-DWF-KMM, at *4 (D. Minn. Aug. 22, 2017).  Bad-faith can only be found through a willful violation.  Plaintiff's original error was not deliberate and not residue of bad-faith.  It was residue of an inadvertent mistake and lack of experience.

## E.  Request for Expenses

Defendant requests a "monetary sanction" including "fees and costs associated with defending against this action."  (*See* Def. Mot. Sanc. ¶ 11.)  This is a "disproportionately severe sanction." *Luiken v. Domino's Pizza LLC*, CIVIL No. 09-516 (DWF/AJB), at *12 (D. Minn. Dec. 2, 2009)  This is particularly so where someone has the wage level (at the time of discovery) of a "Domino's delivery driver." *Id.*  Moreover, it defies logic where a self-admitted volunteer *pro bono* lawyer would seek fees and costs for fees and costs that apparently do not exist.

## III.    Plaintiff Complied with the October 25, 2019 Order Compelling Discovery

Compliance with discovery includes "participating in depositions, answering interrogatories, and responding to document requests." *Luiken v. Domino's Pizza LLC*, CIVIL No. 09-516 (DWF/AJB), at *6 (D. Minn. Dec. 2, 2009)  Plaintiff (1) participated in depositions; (2) timely answered interrogatories; and (3) timely responded to document requests. *Id.*  Plaintiff contends that Defendant incorrectly concluded that Plaintiff failed to produce responsive

documents or information supporting the compelled deposition, interrogatories, and requests for documents.

Defendant request that the Court "should dismiss this action because the above elements are met: (1) the Court issued an order compelling discovery; (2) Fredin willfully violated that order; and (3) Defendants have been prejudiced as a result of that violation." (*See* Def. Mot. Sanc. ¶ 6.)  Defendant however fails to identify any particularized specific violations.  (*See* Def. Mot. Sanc. ¶ 8.)  On October 25, 2019 the Court entered an order compelling discovery.  [Doc 100]  The Order set a deadline of November 15, 2019.  *Id.*  Defendants allege "[t]hat discovery order was issued because many of Fredin's original responses to Defendant's discovery requests were deficient or wholly ignored. (*See generally*, Doc. 91.) Thus, the first prerequisite for the imposition of a dismissal sanction is satisfied.."[5]  (*See* Def. Mot. Sanc. ¶ 7.)

As to the first prong, Plaintiff agrees that an order compelling discovery exists.

As to the second prong, Plaintiff timely responded with complete answers, attended the December 5, 2019 deposition, provided full answers as described below and therefore did not violate the October 25, 2019 Order compelling discovery.  On November 15, 2019 at 8:02 PM, Plaintiff notified Attorney Breyer and Ballinger by email of productions in *Fredin v. Middlecamp/Miller*, Case No. 17-CV-3058/18-CV-466.  The email contained interrogatories and requests for documents/productions containing an updated dropbox.com link (for a sub folder within the previous discovery) with all relevant productions neatly organized:

---

[5] Plaintiff is a *pro se* litigant with no prior experience with discovery.  Plaintiff's original mistakes were therefore not residue of bad-faith.  The mistakes, however, were fixed.  He apologizes to the Court.  Plaintiff has also sought to retain counsel but was unable due to his previous lack of employment and income.  Because he was since able to gain employment, he will likely retain trial counsel but has seen unreasonable retainers requested north of $100,000 from local defamation attorneys.  Plaintiff has done everything in his power to comply with pleading standards, local rules, civil procedure, and the like.



(*See* Pl. Decl. Ex. A.)  The base directory contains root folders for discovery related to each case including files indicating lost or destroyed files.  *Id.*  Each case is neatly organized according to numbered question.  *Id.*  Folder 13 within Case No. 18-CV-466 contains "identified" documents that relate to each numbered interrogatory question.  *Id.*  Folder 9 within Case No. 17-CV-3058 contains "identified" documents that relate to each numbered interrogatory question.   In total, discovery is 4.3 GB and includes likely thousands of files.  *Id.*  Plaintiff redacted the full dropbox.com link in this pleading because this paper is a public document.

It remains laughable, however, that Defendant would accuse Plaintiff of withholding evidence, when Defendant withheld evidence that was conveniently released by an October 28, 2019 Minneapolis City Attorney's Office FOIA requests.  (*See* Pl. Decl. Ex. H.)  This was shortly after the October 1, 2019 discovery deadlines closed in this case.  This was also withheld through twelve (12) state court cases over three (3) years amounting to serious Brady violations and felony misconduct.  **Because of Defendant's withholding of exculpatory evidence, Plaintiff was wrongfully convicted of a crime he did not commit, spent a year being tortured at the Ramsey County workhouse, and, most importantly, Defendant took Plaintiff's mother from him.**  This is unforgivable.   Moreover, Defendants devices were already forensically analyzed by Defendant Middlecamp during and after the April 28, 2017 swat raid and shown to indicate zero evidence that relate to the case.  Indeed, Plaintiff is a law-abiding citizen.  Defendants request to

17

analyze those devices would potentially taint evidence that relates to her original self-dealing in seeking to have the devices analyzed or allow Defendant to locate, track, destroy and spoil evidence unrelated to this case.  In other words, Plaintiff fears that Defendant wants to destroy or taint those devices to eliminate or exclude evidence of her misconduct.  Defendants further allege that:

- "At the deposition, it quickly became clear that Fredin had failed to comply with the Order Compelling Discovery … (1) failed to search all of his devices … (2) excluded documents that he just didn't want to produce … [because] Fredin failed to search through multiple devices in his possession including 5-6 cell phones and an iMac computer."  (*See* Def. Mot. Sanc. ¶ 4.)
- **Response:**  Plaintiff faithfully provided the same evidence.  The evidence is device agnostic.  The evidence is available through cloud backup.  The same evidence was available through alternate sources e.g., gmail.com, dropbox.com, iMessage, iCloud, and Google's one drive.  Plaintiff did turn on and search his MacBook which contained the same iCloud image as any other device used during that time period.  Moreover, those other devices were likely only used prior to any allegation that relates to this case.  Finally, the Saint Paul Police conducted forensic analysis on each of those devices and found no evidence related to this case or of any wrongdoing.  Plaintiff fears that Defendant wants to destroy or taint those devices to eliminate or exclude evidence of her misconduct. Even turning on a device changes data signatures and metadata.   Moreover, Plaintiff was technically homeless and had no place to use the devices at the time of discovery.

Defendants claim that Plaintiff:

- "[C]oncoct[ed] a conspiracy theory that the devices were in some way compromised by the Saint Paul Police Department – a theory for which he has zero actual evidence."  *Id.*
- **Response:**   Literally hundreds of documents exist indicating overwhelming evidence that the devices were indeed "compromised" by the Saint Paul Police department because they were analyzed through forensics.  There was no evidence of any crime whatsoever or evidence that related to this or other cases.   Any discovery emanating from this search within state court cases was included in discovery.  In fact, no such evidence was gathered from the devices because there was none.  Furthermore, the evidence that relate to this case was all stored in the "cloud" e.g., through Gmail, dropbox.com, iMessage, or Google's one drive.  In other words, this same evidence was available through alternate channels and was

therefore searched and included in discovery.  This is also a blatant attempt by Defendant to circumvent the rules of Minnesota Criminal Procedure and gain direct access to evidence that she sought to gain through her role as a then Minneapolis Assistant City Attorney.  Evidence that was reviewed by neutral officials and already deemed both not related to this case and void of any wrongdoing.  Plaintiff fears that Defendant wants to destroy or taint those devices to eliminate or exclude evidence                          of                          her                          misconduct.

Defendant redundantly make the same argument over and over that Plaintiff:

- "[R]efused to search 5-6 cell phones that are in his possession that admittedly were used to access online profiles, receive text messages and that contain other relevant data." *Id.*
- **Response:**  Plaintiff incorporates the same answer that the identical evidence was available through alternate sources and included within discovery.  Moreover, these devices are not relevant because they were not used at the time of allegations that relate to this action.

- "[R]efused to search his iMac computer that is in his possession, even though he used it to communicate to Defendants using various online profiles."  *Id.*
- **Response:**  Plaintiff incorporates the same answer that the identical evidence was available through alternate sources and included within discovery. Moreover, Plaintiff never communicated with Defendant Middlecamp.  Defendant Middlecamp emailed him using her Gmail account to another Gmail account.  The evidence was available through Gmail and produced.  Plaintiff did not respond.  Plaintiff never communicated with Defendant Middlecamp through an online profile.  "[D]iscovery requests must be relevant to the question" *Luiken v. Domino's Pizza LLC*, CIVIL No. 09-516 (DWF/AJB), at *7 (D. Minn. Dec. 2, 2009)

- "He refused to turn over communications with a recent ex-girlfriend regarding these cases because they happen to also contain "emotional-content."  (*See* Def. Mot. Sanc. ¶ 4.)
- **Response:**  Plaintiff searched through phone/text message conversations and did not find any content that match keywords, discovery questions, or any content related to Defendant Middlecamp.  "[D]iscovery requests must be relevant to the question." *Luiken v. Domino's Pizza LLC*, CIVIL No. 09-516 (DWF/AJB), at *7 (D. Minn. Dec. 2, 2009)

Defendant makes conclusory allegations that she was "harassed".  (*See* Def. Mot. Sanc. ¶ 8.)  She asks that Plaintiff divulge all documents that relate to any communication he ever had with an ex.

(*See* Def. Mot. Sanc. ¶ 4; 8)  These requests are not relevant to Defendant or her defenses in the absence of bad-faith.  *Koster v. Landmark Am. Ins. Co*., 2016 WL 3014605 (M.D. Fla. May 20, 2016) (limiting discovery by denying a motion to compel discovery where there was no evidence of bad faith).

## IV.     Defendant Abuses Process by Using a Deposition in this *Instant* Federal Case for her State Court Fifty Year HRO

Because Defendant is fabricating allegations of "bad faith" and "willful violations" she is seeking to empower the Court to Compel Plaintiff to provide all of his digital devices to Defendant so she can use it in her state court fifty (50) year harassment restraining order case.  (See Def. Sanc. Mot. ¶ 7)  Furthermore, Defendant sought a deposition in this case to gain new evidence for her July 26, 2019 state court fifty (50) year harassment restraining order captioned *Middlecamp v. Fredin*, Ramsey County District Court, Case No. 62-HR-CV-19-621.   In late 2019, while discovery was ongoing or finished in this federal case, Defendant brought up the same allegations and used the December 5, 2019 deposition in this matter to seek insights or admissions in Ramsey County District Court (state court).  *Kramer v. Boeing Company*, 134 F.R.D. 256 (D. Minn. 1991) (Barring party from using documents obtained in violation of discovery order in separate proceeding against same defendant.")  *See also Coleman v. American Red Cross*, 979 F.2d 1135 (6th Cir. 1992).  During the deposition, Attorney Breyer asked several questions that would only be of use for state court.  Admittedly, Defendant may enjoy a litigation or absolute privilege immunity for statements made in a judicial proceeding.

However, In the state court action, during her verbal testimony, while Attorney Breyer was on direct and Plaintiff cross examined her, Defendant repeatedly made the same allegations and Attorney Breyer entered into evidence the same alleged websites as exhibits.  This is particularly

egregious considering the Court ruled that issue preclusion prevents those same exhibits from being entered.  Plaintiff made the same objections. Specifically, that the evidence was in violation of the protective order in this case, relevancy, issue preclusion (aka res judica or collateral estoppel) and foundation.  It remains concerning then that Defendant still seeks to gain all phone contact between Plaintiff and an ex-girlfriend and access to all his devices so that she can embarrass, humiliate, and continue her doxing campaign by using the state court as her personal defamation engine in alleged violation of this Courts protective order.  (*See* Def. Mot. Sanc. ¶ 4; 8)   "A court may impose sanctions for the violation of a discovery order, including a protective order, pursuant to Federal Rule of Civil Procedure 37(b)(2) and its inherent power.  *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267  F.R.D.  257,  264 (D.  Minn.  2007)." *NutriQuest,  LLC  v. Ameriasia Imps. LLC*, No. 0:18-cv-00390-NEB-KMM, at *1 (D. Minn. Nov. 5, 2018).  Moreover, shortly after Plaintiff provided discovery, his dating profile usernames (unknown to Defendant previously) were "reported" and the accounts suddenly banned.[6]  The accounts had never been "reported" previously and had been operational for years.  *NutriQuest, LLC v. Ameriasia Imps. LLC*, No. 0:18-cv-00390-NEB-KMM (D. Minn. Nov. 5, 2018) (imposing a "modest" $500 sanction for an unintentional disclosure of confidential documents from a non-party, where plaintiff's counsel shared documents marked "attorney's eyes only" with the client.)  *Arnold v. Cargill Incorporated,* Civil No. 01-2086 (DWF/AJB) (D. Minn. Aug. 19, 2002) (Stating "failure to abide by the terms of the Protective Order could result in sanctions including, but not limited to, fines, attorney fees, resulting damages, and, ultimately exclusion of evidence at trial. These

---

[6] Admittedly, this is pretty petty, for both parties, but a likely alleged continuation of Defendant's doxing campaign no less.  Plaintiff is letting it go completely and moving on with his life.  It remains frustrating however that anything he does online is subject to Defendant's alleged doxing campaign.

protections are sufficient to protect Defendant from Plaintiffs' potential misuse of Confidential or Attorneys' Eyes Only Information.")

## V.     Defendants Non-Dispositive Rule 37 Sanctions Motion Willfully Violated All Dispositive Deadlines by Two Weeks and Failed to Complete a LR 7.1(a)(1) Meet-and-Confer Statement Required for Non-Dispositive Motions

As described below, "Under Rule 37(b), failure to abide by the Court's pretrial scheduling order is sanctionable and may be remedied through any "just order." *Cf. Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 236 (D. Minn. 2019) (Leung, Mag. J.)" *Prairie River Home Care, Inc. v. Procura, LLC*, No. 17-cv-5121 (JRT/HB), at *61 (D. Minn. July 29, 2019).  As explained in Plaintiff's February 7, 2020 letter to the Court, the non-dispositive motion deadline was October 1, 2019.  The dispositive motion deadline was January 24, 2020.  The deadline that relates to expert discovery is February 7, 2020.  Attorney Breyer and Ballinger filed a (wanton dispositive) Sanctions Motion (disguised as a motion for summary judgement) dated February 7, 2020 on the expert discovery deadline.  (*See* Plaintiff's February 7, 2020 letter [Doc 116];  *See* also May 2, 2019 scheduling order [Doc 69]; *See* also Def. Mot. Sanc Mot..)  LR 7.1 does not require a meet-and-confer for dispositive motions.  (*See* LR 7.1(b))  Defendants contend that they seek to dismiss all claims and therefore it is a dispositive motion.  (*See* February 7, 2020 Mot. Sanc Mot..)  Rule 37 however is generally a non-dispositive motion to exclude evidence with emphasis towards expert discovery and therefore Defendants were required to meet-and-confer.  (*See* LR 7.1(a))

Moreover, good cause does not exist to change the pre-trial scheduling order because Defendant was not diligent in meeting the deadline. ""The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (citing *Rahn v. Hawkins*, 464 F.3d 813,

822 (8th Cir. 2006)); *see also* Fed. R. Civ. P. 16(b)," *Klein v. Affiliated Grp., Inc.*, Civil No. 18-cv-949 DWF/ECW, at *9 (D. Minn. Jan. 17, 2019)   "[G]enerally, the Court will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)" *Klein v. Affiliated Grp., Inc.*, Civil No. 18-cv-949 DWF/ECW, at *9-10 (D. Minn. Jan. 17, 2019)   While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, the Court will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) *Klein v. Affiliated Grp., Inc.*, Civil No. 18-cv-949 DWF/ECW, at *9-10 (D. Minn. Jan. 17, 2019) Because Plaintiff has diligently met the scheduling order deadline he would therefore be prejudiced.

First, the Sanctions Motion must be denied for failure to comply with Local Rule 7.1(a)(1) Meet-And-Confer: "Local Rules dictate that a moving party must submit a meet-and-confer statement together with the motion that it relates to. L.R. 7.1(a)(1). The meet-and-confer statement must certify that the moving party met and conferred with the opposing party and state whether the parties agreed to the resolution of the motion."  *CitiMortgage, Inc. v. Sellors*, CIVIL No. 15-1870 (PJS/JSM), at *2 (D. Minn. Dec. 23, 2015)  Thus, "defendants have utterly failed to comply with the motion practice procedures set forth in the Federal Rules of Civil Procedure, the Local Rules of this District [because they] … did not submit the required meet-and-confer statement; … stating with particularity the grounds for seeking an order of dismissal. Consequently, neither [Plaintiff] nor the Court can discern any basis upon which to grant the relief sought by defendants."  *Id.*

Second, the Sanctions Motion violated the pretrial scheduling order by nearly two weeks. The Sanctions Motion disguised as a Summary Judgement motion "force[s] [Plaintiff] to endure - multiple … summary-judgment proceedings." *QXMédical, LLC v. Vascular Sols., LLC*, No. 17-CV-1969 (PJS/TNL), at *32 (D. Minn. Oct. 2, 2019)   Because the dispositive summary judgement pleading stage has already passed on January 24, 2020 the violation is willful and "[V]iolating the pretrial scheduling order could result in sanctions. The scheduling order itself warned that "[f]ailure to comply with any provision of [that Court's Order] . . . shall subject the non-complying party . . . to any and all appropriate remedies, sanctions and the like." *Id.*

Third, the Sanctions Motion is not related to expert witness discovery.[7] Fed. R. Civ. P. Rule 26(a)(2) requires parties to timely disclose their expert witnesses in accordance with any deadlines set by the district court.  The rule further requires parties to disclose a "written report," "prepared and signed by the witness," and containing the following:  (i) a complete statement of all opinions the witness will express and their basis and reasons;  (ii) facts or data considered by the witness in forming them;  (iii) exhibits that will be used to summarize or support them;  (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;  (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and  (vi) a statement of the compensation to be paid for the study and testimony in the case.  After careful review, Defendants do not cite the word "expert", "26(a)(2)", or "witness" in their Sanctions Motion.  (*See* Def. Sanc. Mot.)  Defendant is not seeking any relief related to expert witness reports or expert discovery in general.  *Id.*  Defendant is seeking outright dismissal.  *Id.*  Fed. R. Civ. P. Rule 37(c)(1) empowers courts to manage expert discovery.  Under

---

[7] Plaintiff was on a small software developer team that built an expert witness, attorney, and judge module for Thomson Reuter's WestLaw.

Rule 26(a)(2) there were no experts disclosed in this case, no expert witness evidence discussed in

this case, and therefore the sanctions motion is not viable vehicle under Rule 37.  "Because there

was no violation of Rule 26(a)(l), it follows that a sanction excluding the [] evidence under Rule

37(c)(l) is not warranted. "  *United States v. Dentsply International, Inc*., 99-5 MMS (Distr. Ct.

Delaware 1999)  Here, Defendant is requesting to dismiss the entire Amended Complaint through

a Sanctions Motion willfully past all reasonable deadlines by deliberately violating a pre-trial

scheduling order in bad-faith to smear Plaintiff's character.  This pattern of conduct is exactly what

is at issue in this action where Defendant has done everything to smear Plaintiff's character and

destroy him without end.  Even now.

## VI.   Plaintiff Requests Sanctions Where Defendant Piled-On Three (3) Frivolous Sanctions Requests At the Same or Similar Time

The three (3) pile-on sanctions requests are "are repetitive, disrespectful, and require a

substantial amount of resources from [Plaintiff] as well as the Court. " *Allen v. Reid*, No. 15-cv-

1905 (WMW/SER), at *20 (D. Minn. Nov. 29, 2016)  As explained in the February 7, 2020 letter

to the Court, this appears to be a "pile-on" scheme – similar to the pile-on harassment orders

Defendant concocted - with several other attorneys to file frivolous sanctions motions at the same

or similar time:

- Ballard Spahr Counsel Leita Walker filed a frivolous sanctions motion on November 19, 2020 over a typo in *Fredin v. City Pages,* Case No. 19-CV-472 [Doc 37-38]
- Assistant Minnesota Attorney General Joseph Weiner's frivolous request for sanction in *Fredin v. Stree*t, Case No. 19-CV-2864.

This is particularly relevant where Defendant used her December 5, 2019 deposition and a bogus

fifty-year harassment restraining order to prejudice Plaintiff in this case causing him to spend

thousands of dollars and expend substantial emotional capital defending her frivolous actions.  On

February 6, 2020, this Court recently refused to invoke *Younger* Abstention and thereby contends

the state court and (perhaps Defendant) is acting in bad-faith. Moreover, this frivolous Rule 37 sanctions motion depletes Plaintiff's intellectual capital where he would be otherwise filing a Second Amended Complaint in *Fredin v. Street*, Case No. 19-CV-2864. Finally, Defendant admitted to using the *City Pages* to prejudice Plaintiff's professional livelihood and ability to financially retain counsel in *Fredin v. City Pages*, Case No. 19-CV-472. This caused Plaintiff to be out of work for three (3) years where his savings were eventually exhausted causing him to be homeless until receiving a paycheck in October 2019. Indeed, he now but has to build his savings to retain counsel. This lends credence that counsels are acting in unison to coordinate their activities to fundamentally prejudice Plaintiff.

    A.  <u>This Court Could Request All Documents or Communication Passed Between Counsel's not Covered by Attorney-Client Privilege</u>

Undoubtedly, Defendant's counsel, Attorney Breyer, communicated with his co-counsel Adam Ballinger about Leita Walker and Assistant Attorney General Joseph Weiner to coordinate the imposition of three (3) frivolous sanctions motions. Even while Defendant asserts a motion to compel against Plaintiff, Rule 37(e)(1) "allows the Court to impose any measures necessary to cure the prejudice resulting from spoliation" even against Plaintiff. The range of sanctions available to the Court is "quite broad" and "[m]uch is left to the court's discretion." *Paisley Park Enters., Inc. v. George Ian Boxill, Rogue Music Alliance, LLC*, 330 F.R.D. 226, 237 (D. Minn. 2019) (internal citations omitted) This might include ensuring that coordinated communication between Attorney Breyer, Ballinger, Leita Walker, and Joseph Weiner does not spoil.

    B.  <u>Plaintiff Seeks Sanction Where Defendant is Required to Produce all Documents and Communications Passed Between Catherine Schaefer, Grace Miller, and the identity of her false rape allegation</u>

Plaintiff renews his request for limited discovery related to all documents concerning Plaintiff in Defendant's possession, including communication, or documents passed between Ms. Schaefer and Miller.  Moreover, he seeks the identity of the false rape allegation.  Plaintiff is fundamentally prejudiced without discovery.  (*See* October 22, 2019 Mot. Lim. Dis.)  As described above, the October 28, 2019 FOIA request indicates the origin of the false rape allegation in retaliation for calling Defendant's friend Ms. Schaefer a "stalker" and "sexual predator".  (*See* Pl. Decl. Ex. E.)  In retaliation, Defendant leaked fodder to the *City Pages* alleging Plaintiff was a "stalker" and Defendant published a February 22, 2017 *Twitter* post alleging he "raped" a fabricated woman.  (*See* Pl. Decl. Ex. E.)  Both the *City Pages* article and Defendant's false rape Tweet occurred on the same day lending further credence to coordinated activities.  *Id.*  The FOIA request was suspiciously timed to be excluded from discovery in this matter that may have otherwise granted the October 22, 2019 limited discovery motion.  (*See* Pl. Decl. Ex. H.)  Defendant maliciously prosecuted and illegally caused Plaintiff to be thrown into the Ramsey County workhouse for a year to suppress this evidence.  (*See* Pl. Decl. Ex. A-D.)  Plaintiff was vindictively prosecuted for the facially unconstitutional allegation of having a harmless Match.com profile in retaliation for calling Defendant's friend a "stalker" and "sexual predator".  *Id.*  Plaintiff's conviction was reversed and vacated.  (*See* June/October 2019 status letter in *State v. Fredin*, Minnesota Court of Appeals, Case No.  A19-0085)  This is the level of pile-on retaliatory, bad-faith, and abusive behavior present in Defendant's collateral tactics to evade legal liability.

       C.  <u>Court Ordered *Sua Sponte* Sanctions to Strike Appropriate Where Defendant Published Bloody Photos of Plaintiff's Mother on ECF that have no Connection to the Matter at Hand</u>

After reading the outrageous exhibit filed by Defendant and her counsel Attorney Breyer and Ballinger, Plaintiff had difficulty sleeping for two (2) days.  This is yet another tactic by Defendant to literally extend Plaintiff's nightmare.  (*See* February 7, 2020 Br. Decl. Ex. A-B.) Plaintiff had trouble eating for the same period and felt like a zombie.  Defendant, Attorney Breyer, and Ballinger finally "crossed the line by filing the wholly inappropriate Motion … targeting [Plaintiff]" *Ransmeier v. Mariani*, 718 F.3d 64, 70 (2d Cir. 2013)  Moreover, Defendant, Attorney Breyer, and Ballinger uses the bloody photograph to contend that Defendant was "fram[ed]".  (*See* Def. Sanc. Mot. ¶ 9.)  This is a "baseless and repugnant assertion from multiple vantages." *Mariani*, 718 F.3d 64, 70 (2d Cir. 2013)  Plaintiff can be criticized, have his legal positions attacked, or prior mistakes challenged in pleadings but not his family.  Plaintiff draws a clear line. Attorney Breyer and Ballinger could have easily redacted that portion of their exhibit.  Plaintiff requests the Court immediately sanction Attorney Breyer and Ballinger by striking that portion of Defendants exhibit or through any relief the Court deems appropriate.  (*See* February 7, 2020 Br. Decl. Ex. A-B.)

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that Defendant's February 7, 2020 Sanctions Motion be dismissed in its entirety,  Defendant be required to produce limited discovery, and that limited appropriate court ordered sanctions be asserted against Attorney Breyer and Ballinger in the form of striking improper photographs that were used to deliberately target Plaintiff, or any other relief the Court deems appropriate.

Dated: February 10, 2020

s/ Brock Fredin
Brock Fredin
Hudson, WI 54016
(612) 424-5512 (tel.)
brockfredinlegal@icloud.com
Plaintiff, *Pro Se*