## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

BROCK FREDIN,

                Plaintiff,

   --against--

LINDSEY MIDDLECAMP,

             Defendant.

Case No.  17-CV-3058

BROCK FREDIN,

                Plaintiff,

   --against--

GRACE MILLER,
CATHERINE SCHAEFER,

             Defendants.

Case No.  18-CV-466

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RULE 37 SANCTIONS OR ALTERNATIVELY PERMISSION TO SERVE A RULE 11 SANCTIONS MOTION

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se*, hereby submits this memorandum of law in support of his motion for Rule 37 sanctions or alternatively permission to serve a Rule 11 Sanctions motion.

### INTRODUCTION

On November 15, 2019 Defendants were provided with organized discovery.  On February 7, 2020, Defendants misrepresented their defenses contending that they were not provided full

answers to several document requests and interrogatories in both cases as described below.  At or near the February 7, 2020 discovery motion deadline, Defendants began improperly using information obtained during discovery.   In other words, Defendants continue their doxing campaign by reporting the Internet usernames contained in discovery responses.  Defendants have destroyed every facet of Plaintiff's life spanning 2016 until present with no accountability whatsoever.  Defendants tortured, kidnapped, and assaulted Plaintiff.  Given these actions Plaintiff is not allowed to have a career, romantic partner, or home.  Given their leaking, Plaintiff has been contacted by third parties on an ongoing basis.  This is evidenced by the fact that Defendant Schaefer searched, viewed, and reported Plaintiff's profiles.  (*See* February 10, 2020 Fredin Decl. Ex. I.)  Plaintiff alleges this is a violation of the Court's October 15, 2019 protective order. Moreover, Defendants further violated Rule 37 by completely misleading this court by alleging Plaintiff did not provide any discovery, BlackOutX2 profiles, and emails by the original November 31, 2019 deadline.   Plaintiff provided discovery, BlackOutX2 profile, emails by the original deadline.  *Id* at Ex. A-B.  Finally, Defendants have unequivocally engaged in felony acts to indirectly tamper with these cases in an effort to prejudice Plaintiff to cause dismissal.  Defendants continue to use their powerful societal roles as state and federal prosecutors, commanders of military bases, and genders for their own personal benefit without any accountability.  As a result, Plaintiff is seeking Rule 37 sanctions in the form of limited discovery e.g., ability to conduct depositions, compel requests for documents, and interrogatory responses from Defendants or any sanction deemed appropriate by the Court.

## **FACTUAL BACKGROUND**

1. By October 1, 2019 Defendants did not respond or provide discovery.

2. On September 30, 2019 Plaintiff provided discovery.

3.  On November 15, 2019 Plaintiff provided further organized discovery.   (*See* February 10, 2020 Fredin Decl. Ex. A.)

      i.  In *Fredin v. Miller*, Case No. 18-CV-466 Plaintiff provided Interrogatory No. 1, 10, 1-7, 8, and 15.

      ii. In *Fredin v. Middlecamp*, Case No. 17-CV-3058 Plaintiff provided Interrogatory No. 3, 4, 5, 7, 11, 12, 13, and 14.

4.  On September 30 and November 15, 2019 Plaintiff provided same evidence of the BlackOutX2 profile, emails, and text messages originating from it.  Moreover, the evidence was further organized on November 15, 2019.

5.  On February 7, 2020 Defendants filed a Rule 37 sanctions motion falsely claiming that Plaintiff did not provide any discovery, the BlackOutX2 profile, emails, and text messages. In their motion, Defendants gratuitously attacked Plaintiff's mother and family.  The content of this attack was not proximately related to any pleading whatsoever or these cases.  The attack was disgusting, vile, and hideous.

6.  Shortly around February 7, 2020, Plaintiff was contacted by third parties related to Internet usernames – which were defunct or not used in years - provided as responses in discovery.  Plaintiff alleges these contacts could only have been because Defendants reported each Internet username.  Moreover, Defendant Schaefer searched for, viewed, and reported Plaintiff's profile(s) to continue Defendants obsessive stalking campaign.  (*See* February 10, 2020 Fredin Decl. Ex. I.)

7.  On March 17, 2020 the Court directed machines seized by Defendants themselves to be searched.  Plaintiff had not turned on these machines since they were returned.

8.  On April 16, 2020 Plaintiff provided search results.

9.  In February 2020, Plaintiff was provided with a freedom of information act (FOIA) request illustrating Defendants withholding evidence and unequivocal felony actions including

tampering with state court pre-trial witnesses, obstruction of justice, false reporting, and engaging in actions *yet again* to rig proceedings.

10. On March 17, 2020 the Court set trial for November 13, 2020.  [*Fredin v. Miller*, Case No. 18-CV-466, Doc. No. 118.]

## GOVERNING STANDARD

Rule 37 of the Federal Rules of Civil Procedure grants the Court broad discretion to impose sanctions for failure to comply with a discovery order.  *Heiderscheid v. Russell*, No. 18-CV-1733 (NEB/SER), 2019 WL 6050347 (D. Minn. Nov. 15, 2019).  In imposing a discovery violation sanction, "[t]he court must balance the goals of enforcing the process of discovery and ensuring adherence to policy aims of discovery with the right of a party to have its case heard on the merits." *Card Tech. Corp. v. DataCard Inc*., 249 F.R.D. 567, 571 (D. Minn. 2008).

## ARGUMENT

First, Defendants improperly used information obtained during discovery.  Specifically, Plaintiff alleges Defendants leaked Internet usernames obtained during discovery by reporting them to third parties and causing Plaintiff prejudice.  Second, Defendants completely misrepresented their February 7, 2020 discovery allegations to this court by alleging that Plaintiff had not substantially complied by delivering discovery and that he had not provided the BlackOutX2 and EpicViewF12 profiles.  Third, new evidence substantiates claims that Defendants are involved in wrongdoing to prejudice Plaintiff in discovery by doing everything in their power to obstruct justice, tamper, and stalk Plaintiff.  Specifically, Defendant Miller filed *yet more* bogus police reports while Defendant Middlecamp attempted to yet again rig proceedings to cause Plaintiff prejudice or dismissal.

I. **Defendants Violations of This Court's October 15, 2019 Protective Order by Improper Use Of Information Obtained During Discovery Warrants Granting Limited Discovery in Favor of Plaintiff**

In the September 30 and November 15, 2019 discovery responses, Plaintiff provided Internet usernames.  (See *Fredin v. Miller*, Case No. 18-CV-466, Def. Doc. Req. 1.)  Most, if not all, were defunct, and had not been used in years.  Around February 7, 2020, Plaintiff was suddenly contacted by third party Internet domains because these Internet usernames were reported. Plaintiff was instructed that he was "banned" from using their services based on the report. Plaintiff is aware of no other reason that Plaintiff would be suddenly contacted by these domains. Indeed, Plaintiff did not provide these Internet usernames or domains to anyone else.  Plaintiff believes that what the third parties were actually referring to when they alleged that Plaintiff was "banned" is Defendants improper use of discovery in this manner.  Specifically, Defendants are using discovery to harass, oppress, and continue their doxing campaign.

In support of this motion, Plaintiff provides evidence that Defendant Schaefer's Internet profile began searching for Plaintiff on mobile swiping applications.  (*See* February 10, 2020 Fredin Decl. Ex. I.)  Defendant Schaefer viewed Plaintiff's profile in January or February 2020. Indeed, Plaintiff's profile was immediately "banned" where he was contacted by third parties.  *Id.* Plaintiff was able to preserve Defendant Schaefer's profile and her view as evidence of discovery violations.  *Id.*

This new evidence, coming straight from Defendant Schaefer's own actions, that Defendants are using discovery in this matter to harass Plaintiff substantiates the fact that Defendants are using discovery for the unlawful collateral purpose of attempting to procure evidence on behalf of Defendants to continue their doxing campaign.  Moreover, Defendants are still maintaining the active BlackOutX2 profiles and therefore leaking them.  This constitutes a

violation of the October 15, 2019 protective order.  "When there is evidence of some wrongdoing … limited discovery has been allowed."  *Citizens for Responsibility & Ethics in Washington v. Nat'l Indian Gaming Comm'n,* 467 F. Supp. 2d 40, 56 (D.D.C. 2006) (citing *Long v. U.S. Dep't of Justice,* 10 F. Supp. 2d 205 (N.D.N.Y. 1998))

II.     __Defendants Misrepresented Their Claims and Were Provided with Discovery Including BlackOutX2 Profiles__

Defendants blatantly lied by alleging Plaintiff failed to respond to "interrogatories, answer basic questions in his deposition, and produce foundational documents that allegedly support his claims in this case have prejudiced Defendants' ability to defend themselves from Fredin's outlandish claims."  (*See* Def. February 7, 2020 Rule 37 Sanctions Motion ¶ 2.)  As described below, Plaintiff provided substantial responses to each.

In the *Miller* case, Defendants completely misled this court by alleging Plaintiff "further refused to produce complete profiles for the BlackOutx2 profile - the very profile he alleges that Defendants created and that comprises the entirety of his unsolicited sexual solicitation claim. (Id. at 90–92.)"  (*See* Def. February 7, 2020 Rule 37 Sanctions Motion ¶ 4-5.)  Plaintiff clearly produced these documents.  (*See* April 22, 2020 Fredin San. Decl. Ex. K.)

In *Miller v. Fredin*, Case No. 18-CV-466, Defendants gratuitously misrepresented their defenses in many other aspects by alleging:

- Answer Interrogatory No. 1 by identifying "all online profiles, identities, usernames, or other identifiers" that Fredin has used. (Doc. 91 at 4–7.)
- Answer Interrogatory No. 10 by identifying "all addresses where you have resided from 2016 to present." (Doc. 91 at 4–7.)  (*See* April 22, 2020 Fredin San. Decl. Ex. A.)
- Regarding Document Request Nos. 1–7, 9, 13, 15, 16, and 17 Fredin was ordered to either re-produce all of the responsive documents in a form that is organized and labeled to directly refer and correspond with the requests, or (2) prepare and produce a log clearly identifying each of the documents he has already produced to Defendants, and as to each such document identify the specific request or requests

to which it responds. (Doc. 91 at 7–9.)  (*See* April 22, 2020 Fredin San. Decl. Ex. B.)

- Respond to Document Request No. 15 by producing a complete and up-to-date resume or curriculum vitae in his possession or posted online. (Doc. 91 at 10.)  (*See* April 22, 2020 Fredin San. Decl. Ex. C.)
- Respond to Document Request No. 8 by producing all documents in his possession that constitute, refer, or relate to medical evaluations of his emotional distress, or alternatively, to serve a supplemental response stating that he has search for and has no such documents. (Doc 91 at 12.)  (*See* April 22, 2020 Fredin San. Decl. Ex. D.)

In *Fredin v. Middlecamp*, Case No. 17-CV-3058, Defendants gratuitously misrepresented their defenses in many other aspects by alleging:

- Answer Interrogatory No. 7 by identifying "all online profiles, identities, usernames, or other identifiers" that Fredin has used. (Doc. 91 at 14.)  (*See* April 22, 2020 Fredin San. Decl. Ex. E.)
- Answer Interrogatory No. 14 by identifying "any oral representations, admissions, or statements against interest allegedly made by Defendant that are relevant to the issues in this lawsuit." (Doc. 91 at 14.)  (*See* April 22, 2020 Fredin San. Decl. Ex. F.)
- Regarding Document Request Nos. 3, 5, and 13 Fredin was ordered to either reproduce all of the responsive documents in a form that is organized and labeled to directly refer and correspond with the requests, or (2) prepare and produce a log clearly identifying each of the documents he has already produced to Defendants, and as to each such document identify the specific request or requests to which it responds. (Doc. 91 at 15.)  (*See* April 22, 2020 Fredin San. Decl. Ex. G.)
- Respond to Document Request No. 4 by producing all documents in his possession that constitute, refer, or relate to medical evaluations of his emotional distress, or alternatively, to serve a supplemental response stating that he has search for and has no such documents. (Doc. 91 at 16.)  (*See* April 22, 2020 Fredin San. Decl. Ex. H.)
- Respond to Document Request No. 11 by producing a complete and up-to-date resume or curriculum vitae in his possession or posted online. (Doc. 91 at 16–17.) (*See* April 22, 2020 Fredin San. Decl. Ex. I.)
- Respond to Document Request No. 12 by producing "all documents that constitute, refer, or relate to communications, including electronic communications, exchanged between you and any person concerning the issues/matters identified in the pleadings." (Doc. 91 at 17.)  (*See* April 22, 2020 Fredin San. Decl. Ex. J.)

In both the *Miller and Middlecamp* case, Defendants gratuitously began engaging in discovery violations:

- In February 2020, Plaintiff alleges Defendants began leaking discovery information by reporting any online dating profile in continuation of their doxing campaign. The usernames ascertained in Defendants interrogatories and requests for documents were "reported" and this act is a violation of the Court's October 2019 protective order. Plaintiff was contacted by third parties. In one case, Defendant Schaefer made direct contact with Plaintiff by apparently searching out his profile, viewing his profile, and immediately reporting it which sent a message to him. Defendant Schaefer had been viewing his profile where it appeared on his screen. (*See* Feb 10, 2020 Fredin Decl. Ex. I; *Fredin v. Miller,* Case No. 18-CV-466 [Dock. No. 109])

- Defendants including Karl Johann Breyer attacked Plaintiff's mother to apparently trigger Plaintiff's response. Mr. Breyer and Ballinger included bloody photos of Plaintiff's mother and redacted transcripts to attack Plaintiff's biological sister, Faith Amdahl, daughter of Minnesota Supreme Court Chief Justice Douglas Amdahl, because Plaintiff mentioned during a deposition that Karl Johann Breyer was part of Plaintiff's sister's Inn of Court, the Douglas K. Amdahl Inn of Court, and that lawyers within that community had spoken about the case as it related to a deposition question. Plaintiff has routinely told Mr. Breyer to never speak of Plaintiff's family particularly his mother. This is completely unacceptable and Plaintiff respectfully requests the Court admonish Mr. Breyer, Ballinger, and Defendants. (*See* Feb. 7, 2020 Breyer. Decl. Ex. A. P. 40. ¶ 7.)

- Defendants arguably are violating the Court's October 15, 2019 protective order by continuing to flaunt their doxing campaign by publishing February 2017 to April 2017 content on Defendant Middlecamp's Twitter account @CardsAgstHrsmt. These documents are provided in discovery, safeguarded by the protective order, and yet Defendant Middlecamp still maintains them publicly.

- Mr. Breyer has threatened improper criminal prosecution in a civil case in other cases. (*See* April 22, 2020 Fredin San. Decl. Ex. L.)

Defendants unequivocally committed felony acts of misconduct. Specifically, Defendants engaged in disturbing acts to indirectly interfere with discovery by throwing the kitchen sink at Plaintiff to collaterally to cause dismissal:

- On April 25, 2018, Defendant Middlecamp sent an email to Defendant Miller, Schaefer, Saint Paul Police Officer David McCabe, Dorsey and Whitney associate

Peter R. Mayer, Saint Paul Police Officer Sarah Nasset, Adam Ballinger, and Karl Johann Breyer to file yet another admitted false, engage in obstruction of justice, tamper with state court witnesses, stalking, rig proceedings, and use her position as a state or federal prosecutor or Defendant Miller's position as a significantly more powerful military commander for their personal benefit by seeking yet more false charges in an effort to dismiss or prejudice this case.[1]  (*See* April 21, 2020 Fredin Decl. Ex. A.)

- In May 2018 and June 2019, Defendant Miller filed *yet more* knowingly false police reports.  Defendant Miller admitted her police reports were false during her conversation with the Saint Paul Police in an effort to prejudice this proceeding. (*See* April 21, 2020 Fredin Decl. Ex. B.)

- Defendants withheld documents of their felony actions from this Court in this action and *Fredin v. Clysdale*, 18-CV-510.  Specifically, Defendants withheld April 21, 2017 emails and documents Plaintiff alleges proves they used a facially unconstitutional and bogus state court criminal action – which has since been reversed and vacated – to serve restraining orders in an effort to kidnap, assault, stalk, and terrorize Plaintiff.  (*See* April 21, 2020 Fredin Decl. Ex. C.)

- In other cases, Defendants apparently conducted extrajudicial communication with David McCabe to communicate with state court judicial officers to rig proceedings. (*See* April 21, 2020 Fredin Decl. Ex. D.)

As a result, Rule 37 sanctions are appropriate based on the "willfulness, bad faith … fault of [the Defendant(s)]"  *Wong v. Minnesota Dep't of Human Servs*., No. CV 13-3378 (DWF/SER), 2018 WL 1865927 (D. Minn. Apr. 18, 2018) (quoting *Hairston v. Alert Safety Lights Prods.,Inc*., 307 F.3d 717, 718-19 (8th Cir. 2002).  The Court is not "constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances."  *Keefer v. Provident Life & Acc. Ins. Co*., 238 F.3d at 941.  "The failure to abide by a protective order is sanctionable under Rule 37."  *See* Fed. R. Civ. P. 37;  *City of Almaty v. Ablyazov*, 1:15-cv-05345 (AJN) (KHP), at *9 (S.D.N.Y. Mar. 5, 2018)  The "source of the leak

---

[1] When will Defendants be held accountable?  Indeed, if they were men, they would be in prison for many years.  Defendants have completely ruined Plaintiff's life.  He is unable to get a bank account, housing, meet anyone, stable career, and is harassed and stalked daily in some form from Defendants.  Defendants tortured, kidnapped, and assaulted Plaintiff.  Defendants have caused Plaintiff to be without a career, penniless, and homeless.  This needs to end.

of the [discovery information] in violation of the Confidentiality Order [causes] sanctions against [Defendants] warranted." *Id.* Plaintiff respectfully requests limited discovery asserted against Defendants as a sanction to further discover and show Defendants wrongdoing and bad faith.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant discovery and allow three (3) to five (5) depositions, requests for documents, and interrogatories. Most importantly, Plaintiff is seeking the identify of Defendant Middlecamp's false rape accusation including documents and communications passed between Defendants and third parties.

Dated: April 22, 2020

s/ Brock Fredin
Brock Fredin
Saint Croix County, WI
(612) 424-5512 (tel.)
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*