UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin,<br><br>       Plaintiff,<br><br>v.<br><br>Lindsey Middlecamp,<br><br>       Defendant. | Court File No. 17-cv-03058 (SRN/HB) |
| Brock Fredin,<br><br>       Plaintiff,<br><br>v.<br><br>Grace Elizabeth Miller, et al.,<br><br>       Defendant. | Court File No. 18-cv-00466 (SRN/HB) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS**

Defendants Grace Miller, Catherine Schaefer, and Lindsey Middlecamp (collectively, the "Defendants") submit this joint memorandum in opposition to Plaintiff Brock Fredin's ("Fredin") the Motion for Sanctions.

**INTRODUCTION**

Fredin's motion for sanctions claims that Defendants improperly used information obtained during discovery to cause Fredin to be banned from several online websites. Not surprisingly, Fredin fails to identify the sites he was banned from, the reasons why he was

banned, when he was banned, the identity of the "third-parties" that contacted him regarding the ban, or even the purported notice from the website or social app declaring him banned. Consequently, there is absolutely nothing to substantiate his claim that he was banned or that Defendants had anything to do with him being banned. There is not enough detail in his motion for Defendants to even investigate the claim. Fredin contends that he has "evidence" of Defendants misconduct, but like so many of Fredin's assertions in these cases, he does not provide any.

As detailed in the Declarations of Lindsey Middlecamp, Catherine Schaefer and Grace Miller, Defendants have not used any information obtained during discovery to cause Fredin to be "banned" from websites and apps he visits. Even if they had, such actions would not be prohibited. Defendants are free to block and report Fredin (just like any other user) to the website/app administrator, and it is the administrator who determines whether Fredin has violated the site's terms of use. Fredin's profiles and the websites/apps he uses are in the public domain and his use of them is by no means confidential. Fredin is aware of this, as none of Fredin's discovery responses were declared confidential, no portion of his deposition was designated confidential, and not a single document he has produced has been marked confidential. Declaration of K. Jon Breyer ("Breyer Decl.") ¶2.

Having failed to produce *any* evidence of discovery misconduct, Fredin's motion should be denied and Defendants should be compensated by Fredin for having to respond to such a frivolous motion. *See* Breyer Decl. ¶ 5.

Defendants also note that this Court specifically ordered Fredin to file any motion for sanctions in time to be fully briefed and heard on March 13, 2020. *See* Doc 111 (18-

2

cv-0466)[1]. Fredin was fully aware of the arguments he presents here as early as February 7, 2020 (the date he was purportedly banned), leaving more than enough time to comply with the Court's Order. Instead, Fredin again ignored an Order from this Court and has filed this untimely, frivolous motion.

### I.     Fredin's claims are deliberately vague, unsubstantiated, and false.

Fredin claims that Defendants caused him to be banned from several internet sites and/or swiping apps. However, Fredin admittedly cannot rule out the more probable scenario that he or someone other than the Defendants caused him to be removed from the sites. As Fredin admits "[m]ost, if not all [of the profiles] were defunct, and had not been used in years." Plf's Brief at 5. He claims to have been contacted by the third-party Internet domains and was "instructed that he was 'banned' from using their services . . ." *Id*. Fredin does not provide the names of the Internet domains that contacted him and he did not provide any of the purported notices or reports he claimed to have received from them. Instead, Fredin relies on his unfounded suspicions that everything that goes wrong in his life is somehow traceable back to Defendants. As Fredin states, "Plaintiff believes that what the third- parties were actually referring to when they alleged that Plaintiff was 'banned' is Defendants improper use of discovery in this manner (sic)." *Id*. In other words, Fredin has no knowledge as to why he was banned or who may have banned him, he is merely injecting his own beliefs into "what third parties were actually referring to . . ." *Id*.

---

[1] Unless noted, references to document numbers throughout the brief refer to the document numbers assigned in matter 17-cv-0466.

Throughout Fredin's brief he claims to have evidence that Defendants "searched, viewed, and reported Plaintiff's profiles." That evidence he claims is attached as Exhibit I to his February 10, 2020 Declaration. But Exhibit I is nothing more than a screen shot of a profile from website that Fredin *did not disclose* in discovery. Breyer Decl. Ex. B, Response to Interrogatory No. 1. Having failed to identify the site in response to discovery, he cannot now claim that information he did not provide was misused. Moreover, there is simply no information in Exhibit I that supports Fredin's contentions. Exhibit I does not evidence that anyone "searched, viewed, and reported Plaintiff's profile." All that it evidences is that Fredin visited a site, viewed the user's profile and took a screenshot it[2]. Searching the remainder Fredin's Declaration does not reveal any exhibit that would constitute evidence of any misconduct by Defendants. The only purported evidence offered seems to be Fredin's own musings.

To avoid any doubt, Defendants have each provided Declarations stating that none of them have used any information obtained in discovery for the purpose of "banning" Plaintiff from any website or app.

## II.   Fredin's public profiles are not protected under any provision of the Protective Order.

This Court's Protective Order directs a party desiring to keep information confidential to "so designated before the material is disclosed or produced." To designate material confidential a party must:

---

[2] It is curious that Fredin was able to take a screen shot of a profile from a site that he claims he was banned from using.

4

4827-5890-2971.1

(1) "affix a legend indicating the material is "CONFIDENTIAL" to each document that contains Protected Material; (2) affix a stamp with "CONFIDENTIAL" on the medium on which the electronic data is stored when copies are delivered to a Receiving Party; or (3) designate the production as "CONFIDENTIAL" in the transmittal cover letter.

Protective Order Section 5.1(a), (17-cv-03058) Doc 107. Fredin did not designate any discovery responses or documents he produced as "Confidential." Breyer Decl. ¶2. Similarly, he failed to designate any portions of his deposition as confidential. *Id.*, Protective Order Section 5.1(b). Since none of Fredin's profiles, usernames, or other internet related activity have been designated as confidential, such information is not protected. Furthermore, the Protective Order allows for designating material as confidential after its initial production and sets forth a process for doing so. The first step of that process is to promptly notify the receiving party in writing of the error. Fredin did not notify Defendants in writing of any error in failing to designate items as confidential. *Id*.

Fredin produced certain information regarding his online profiles on November 15, 2019, more than five months ago. At no time did he claim that anything he produced was confidential. Breyer Decl. ¶2. Even according to Fredin's brief, he was aware by February 7, 2020 that he had not designated any produced material as confidential, as he claims that is the date he was informed he was banned from certain websites and attributed that ban to Defendants. Plf's Brief at 3. Despite this, Fredin has failed to notify Defendants of any error to designate the material as confidential.

As noted above, Fredin's profiles are public and may be viewed by any user of the website or app. Similarly, the profile's content, including photos and images of Fredin are all available for public consumption because Fredin posted them himself, desiring that

5

visitors to his profiles view them. Thus, aside from any information obtained during discovery, this information is available to every user of every site/app Fredin complains about. Furthermore, Defendants are free to block and/or report Fredin to the site's administrator in accordance with the site's terms of use. Defendants are further permitted to take such actions as each have a Harassment Restraining Order (HRO) against Fredin that prohibits him from having any direct or indirect communications with Defendants. Defendants may report to the site's administrator that they do not want to be contacted by Fredin and that he be "blocked." However, none of these acts are done with the use of any information Fredin has provided in discovery. To the contrary, Fredin is continuing to seek out Defendants online and, when he is successful, Defendants appropriately act to thwart his efforts.

### III.   Fredin may not relitigate the Court's previous Orders.

The remainder of Fredin's motion attempts to reargue Defendant's motion to compel, which the Court granted, and to malign defense counsel by claiming that counsel has attacked Fredin and his family by submitting as evidence a copy of a website the Ramsey County District Court determined was created by Fredin, which includes photos of his mother. Breyer Decl. Ex. A, Ramsey County Order at 8; Doc 105, Ex. B. Because this Court has already ruled that Fredin did not properly discharge his discovery obligations, and issued an order supporting its findings, Defendants see no reason to respond to these tired arguments and incorporate by reference their previous submissions in support of their motion to compel.

Additionally, the balance of Fredin's unfounded accusations of misconduct have already been the subject of an attempted motion to disqualify Defendants' counsel, which the Court properly denied. *See Fredin v. Miller et al* (19-cv-3051), Doc. 83.

Defendants are tired of expending resources constantly responding to Plaintiff's hapless motions, many of which the Court has already ruled upon. The drain on Court resources dealing with Plaintiff's mirid of meritless motion practice, and steady flow of "new" lawsuits realleging the very same claims as previously filed lawsuits, must cease. Other than motions for summary judgment, all other motion dates in the Court's Pretrial Scheduling Order have passed. Defendants respectfully request that the Court summarily deny any further motion practice by Plaintiff that is not expressly sanctioned by this Court.

The Court should also recognize that each filing Fredin makes is an attempt to improperly communicate with Defendants. The filings are not designed for any other purpose. The Court should not condone the weaponization of its docket.

## CONCLUSION

For the above reasons, Defendants respectfully ask that the Court deny Plaintiff's motion, and award Defendants fees and costs associated with defending against this frivolous motion. Any lesser of sanction would not sufficiently punish and deter the conduct evidenced here.

Dated:	April 30, 2020	**KUTAK ROCK LLP**

By: /s/ K. Jon Breyer
K. Jon Breyer (#302259)
60 South Sixth Street
Suite 3400
Minneapolis, MN 55402
Telephone: (612) 334-5057
jon.breyer@kutakrock.com

**BALLARD SPAHR LLP**

By:  /s/ Adam C. Ballinger
Adam C. Ballinger (#389058)
2000 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone:   (612) 371-3211
ballingera@ballardspahr.com

*Attorneys for Defendants Lindsey Middlecamp, Grace Elizabeth Miller, and Catherine Marie Schaefer*

4827-5890-2971.1