# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin, | Case No. 17-cv-3058 (SRN/HB) |
| Plaintiff, | |
| v. | **ORDER** |
| Lindsey Middlecamp, | |
| Defendant. | |

| | |
|---|---|
| Brock Fredin, | Case No. 18-cv-0466 (SRN/HB) |
| Plaintiff, | |
| v. | |
| Grace Elizabeth Miller and Catherine Marie Schaefer, | |
| Defendants. | |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiff Brock Fredin's Response to the Court's Order to Show Cause and Ex Parte Sealed Declaration. [Doc. Nos. 145, 147 in *Fredin v. Middlecamp*, Case No. 17-cv-3058; Doc. Nos. 137, 139 in *Fredin v. Miller*, Case No. 18-cv-466.][1] For the reasons set forth below, the Court orders Plaintiff to pay $1,260 in

---

[1] Plaintiff filed identical documents in each of these actions. For ease of reference, the Court will cite only to the papers filed in the *Middlecamp* case in this Order. Similarly, other filings pertinent to this Order that are substantially identical in both cases will be cited by reference only to the *Middlecamp* docket. Citations to specific pages refer to the CM/ECF pagination.

attorney's fees to Defendants' counsel K. Jon Breyer.

## I. BACKGROUND

Plaintiff filed Motions for Discovery and Rule 37 Sanctions in each of these cases on April 23, 2020. In the memoranda filed in support of his motions for sanctions, Plaintiff accused Defendants of "improperly using information obtained during discovery . . . by reporting the Internet usernames contained in discovery responses." (Pl.'s Mem. Supp. Mot. Sanctions at 2 [Doc. No. 130].) He stated that "Defendants leaked Internet usernames obtained during discovery by reporting them to third parties and causing Plaintiff prejudice." (*Id.* at 4.) Specifically, Plaintiff asserted that "this is a violation of the Court's October 15, 2019 Protective Order." (*Id.* at 2 [referring to Doc. No. 107].)

The Protective Order in these cases limits the disclosure and use of confidential information produced in discovery, provided that information is explicitly designated as "Confidential" in the manner provided in the Protective Order. (Protective Order at 5–7, 10–14 [Doc. No. 107].) Thus, implicit in Plaintiff's claim that Defendants had violated the Protective Order was that Plaintiff had in fact designated information that he produced in discovery as "Confidential." Because the Court did not have sufficient information to evaluate Plaintiff's claim that information he produced in discovery was designated as confidential under the Protective Order and, if so, was used or disclosed by Defendants in violation of its terms, the Court ordered Defendants to file a memorandum addressing only that issue, including whether the information produced by Plaintiff regarding his "Internet usernames" was in fact designated as confidential under the

Protective Order.[2] [Doc. No. 134.]

Defendants responded and averred in sworn declarations that Plaintiff designated *none* of the information he produced in discovery, including his Internet usernames, as confidential under the Protective Order. (Defs.' Mem. Opp'n Mot. Sanctions at 2 [Doc. No. 135]; Breyer Decl. ¶ 2 [Doc. No. 136].) Thus, Defendants could not possibly have violated the Protective Order by the use or disclosure of any information Plaintiff produced. Given the lack of any support for Plaintiff's accusation of misconduct, Defendants asked the Court to award no less than $4,000 as a sanction for bringing a frivolous motion. (Defs.' Mem. Opp'n Mot. Sanctions at 2; Breyer Decl. ¶ 5.) That amount was based on Defendants' *pro bono* counsel expending more than 10 hours on the opposition to Plaintiff's motion, at a "typical hourly rate of $420.00." (Breyer Decl. ¶ 5.)

In an Order dated May 5, 2020, this Court determined that Plaintiff knew or should have known that he had not designated any information as confidential under the Protective Order, and therefore, his motion for sanctions based on a violation of the Protective Order was frivolous. (Order at 3 [Doc. No. 144].) The Court ordered Plaintiff to show cause why sanctions should not be imposed for requiring Defendants to respond to a motion based on false accusations of wrongdoing. The Court advised Defendants that no reply to Plaintiff's response to the order to show cause would be permitted unless

---

[2] The Court denied the other portions of Plaintiff's motions without the need for a response by Defendants; hence, it instructed Defendants that they need respond only to the portion of the motions alleging a violation of the Protective Order.

requested by the Court.  (*Id.* at 5.)

Plaintiff filed his response to the Order to Show Cause on May 10, 2020 [Doc. No. 145], and an ex parte sealed declaration and exhibits on May 11, 2020 [Doc. No. 147].  Plaintiff explains in his response that he "made a legal mistake in failing to mark documents confidential," for which he apologizes to the Court.  (Pl.'s Resp. at 2.)  He assures the Court "[t]his will never happen again," claims to understand "the Court's broader message," and vows to "immediately limit motion practice and litigation."  (*Id.*)  Plaintiff also reminds the Court that he is not an attorney and is acting pro se, and claims he is destitute.  (*Id.* at 2–3.)  He then embarks on a tirade against Defendants, accusing them of "tortur[ing], kidnapp[ing], and assault[ing]" him, and "forc[ing] [him] into unpaid slave labor."  (*Id.* at 2, 5.)  Plaintiff also asks the Court for leave to withdraw his answer to Interrogatory 1 so that he may mark it confidential.  (*Id.* at 3.)  In support of his response, Plaintiff filed ex parte a Sealed Declaration and exhibits such as portions of his federal income tax returns, a text message with his brother, a credit report, employment information, DNA match information, Twitter posts, and student loan debt information.  [Doc. No. 147.]

On May 12, 2020, Defendants filed a memorandum in response to Plaintiff's response [Doc. No. 148] and supporting Declaration of K. Jon Breyer [Doc. No. 149], even though the Court had not requested a reply.  Defendants reiterate that because Plaintiff did not designate any of the information he produced as confidential—a fact of which he was clearly aware—Defendants could not have possibly violated the Protective Order.  (Defs.' Mem. Supp. Sanctions at 2 [Doc. No. 148].)  Rather than concede this

4

indisputable fact, Defendants point out, Plaintiff used his response to continue to falsely accuse them of wrongdoing.  (*Id.*)  Defendants also argue that Plaintiff has exploited his pro se status to torment them and abuse the Court's docket.  (*Id.* at 3.)  Finally, Defendants contend that Plaintiff has lied to the Court about his financial status.  (*Id.* at 3–4.)  Contrary to his representations that he is destitute and unemployed, Plaintiff testified at his deposition that his annual salary is $160,000.  (Breyer Decl. Ex. A.)  Defendants ask the Court to revoke Plaintiff's *in forma pauperis* status.  (Defs.' Mem. Supp. Sanctions at 4.)

## II.   DISCUSSION

### A.   Attorneys' Fees Award

If a court denies a motion to compel discovery, the court "must, after giving an opportunity to be heard, require the movant . . . to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(B).  The court may not order the payment, however, "if the motion was substantially justified or other circumstances make an award of expenses unjust."  *Id.*  The term "attorney's fees" means "not the amount actually paid or owed by the party to its attorney, but the value of attorney services provided to the party." *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012).  "In other words, an 'attorney fee' arises when a party uses an attorney, regardless of whether the attorney charges the party a fee; and the amount of the fee is the reasonable value of the attorney's services."  *Id.*  Accordingly, *pro bono* counsel may receive an attorney's fee award under Rule 37.  *See id.* ("The purpose of Rule 37 attorney-fee sanctions would

5

be thwarted if a party could escape the sanction whenever opposing counsel's compensation is unaffected by the abuse.").

In the Court's Order of May 5, 2020, the Court found that Plaintiff's motion was frivolous. The Court now finds that Plaintiff's motion was not substantially justified and that there are no circumstances, including Plaintiff's claim that he cannot afford to pay a monetary sanction, that would make an award of expenses unjust. The Court will not allow Plaintiff to make a frivolous and unjustified accusation against another party and then plead poverty against a monetary sanction. Moreover, Plaintiff's deposition testimony belies his claimed financial state. And even if the Court accepted Plaintiff's claimed financial condition, that would not insulate him from a monetary sanction for knowingly making a false accusation of wrongdoing against Defendants or their counsel.

Plaintiff's plea for leniency based on his pro se status is similarly unavailing. Plaintiff has demonstrated through his litigation of the ten cases he has initiated in this District—eight of which are or were assigned to this Court—that he is a shrewd and sophisticated litigant. He has a firm grasp of both procedural and substantive law. The Court will not permit Plaintiff to use his unrepresented status as a shield or, for that matter, a sword.[3]

In addition, Plaintiff's promise never to repeat his misdeed rings hollow. First, he apologized to the Court, when it was defense counsel and their clients whom he falsely

---

[3] Plaintiff's inflammatory accusations that Defendants have "tortured, kidnapped, and assaulted" and "forced Plaintiff into unpaid slave labor" were not necessary or helpful to the Court in its consideration of the issue at hand.

6

accused. Second, Plaintiff apologized for not marking anything he produced as confidential, but that misses the point. The point is that because Plaintiff did not mark anything as confidential, the restrictions of the Protective Order were not triggered, and since the restrictions were not triggered, the accusation that Defendants and their counsel had violated those restrictions was false and frivolous.

Plaintiff likewise misses the point when he claims to understand that the Court was sending a broader message to limit motion practice and litigation activity. Though it is abundantly clear from the dockets that Plaintiff is a fervent litigator, such conduct in and of itself is not sanctionable. But frivolous and unjustified motion practice is sanctionable. Let there be no doubt: The specific conduct that the Court finds warrants a sanction here is Plaintiff's knowingly false accusation that Defendants or their counsel violated the Court's Protective Order. Before a party accuses another party or an officer of the court of violating a court order, that party must diligently do his homework. Plaintiff did not. The Court took Plaintiff's accusation seriously and asked for a response from Defendants, only to learn that the most fundamental prerequisite to holding a party accountable under the Protective Order—that of designating information as confidential—had not been met. Plaintiff knew that, but made the accusation anyway.

Accordingly, Defendants are entitled to an award of fees under Rule 37(a)(5)(B) that represents the value of attorney services provided to them in responding to Plaintiff's frivolous and knowingly false argument that Defendants should be sanctioned for

7

violating the Court's Protective Order.[4] The Court finds the appropriate amount to be $1,260, which equates to three hours of counsel's time at the identified billing rate of $420 per hour. Plaintiff is ordered to pay $1,260 to attorney K. Jon Breyer within 30 days of the date of this Order.

With respect to Plaintiff's request for leave to withdraw his answer to Interrogatory 1 so that he may mark it confidential, paragraph 5.2 of the Protective Order provides that a party who discovers that he produced material that should have been, but was not, designated as confidential "may promptly notify all Receiving Parties, in writing, of the error and identify (by production number) the affected material and its new designation" and provide new copies of the material to the Receiving Parties. (Protective Order at 7–8.) Even assuming for the sake of argument that the information Plaintiff seeks to designate as confidential is actually entitled to such protection, Plaintiff has not acted promptly to correct the supposedly incorrect designation, and his request does not comply with the applicable Protective Order provision. Thus, the request is denied.

### B.   Plaintiff's Ex Parte Sealed Declaration

Plaintiff filed ex parte a Sealed Declaration in support of his response to the Court's Order to Show Cause. The Electronic Case Filing Procedures Guide for Civil Cases governs ex parte submissions.

A party who seeks to file a document without giving notice to other parties

---

[4] The Court gave Defendants clear direction about the limited issue they needed to address, but Defendants went further than requested or necessary. The Court will not require Plaintiff to pay for that.

> of record may present the document to the presiding District or Magistrate
> Judge, on an ex parte basis, by electronically filing an ex parte submission.
> . . .
> Any document submitted pursuant to this subsection of the Procedures
> must be clearly labeled "Ex Parte Submission." A judge who receives a
> document submitted ex parte in ECF may direct the party who submits it
> to file the document electronically, using normal ECF procedures, or may
> otherwise handle and address the document as he or she deems most
> appropriate.

The Court finds nothing in the documents that justifies withholding them from review by at least Defendants' counsel, particularly when they were filed in response to the Court's order to show cause why Plaintiff should not be required to pay the reasonable fees of Defendants' counsel based on the Court's finding that Plaintiff's accusation that Defendants and their counsel violated the Court's Protective Order was frivolous. Accordingly, the Court directs Plaintiff to re-file the Declaration and attached exhibits without the ex parte designation within seven days of the date of this Order, using normal ECF procedures. He may, however, file the documents under seal in accordance with Local Rule 5.6, provided he files them in such a way that they are at least accessible to counsel of record. Plaintiff may mark the documents pursuant to the Protective Order as Confidential or Highly Confidential-Attorney Eyes Only, as he sees fit, prior to re-filing them. If Defendants believe the designation is not appropriate, they may follow the procedures set forth in the Protective Order to challenge the designation.

### C. Defendants' Reply Memorandum and Supporting Declaration

Despite the Court's admonition in its May 5, 2020 Order that no reply would be permitted unless requested by the Court, Defendants filed a memorandum in response to Plaintiff's response [Doc. No. 148] and a supporting declaration [Doc. No. 149]. The

9

reply was relevant and responsive to Plaintiff's claim that he cannot afford to pay a monetary sanction and to Plaintiff's verbal attacks on Defendants. The Court therefore will allow it. To be clear, however, no part of the fee award is for the unsolicited memorandum and declaration. Nor will the Court consider Defendants' request to revoke Plaintiff's *in forma pauperis* status.[5]

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff Brock Fredin shall pay Defendants' attorney K. Jon Breyer $1,260 as a sanction pursuant to Rule 37(a)(5)(B) within 30 days of the date of this Order.

2. Within seven days of the date of this Order, Plaintiff shall re-file his Sealed Declaration and attached exhibits [Doc. No. 147] in accordance with Local Rule 5.6 and in such a way that they are accessible at least by counsel of record.

Dated: May 18, 2020

            s/ *Hildy Bowbeer*
            HILDY BOWBEER
            United States Magistrate Judge

---

[5] The Court notes Plaintiff has been granted *in forma pauperis* status in the *Middlecamp* case, but not the *Miller* case. To the Court's knowledge, that status has not been cited by the Court as a basis for other decisions or for relieving Plaintiff of other obligations. Therefore, it is unclear what Defendants hope to accomplish by "revocation" of his IFP status at this juncture.