## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brock Fredin,

                Plaintiff,        Court File No. 17-cv-03058 (SRN/HB)

v.

Lindsey Middlecamp,                    **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MIDDLECAMP'S MOTION FOR SUMMARY JUDGMENT**

                Defendant.

## Introduction

Plaintiff Brock Fredin brought this action against Defendant Lindsey Middlecamp ("Middlecamp") for defamation *per se* (Count I), abuse of legal process (Count II), and intentional infliction of emotional distress (Count III). The abuse of process claim (which related to Middlecamp obtaining a harassment restraining order against Fredin) has been dismissed, leaving only the defamation *per se* and intentional infliction of emotional distress claims remaining. Now three years into this lawsuit, Fredin has still failed to produce any evidence to substantiate his claims. Fredin cannot meet his burden of proof, and there are no genuine issues of material fact with respect to any of his remaining claims. Middlecamp therefore respectfully requests this Court exercise its gatekeeping function and enter judgment pursuant to Fed. R. Civ. P. 56.

## FACTUAL BACKGROUND

In his Amended Complaint, Fredin alleges that in early 2017, Middlecamp authored tweets that related to stalking, harassment, and sexual violence by Fredin against women who are not parties to this action. (*See* Amend. Compl. ¶¶ 2-3, 15, 19-20, 23; Doc. 5). Fredin acknowledges in the Amended Complaint that in response to these tweets, he sought to "expose" Middlecamp as the owner of the anonymous Twitter account, which focused on gender issues. (*Id.* at ¶¶ 8, 24). Fredin further acknowledges that following his discovery of Middlecamp's identity, he engaged in a campaign against her. This included social media posts and contacts with third parties that conveyed derogatory assertions about Middlecamp. (*See id.* at ¶ 25).

Although the Amended Complaint minimizes the severity of Fredin's conduct with regard to Middlecamp, Fredin affirmatively alleges that on April 14, 2017, Middlecamp sought a harassment restraining order against Fredin in Ramsey County. (*Id.*) This Court may consider the publicly available documents comprising the harassment restraining order, and should take judicial notice of the final Order and the findings issued on October 2, 2017 (after two evidentiary hearings were held in July and September 2017). (Declaration of K. Jon Breyer ("Breyer Decl.") Ex. 1).

The Harassment Restraining Order includes the following factual findings: Fredin directed communications to Middlecamp's law school and legal professional associations sharing identifying information about Middlecamp and accusing her of criminal conduct, and eventually directed communications to her employer of a similar nature. (*Id.* at ¶ 5(d) and (f)). Fredin also registered the domain name "lindseymiddlecamp.com" and published

content on that website identifying Middlecamp and her employer, accusing her of criminal conduct, and soliciting others to make complaints against her. (*Id.* at ¶ 5(e)). Fredin repeatedly sent emails and other electronic communications to third parties sharing information about Middlecamp, her employer, and her anonymous Twitter account, and accusing her of criminal conduct. (*Id.* at ¶ 5(f)). Even after Middlecamp obtained an *ex parte* harassment restraining order on April 14, 2017, Fredin contacted an attorney he believed to be averse to Middlecamp in active litigation where Middlecamp, an attorney herself, was acting as counsel of record. (*Id.* at ¶ 5(g)). The Harassment Restraining Order concluded that the repeated actions by Fredin were intended to or did have a substantial adverse effect on Middlecamp's safety, security, or privacy. (*Id.* at ¶ 6.) The Harassment Restraining Order bars Fredin from any direct or indirect contact with Middlecamp, among other protections.

Prior to commencing this federal action in the United States District Court, and prior to the final order in Middlecamp's harassment restraining order proceeding, Fredin served Middlecamp with a Ramsey County state court defamation action containing similar allegations to those included in the current suit. (Court File No. 62-CV-17-3994). Ramsey County denied Fredin's request to waive the filing fee for that action based on improper venue, directing him to re-file the action in Hennepin County. Instead, Fredin commenced the instant action.

On March 9, 2020, following a two-day evidentiary hearing, the Ramsey Court District Court entered an order granting a 50-year restraining order against Fredin. (Breyer Decl. Ex. 2.) The court had previously determined that Fredin had created 5 separate

3

websites, each containing a link to Fredin's federal lawsuit against Middlecamp, and each included her home address. *Id*. ¶5. Further, on March 15, 2019 Fredin was found guilty after trial by jury of a violation of the HRO. In retaliation, Fredin filed a number of complaints seeking to have Middlecamp disciplined by the Office of Lawyers Professional Responsibility. All were dismissed. *Id*. ¶¶8-12. Because of this and other troubling behavior displayed by Fredin, the Court's HRO prohibits Fredin from harassing Middlecamp through anonymous or pseudonymous websites or other social media postings or through filing legal actions against Middlecamp. *Id*. ¶17.

## PROCEDURAL POSTURE

On September 26, 2018, the District Court for the District of Minnesota adopted the Report and Recommendation and Order ("R&R") of Magistrate Judge Franklin L. Noel dated April 13, 2018. This order granted Defendant's motion to dismiss Count II of the Amended Complaint (abuse of process), but denied the motion to dismiss Count III of the Amended Complaint (IIED). The R&R gave the required pleadings-stage deference in favor of Fredin, noting in particular, that if Fredin's claim that Middlecamp had invented or fabricated a rape allegation by a third party were taken as true, those facts could support a defamation and IIED claim.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-51 (1986). The moving party bears the initial burden of stating grounds for its motion and identifying those portions of the record

4

which demonstrate the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The facts and inferences to be drawn from them are viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But at this stage of the proceeding, Fredin's burden is an evidentiary one. *Dunavant v. Moore*, 907 F.2d 77, 80 (8th Cir. 1990). He must identify affirmative evidence in the record from which a jury could find that he has carried his burden. *See Jackson v. Gutzmer*, 866 F.3d 969, 975, 978 (8th Cir. 2017).

After the moving party identifies the grounds for the motion, and the relevant portions of the record, the nonmoving party must establish that a triable fact issue exists on every element for which he bears the burden of proof. *Celotex*, 477 U.S. at 323. Mere allegations and conclusory statements are insufficient to withstand a summary judgment motion. *Dunavant*, 907 F.2d at 80. Fredin cannot defeat a summary judgment motion merely by presenting colorable evidence or evidence that is not significantly probative. *Anderson*, 477 U.S. at 249–50. Moreover, he cannot meet his burden by asserting that a jury might not believe a witness, or rely on out-of-context statements, speculation, and conjecture. *Id.* at 256.

### ARGUMENT

**I.  FREDIN CANNOT MAINTAIN A CLAIM FOR DEFAMATION**

Fredin's first cause of action is for Defamation *per se*. (AC ¶¶30-36). A plaintiff pursuing a defamation claim "must prove that the defendant made: (a) a false and defamatory statement about the plaintiff; (b) in [an] unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the community." *Weinberger v.*

5

*Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003). The third element of harm to a reputation is presumed where a plaintiff establishes defamation *per se.* "Statements are defamatory per se if they falsely accuse a person of a crime, of having a loathsome disease, or of unchastity, or if they refer to improper or incompetent conduct involving a person's business, trade, or profession." *Longbehn v. Schoenrock*, 727 N.W.2d 153, 158 (Minn. Ct. App. 2007).

Here, Fredin's allegations are little more than threadbare recitations of the elements of defamation, and for the most part, his pleadings fail to identify specific statements he alleges to be false. For example, Fredin complains broadly that Defendant published over 40 posts on the Twitter account @cardsagsthrsmt. (AC ¶19). But Fredin has failed to identify which posts form the basis for his claims, let alone provide *any* evidence to suggest that posts about Fredin made by Middlecamp are false. Middlecamp is therefore left to guess which specific statements are at the heart of Fredin's case, and those appear to be: (1) Middlecamp's tweet from January 2017 stating that Fredin had at least two harassment restraining orders against him and used aliases on dating sites, and (2) Middlecamp's tweet from February 2017 stating that another woman alleged that Fredin raped her in 2010. The January 2017 tweet does not relate to criminal activity and, therefore, Fredin must separately establish harm. The February 2017 tweet relates to criminal conduct by Fredin and therefore he argues it does not require an element of harm to be proven.

Despite this distinction in analysis, Fredin's claim should be dismissed as to both statements. Fredin has produced no evidence whatsoever that any of Middlecamp's statements are false. Moreover, as set forth below, the statements were privileged as a

6

matter of public concern, and Fredin has no evidence supporting his burden to establish malice or ill will. His defamation claim should be dismissed.

> A. Fredin cannot maintain a claim for Defamation *per se* because the statements involve a matter of public opinion.

Defamation law balances the interests of the person who alleges to have been defamed with the First Amendment rights of the speaker and, in cases such as the current case, the interests of the public in matters of public concern. Construing Minnesota defamation law, the Minnesota Supreme Court recently reiterated the burden-shifting that applies where a defendant such as Middlecamp can show her statements were privileged. Under such circumstances, the burden shifts to the plaintiff to demonstrate that the defendant made the statement with malice. *See Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 873 (Minn. 2019) (citing *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 920 (Minn. 2009)).

*Maethner* is particularly analogous and instructive to the issues in Fredin's case against Middlecamp. In *Maethner*, a man sued his ex-wife and her domestic violence advocacy group after she suggested that plaintiff (her ex-husband) had committed acts of domestic violence against her during their marriage. *Id.* at 872. In that case, the plaintiff alleged that the statements made by his ex-wife were defamatory *per se* because they accused plaintiff of a crime. *Id.* at 875. The court agreed with the plaintiff that the statements could be construed as involving criminal behavior, but noted that the defamation *per se* analysis does not end there. *Id.* "This is because, like all laws regulating speech, the

doctrine of defamation per se cannot offend the constitutional guarantees of the First Amendment." *Id.* (citing *Jadwin*, 367 N.W.2d at 481).

"[C]ourts cannot offer recourse for injury to reputation at the cost of chilling speech on matters of public concern, which occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Id.* (internal quotations omitted). Citing both Minnesota law as well as guidance from the United States Supreme Court, the *Maethner* court held that damages cannot be presumed where statements made involve a matter of public concern and where a plaintiff cannot establish actual malice. Moreover, the court held this protection extends to media and non-media speakers alike. "'Minnesota affords to nonmedia defendants the same first amendment protection for criticism of public officials that it grants to the mass media.'" *Id.* (quoting *Britton v. Koep*, 470 N.W.2d 518, 521 (Minn. 1991)). Thus, "[t]he rule should not be different when the plaintiff is a private individual but the matter nonetheless raises an issue of public concern." *Maethner*, 929 N.W.2d at 878.

Therefore, regardless of whether Middlecamp's gender-issues Twitter account elevates her to the role of "the media" is not dispositive. Instead, "it is the private or public concern of the statements at issue—not the identity of the speaker—that provides the First Amendment touchstone for determining whether a private plaintiff may rely on presumed damages in a defamation action." *Maethner*, 929 N.W.2d at 878. In determining if statements are of a public concern, the Court should consider what was said, where it was said, and how it was said. *Id.* at 881.

8

Here, the first statements complained of was a tweet warning women of the Twin Cities metro area that Fredin is a person with multiple restraining orders against him who uses aliases on dating sites. Fredin has no evidence to establish that any aspect of that statement was false. Fredin himself alleges that it was posted to a Twitter account that is public and dedicated to reducing violence and harassment towards women, locally as well as internationally. Similarly, the subsequent February 2017 re-posting of another woman's rape allegation is, on its face, a matter of public concern of interest to people of the Twin Cities metro area, both regarding Fredin specifically, and the ongoing risk of predators on dating sites generally. There should be little doubt that the statements involve a matter of public concern. Fredin has produced no evidence supporting a showing of malice or ill will by Middlecamp. Accordingly, Fredin must establish both the statements' falsehood as well as actual damages.

### B. Fredin cannot show that any statements by Middlecamp were false or that they caused actual damage

Even if the Court is willing to consider a standard defamation claim (which was not pleaded) rather than defamation *per se*, that claim must also fail because the great weight of the evidence in the record dictates a finding that (1) the statements are true and (2) Fredin did not suffer reputational harm or damage as a result of the statements at issue here. Fredin has not produced any evidence, or even identified specific statements, which he can prove to have been false. Where Fredin did cooperate with discovery in this action, his documents and testimony reflect that Middlecamp's statements about him are consistent with public records and statements by third parties.

9

Nor can Fredin establish actual damage tied to any of Middlecamp's tweets. Fredin has produced no evidence that any of the events in his life since January 2017 have been the result of Middlecamp's tweets rather than his own actions. Moreover, Fredin's own allegations—in this case and in parallel litigation—demonstrates that he blames his damages, if any, on other events and publications which were harmful to his reputation, including, but not limited to, a January 23, 2017 Minnesota Court of Appeals decision publicly available online describing his harassment of a woman other than Middlecamp; a February 22, 2017 article by City Pages detailing Fredin's harassment of two women other than Middlecamp to a readership of thousands, and criminal charges and convictions by Ramsey County for stalking and harassment. Fredin has made scattershot allegations against a variety of defendants for three years, but is now required to demonstrate what proof of damages would support his claim against Middlecamp. Because he cannot, his defamation claim should be dismissed.

## II. FREDIN'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MUST FAIL

Fredin's claim for intentional infliction of emotional distress ("IIED") is based on his alleged emotion distress suffered as a result of the Middlecamp's re-posting of another woman's rape allegation. (AC ¶42). Fredin claims he "suffered, and continues to suffer, extreme emotional distress" as a result of Defendant's actions. (*Id.* ¶43). Because his defamation claim fails, Fredin cannot sustain a claim for emotional damages. "Emotional-harm damages 'are insufficient in themselves to make the slander actionable, but once the cause of action is made out without them, they may be tacked on as 'parasitic' to it.'"

10

4821-7632-1219.5

*Maethner*, 929 N.W.2d at 874 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 112, at 794–95 (5th ed. 1984)). Thus, this claim should be dismissed.

Even if his claim was not dismissed together with his defamation claim, there is no evidence in the record that comes close to establishing a claim for IIED. The tort requires: (1) conduct that was extreme and outrageous; (2) and was intentional or reckless; (3) caused the plaintiff to suffer emotional distress; (4) which was severe. *See Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003) (citing *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983)). Minnesota law approaches IIED cautiously, keeping it "'sharply limited to cases involving particularly egregious facts,'" and requiring a "'high threshold standard of proof'" to submit the claim to the jury. *Id.* at 864 (quoting *Hubbard*, 330 N.W.2d at 439). Minnesota courts have found that conduct is extreme and outrageous when it is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Hubbard*, 330 N.W.2d at 439. IIED claims are "sharply limited to cases involving particularly egregious facts." *Id.* Liability does not extend to "insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *See* Restatement (Second) of Torts § 46 cmt. d (1965).

Here, the allegations set forth by Fredin fail to support his claim for intentional infliction of emotional distress, and Fredin has not provided enough evidence to support the allegations. Middlecamp's alleged "extreme and outrageous" conduct was sharing on her Twitter account credible allegations of sexual violence and other misconduct by Fredin originating from third parties. (AC ¶ 42.). Because the statement complained of was a matter of public importance designed to protect the safety of women, it does not rise to the

11

level of "extreme and outrageous" conduct that this tort requires. Moreover, Fredin has produced no evidence that the underlying statements were false, or that Middlecamp was reckless when she shared it on her Twitter account.

## CONCLUSION

For the foregoing reasons, the Defendant respectfully request that the Court enter summary judgment in her favor and dismiss Plaintiff's claims against her with prejudice.

Date: July 23, 2020      **KUTAK ROCK LLP**

By: /s/ K. Jon Breyer
K. Jon Breyer (MN #302259)
60 South Sixth Street
Suite 3400
Minneapolis, Minnesota 55402
Telephone: (612) 334-5057
Jon.breyer@kutakrock.com

***Attorneys for Defendant Lindsey Middlecamp***