**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

BROCK FREDIN,

            Plaintiff,

  --against--

LINDSEY MIDDLECAMP

            Defendants.

Case No.  17-CV-3058

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S JULY 23, 2020 SUMMARY JUDGEMENT MOTION**

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se*, hereby submits this memorandum of law in opposition of Defendant's July 23, 2020 Summary Judgement motion.

**PRELIMINARY STATEMENT**

Defendant describes herself as a "queer" feminist who is *actually* married to a man.[1] The Court is going to dismiss several meritorious claims based on its own intentional actions to prejudice Plaintiff.[2] Hildy Bowbeer's corrupt actions prevented Plaintiff's

---

[1] Most, if not all, statements by Defendant are a blatant distortion or an outright lie. It is laughable to consider any statements by Defendant as fact. *See* https://twitter.com/cardsagsthrsmt

[2] There is nothing Plaintiff can say here to prevent Susan Richard Nelson or Hildy Bowbeer's and their clerk's actions to dismiss. Ms. Bowbeer's denial of discovery was so incredibly prejudicial that it proves her biased intent. Ms. Bowbeer and Nelson have

1

discovery to obtain evidence to oppose summary judgement while enabling Defendant to conduct burdensome discovery requiring hundreds of hours of work. Moreover, Hildy Bowbeer engaged in numerous retaliatory actions against Plaintiff on the eve of George Floyd against a victim of similar Minneapolis violence. Ms. Bowbeer and Nelson watched and did nothing as Plaintiff was tortured and kidnapped by Defendant.[3] Unlike George Floyd, where he was tortured for nine (9) minutes, Plaintiff was tortured for an entire year where he was kicked, punched, assaulted, and deprived of sleep, food, or anything meaningful  On the eve of George Floyd, Ms. Bowbeer engaged in what can only be described as a sick, twisted, and heinous attack against someone barely recovering from Defendant's Minneapolis torture. If Ms. Bowbeer or Nelson would have stepped in sooner, they could have prevented Minneapolis tactics that killed George Floyd. Outrageously, Ms. Bowbeer and Neslon even egregiously complained that they were being notified too many times by Plaintiff of Defendant's Minneapolis violence on May 18, 2020. Ms. Bowbeer and Nelson's actions in failing to address Minneapolis violence which could have been done several years sooner created the global George Floyd protests.

A Special Note to the [c]ourts Clerks[4]

---

tainted their record forever and proved their only intention is to facilitate and protect Minneapolis violence, corruption, and misconduct.

[3] Ms. Bowbeer and her clerk's actions are no different than former Minneapolis Police Officer Tou Thao as he watched and justified torture. *See* https://www.youtube.com/watch?v=f5eYvDToQgQ

[4] You should print this section out and tape it onto your wall of your future office to remind you about the importance of legal ethics and integrity. You should always disagree with a judge you are clerking for if you feel it's not the correct action. Groupthink is wrong in all areas of life.

To every clerk reading this, federal judges and magistrates have one major duty in life and that is to hold bad state actors responsible in an effort to uphold the Constitution. In this democracy, this court is beholden to Plaintiff, who is an American citizen, and not state or federal institutions or lawyers.  In this respect, both Ms. Nelson and Bowbeer have set very poor examples for your future life as attorneys or litigators.  By attacking Plaintiff, the court is attacking democracy.  Importantly, ethics and integrity are the core of being a lawyer.  These are elements that you were not able to learn from the court during this clerkship.  Attorneys can do very bad things to good people if they are guided by poor ethics (as you are witnessing with Karl Johann Breyer[5] towards Plaintiff).  Ms. Bowbeer and Nelson have failed each of you on these fronts and even failed to criticize the facially unconstitutional actions taken to silence Plaintiff where Plaintiff was allegedly exposing the same Minneapolis violence pre-George Floyd.  Ms. Nelson and Bowbeer's criticism alone in those orders could have prevented Minneapolis violence that caused George Floyd which would have sparked policy changes within the City of Minneapolis pre-George Floyd.  Indeed, Ms. Bowbeer and Nelson could have saved George Floyd's life, and, most importantly, prevented the national riots and global protests.  This argument is not grandiose or a stretch.  As a result, Ms. Bowbeer and Nelson have deprived you of a proper

---

[5] Mr. Breyer knows Plaintiff's family and has even attended Plaintiff's sister's monthly munches apparently for years.  Mr. Breyer lost track of the Inn of Court's true intent which is building ethics and integrity of lawyers.  It's not to network, schmooze, party, or generate money.  Mr. Breyer has failed any ethical standard particularly any constitutional standard with his ongoing attacks against Plaintiff.  Indeed, Plaintiff is an excellent writer, researcher, knows how to litigate in certain situations but lacks any actual experience as a lawyer.  Leaking Plaintiff's discovery because he mistakenly failed to mark documents as confidential is one example of Karl Johann Breyer's gutter tactics.

legal education or guidance rooted in ethics and integrity. And, each clerk must correct this by reporting Lindsey Middlecamp's conduct to the federal and state Professional Responsibility Board and reporting any judicial misconduct that you ever see at any stage in your careers (regardless of non-disclosure pacts you have in chambers with judges). The non-disclosure pacts judges address clerks with when starting is the same rhetoric criminals use when committing crimes e.g., don't tell anyone about the misconduct. A quote by Edmund Burke and reiterated by legendary leaders like Winston Churchill aptly describes this analogy, "[t]he only thing necessary for the triumph of evil is for good men to do nothing."

### Karl Joh*ann* Breyer

Defendant's counsel Karl Joh*ann* Breyer continues his psychotic rampage of attorney misconduct by engaging in repeated *ad-hominem* attacks.[6] Specifically, Mr. Breyer regurgitates bogus allegations that Plaintiff "continue[s] the relentless victimization of three women." (*See* Def. Sum. Mot. ¶ 1 in 18-466.) Mr. Breyer's make believe fantasy allegations come from an attorney who does not even have the integrity to use his real name in pleadings.[7] Mr. Breyer changed his name from Karl Johann Breyer to K. Jon Breyer to escape allegations that he is related to Auscwitz guard Johann Breyer.[8] Ironically, this case

---

[6] Plaintiff is one of the very few litigants who could survive this level of attack and still be standing. Attacks including torture, assault, and bogus tabloid coverage to destroy his career.

[7] Even Plaintiff did not change his name after being tabloid and Google bombed depriving him of his professional livelihood. Plaintiff is not a coward.

[8] *See* e.g., https://www.nytimes.com/2014/06/19/us/johann-breyer-accused-of-working-at-auschwitz-and-buchenwald.html

also involves Mr. Breyer's use of fabricated allegations to desperately participate in the wrongful imprisonment and torture of an innocent victim: Plaintiff. *(See Pl. Sum. Jud. Sec.. Decl. Ex. A;)* Defendant Middlecamp is not a victim. Defendant Middlecamp is a federal and (former) Minneapolis cop where she uses her positions to wrongfully inflict harm on Plaintiff, his family, and, most importantly, the Constitution. Defendant Middlecamp expects infantile treatment immune from public peaceful criticism.[9] Mr. Breyer has spent the last several years thinking about the nastiest insults or schemes he can use against Plaintiff. Indeed, Mr. Breyer attacks victims of Minneapolis torture and then brags about it in federal pleadings. *Id.* Mr. Breyer should have changed his name to Derek Chauvin because it would be more descriptive of his torture. These are not the actions of a respectable man. Instead, they are actions of a terrified individual desperately hiding corruption, violence, and attorney misconduct. Mr. Breyer participated in the attempted violence, torture, and assault by engaging in extrajudicial communication with Saint Paul Police Officers David McCabe Sarah Nasset, and Tara Patet. Mr. Breyer and Defendant Middlecamp, along with McCabe, Patet and Schaefer have yet to be prosecuted for their various crimes including obstruction, tampering, false police reports, and assault.

Finally, Mr. Breyer knowingly fabricated allegations on August 19, 2020 alleging that Plaintiff had an unknown party email the court's chambers with communication material to the case. Plaintiff does not care about Defendant so far as reaching out to third

---

[9] Hildy Bowbeer has egregiously failed to criticize Minneapolis violence originating from Defendant. This is particularly egregious considering the events of George Floyd where Plaintiff's neck was knelt on by Defendant within his own home in Hudson, Wisconsin. This taints Ms. Bowbeer and Nelson's records forever.

parties. Plaintiff maintained absolutely no knowledge of this email or any such actions surrounding the email. Plaintiff does not know Gordon Ray Parker and would immediately block this person. Moreover, Plaintiff has never solicited anyone to ever contact any third party on his behalf with respect to Defendant. Plaintiff has never had any advanced knowledge of any third parties reaching out to Defendant. By Defendant's own standards, she has induced thousands of people to reach out to Plaintiff. Mr. Breyer and Defendant must be sanctioned severely by the court. After five (5) years, Plaintiff is tired of these knowingly fabricated allegations and Mr. Breyer's and Defendant's innuendo. Given that the court has rigged this case by denying discovery, dismissing merit based claims in other cases, in some sort of pre-George Floyd retaliation ceremony, the court will not sanction Mr. Breyer. Mr. Breyer along with Defendant must be immediately sanctioned to prevent Mr. Breyer's circus attorney misconduct. If Defendant was a man, she would be in prison for many years. Plaintiff is tired of these actions. Plaintiff has reached the peaceful Constitutionally protected vigilante stage. When the court refuses to sanction Defendant, or Mr. Breyer, for yet another attempt to fabricate allegations on August 19, 2020, Plaintiff will simply exercise his rights to engage in peaceful constitutionally protected protest.

<u>Lindsey Middlecamp</u>

Mr. Breyer stated Plaintiff "failed to produce any evidence to substantiate his claim[s]." (*See* Def. Sum. Mot. ¶ 1.) On the contrary, Plaintiff procured evidence through Freedom of Information Act ("FOIA") productions indicating Defendant Middlecamp's

6

knowingly false and malicious[10] defamation.  *(See Pl. Sum. Jud. First. Decl. Ex. A-U; Pl. Sum. Jud. Sec. Decl. Ex. A-G.)*  Specifically, Defendant admitted that she was providing "unique false information" to "fabricate" allegations.  *Id.* at Sec. Decl. Ex. A.  Furthermore, Defendant's malicious intent was well documented.  *Id.* at *First. Decl. Ex. A-U.*  Defendant Middlecamp used her false rape allegation to contact numerous third parties to collaterally attack Plaintiff with bogus state court harassment restraining orders.  *Id.*  In doing so, she used the false rape allegation to contact her coworkers in the Minneapolis City Attorneys' Office to threaten public humiliation against them.  *Id.* at Ex. A.  Specifically, Defendant Middlecamp stated that her own colleagues would suffer reports from "MPR" or the "City Pages" if they did not immediately ac on her "unique false information" and "fabricat[ions]".  *Id.* at First. Decl. Ex. A.  Finally, Plaintiff was prejudiced because Ms. Bowbeer denied discovery.  And, Plaintiff produced evidence through depositions and other discovery productions indicating Defendant's allegations were malicious and false.

## STATEMENT OF FACTS

Plaintiff incorporates by reference from the docket, declarations, and pleadings in this action.  Furthermore, Plaintiff expects that the court is familiar with the underlying facts in this action.

## GOVERNING STANDARD

---

[10] In a defamation claim, for a non-public figure, Plaintiff need not meet the actual malice standard.  Instead, Plaintiff argues that Defendant's acted with malice in fabricating their allegation to seek vindictive torture against Plaintiff.

7

In a summary judgment on defamation claims, Susan Richard Nelson "must construe the evidence in the light most favorable to Plaintiff." *Maethner v. Someplace Safe, Inc.*, A17-0998, at *37-38 (Minn. June 26, 2019) (citing *328 Barry Ave., LLC v. Nolan Props. Grp., LLC*, 871 N.W.2d 745, 751 (Minn. 2015) *W.J.L. v. Bugge*, 573 N.W.2d 677 (Minn. 1998)Plaintiff can "establish defamation claim against [defendant] for maliciously fabricating and circulating false rumors that impugned his professional judgement and character" to defeat summary judgement. *Gay v. Affourtit*, 76 F. Supp. 2d 517 (S.D.N.Y. 1999)  In a summary judgement on a defamation claim, news reports suggesting professional negligence were denied. *Metcalf v. KFOR-TV, Inc.,* 828 F. Supp. 1515 (W.D. Okla. 1992)  Summary judgement motion denied on a defamation claim. *Moritz v. Town of Warwick*, No. 15-cv-5424 (NSR) (S.D.N.Y. Oct. 19, 2017)

## ARGUMENT

Given new evidence, Defendant's assertion that her activities are protected by the fair report privilege are negated and undermined by FOIA productions.  This evidence conclusively illustrates Defendant knew her statements were false and made with malicious intent.  Second, intentional infliction of emotional distress ("IIED") claims survive summary judgement.

### I.     Defamation Claims Survive Summary Judgement (Count 1)

As described below, several cases establish Plaintiff's strong likelihood of success to survive summary judgement on a defamation claim:

- *Moritz v. Town of Warwick*, No. 15-cv-5424 (NSR) (S.D.N.Y. Oct. 19, 2017) ("Summary judgement motion denied on a defamation claim.")

- *Daly v. N.Y. Life Ins. Co., No*. 1:12cv125 (S.D. Ohio Sep. 30, 2017) ("Denying summary judgement on a defamation claim where the defamatory statements created genuine issue of material fact where it "adversely" impacted the plaintiff's trade, business or profession.)

- *Wenz v. Becker*, 948 F. Supp. 319 (S.D.N.Y. 1996) (Summary judgement denied because reasonable jury could find an article unfair or untrue because it omitted facts)

- *Metcalf v. KFOR-TV, Inc.,* 828 F. Supp. 1515 (W.D. Okla. 1992) (news reports including direct statements suggesting professional negligence were denied at summary judgement)

To resist summary judgement, the non-moving party must "submit evidence to support the conclusion that a reasonable person in the position of [Defendants] would have investigated…" *Maethner v. Someplace Safe, Inc.*, A17-0998, at *29 (Minn. June 26, 2019) In dismissing this defamation claim, because the court intentionally deprived Plaintiff of discovery, the court will broaden the definition of rape to include literally anything including never meeting, speaking, or knowing another person. This will have catastrophic impact on the legal definition of rape.

A. <u>Plaintiff Procured Evidence Extinguishing Defendant's Fair Report Privilege</u>

Defendant claims that her statements are protected because they are a "matter of public concern" or "public opinion". (*See* Def. Sum. Mot. ¶ 7.) Plaintiff interprets this as

9

Defendant attempting to assert a fair report privilege.  The fair report privilege extends to protect news reports that accurately summarize or fairly abridge information relayed in court or legal proceedings.  *See Larson v. Gannet Company, In*., A171068. (Minn. Ct. App. 2018.)  The fair report or litigation privilege does not protect false and malicious statements that are used to incite negative media coverage.  *See Poet, LLC V. Nelson Engineering, INC*., Case No. CIV 17-4029 (holding "to stimulate press coverage and wide publicity of a complaint … allegedly false and malicious statements is beyond the pale of protection [under the fair report privilege].")

<u>False Rape Allegation</u>

As described above, Defendant contends that Plaintiff "failed to produce any evidence to substantiate his claim."  (*See* Def. Sum. Mot. ¶ 1.)  Defendant concedes in FOIA productions that she was providing "unique false information" in an effort to "fabricate".  *(See Pl. Sum. Jud. Sec. Decl. Ex. A.)*  Indeed*,* Defendant fabricated her rape allegation on February 22, 2017 by stating: "[t]he power of sharing.  Within hours of the stalking post going up, a rape survivor comes forward.  He remains free.  (Shared w/ her permission.)*"*



CardsAgstHarassment @CardsAgstHrsmt · Feb 22
The power of sharing. Within hours of the stalking post going up, a rape survivor comes forward. He remains free. (Shared w/ her permission)

Defendant had never met, seen, or spoken to Plaintiff.  Defendant apparently conjured up fake women to produce her Tweet.  *Id.*  The false rape allegation is not protected by a fair report privilege because it was never disclosed in any legal platform nor was it fairly or

10

accurately reported. Defendant is not a journalist. At the time of the Tweet, Defendant was a Minneapolis cop working alongside Derek Chauvin and Mohammed Noor. *(See Pl. Sum. Jud. First. Decl. Ex. S.)* Furthermore, Defendant used her false rape allegation maliciously to vindictively prosecute Plaintiff by self-dealing within her own office. *(See Pl.* Sum. Jud. First. Decl. Ex. A; . Pl. Sum. Jud. Sec. Decl. Ex. A.) Defendant admitted to using actions in the media as attack vectors against Plaintiff. Id. Defendant further stated that she was soliciting media coverage and generating other false claims in emails to her supervisor, Minneapolis *Deputy City Attorney Mary Ellen Heng, in February 2017.* Specifically, Defendant Middlecamp stated that she had solicited reporters form the "City Pages" or "MPR". *(See Pl. Sum. Jud. First. Decl. Ex. A.)*

    B. <u>Extinguishing Defendant's Assertion of Truth</u>

Defendant provides yet more false allegations that "[w]here Fredin did cooperate with discovery in this action, his documents and testimony reflect that Middlecamp's statements about him are consistent with public records and statements by third parties." (*See* Def. Sum. Mot. ¶ 10.) Defendant blatantly lied when she stated the "great weight of the evidence in the record dictates a finding that (1) the statements are true." *Id*. at ¶ 9. Specifically, Defendant fails to point to any evidence to indicate her allegation was supported in truth. Instead, Defendant points to her collateral use of her position to bring bogus actions to criminalize Plaintiff over alleged public criticism veiled in the draconian Gestapo like harassment statute.

Furthermore, Defendant produces no evidence that Plaintiff made any statement that draws a consistent inference that he agreed with Defendant's outrageous allegations. On

11

the contrary, Plaintiff has provided FOIA productions demonstrating Defendant Middlecamp's nightmare false rape allegation scheme. *(See Pl. Sum. Jud. First. Decl. Ex. A; . Pl. Sum. Jud. Sec. Decl. Ex. A)*

### i. Damages

Defendant states that Plaintiff was unable to show "damages" because Plaintiff did not "suffer reputational harm or damage as a result of the statements." (*See* Def. Sum. Mot. ¶ 9.) When a statement is considered defamatory *per se*, actual damages are said to be "presumed." *Longbehn v. Schoenrock*, 727 N.W.2d 153 (Minn. Ct. App. 2007) Moreover, Plaintiff suffered substantial damages based on the litany of allegations contained in pleadings: (1) loss of professional livelihood; (2) standing in the community; and (3) and many other nightmare allegations that were never plead which include the deprivation of liberty, deprivation of access to family, and more. "An exception to the "zone of danger" rule is that a plaintiff may recover damages for mental anguish or suffering for a direct invasion of his rights, such as defamation, malicious prosecution, or other willful, wanton or malicious conduct." *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902 (Minn. Ct. App. 1987) (internal citations omitted)

## II. **Intentional Infliction of Emotional Distress Survive Summary Judgement (Count 3)**

As described below, case law does establish Plaintiff's strong likelihood of success to survive summary judgement on an intentional infliction of emotional distress (IIED) claim.

- *Woods v. City of Reno*, No. 3:16-cv-00494-MMD-DJA (D. Nev. July 21, 2020) (denying summary judgement on IIED claim)

- *Crocco v. Advance Stores Co. Inc.*, 421 F. Supp. 2d 485 (D. Conn. 2006) (Denying summary judgment where false reports to the police sustain a claim of intentional infliction of emotional distress.)  See also *Barbusin v. Eastern Connecticut State University*, No. 3:05-CV-1171 (RNC) (D. Conn. May 11, 2006)

- *Conroy v. Caron,* 275 F. Supp. 3d 328 (D. Conn. 2017) (Denying summary judgment on state law claims of IIED where officers unlawfully entered and searched a family's home, used excessive force on a teenager who was verbally objecting to their presence and arrested multiple family members without probable cause.)

Defendant's "extreme and outrageous" false rape allegation caused "severe" emotional distress. *Hubbard v. United Press International*, Inc. 330 N.W.2d 428 at 43839 (Minn. 1983)) A false rape allegation In earlier pleadings, Plaintiff asserted that for purposes of IIED, "[i]ntentionally false allegations of rape could amount to outrageous behavior intolerable in a civilized society." *Mangan v. Thuy Thi Rumo*, 226 F. Supp. 2d 250 (D. Me. 2002)  Moreover, Defendant's scheme was produced through FOIA requests where she admitted to providing "unique false information" and actions describing her intent to make Plaintiff "go[] down way further than he imagined."  If the Court has any doubts to the veracity of Plaintiff's assertions, Plaintiff direct the Court to a text message he obtained on April 5th, 2018 within Saint Paul Police Complaint Number 17280176 originally filed on December 7th, 2017 which Plaintiff believe originated from Ms. Schaefer. The text

13

message not only confirms the ongoing scheme of Defendant Middlecamp women to harass Plaintiff, but also demonstrates the fact that they are acting with malicious intentions:



> Listen Brock, I have a hilarious secret for you. Lindsey and Clydesdale have a mutual bestie and have been hanging out for years. You are going down way further than you imagined. You messed with the wrong women.
> 7:03 PM

Needless to say, the above message is disturbing and conclusively evidences Defendant's malicious and defamatory scheme. And, it connects the dots between the "unique false information" used to broadcast their false rape allegation on Twitter in conjunction with their actions in state court including documented earlier communication with others including Catherine Schaefer.

### Extreme and Outrageous

Defendant sent her false rape allegation to Saint Paul Officer David McCabe who at that time was known to be in the sexual assault group. *(See Pl. Sum. Jud. First. Decl. Ex. C.)* By and through these actions, Defendant's only purpose was to cause emotional distress. Because Defendant's allegations were contrived, the only resort was to engage in harassment restraining order activities and pressure McCabe to investigate Plaintiff – using her false rape allegations as a front – for alleged protected criticism. *Id.*

### Injury and Medical Records

As a proximate cause, Defendant's conduct purported to deprive Plaintiff his mother while she died. Plaintiff stated in discovery he was forced into bankruptcy, unable to afford a home, living in his car while seeking a paycheck, and extreme violence. Plaintiff has been unable to obtain bank accounts, insurance, home mortgages, and has rarely been in public given Defendant's actions. Defendant states that Plaintiff failed to provide "medical records or expert testimony that purports to establish that Defendants alleged conduct is the proximate cause of his IIED." (*See* Def. Sum. Mot. ¶ 26.) Plaintiff did not have medical insurance and was unable to seek proper care which negates Defendant's assertion of medical records and expert testimony. Moreover, Plaintiff did provide sufficient medical records. Defendant's self-dealing and orchestrated actions caused Plaintiff to be homeless and bankrupted him.

Outrageously, FOIA evidence describes that Defendant used her false allegation to self-deal in conjuring up collateral criminal proceedings based on her office communication with Deputy Minneapolis City Attorney Mary Ellen Heng and Saint Paul Assistant City Attorney Tara Patet. *(See Pl. Sum. Jud. First. Decl. Ex. A; Pl. Sum. Jud. Sec. Decl. Ex. A.)* Thus, a proximate cause of the IIED distress is related to Defendant's false rape claim.

Plaintiff must exhibit symptoms to recover damages for an IIED or NIED claim. *Carlson v. Illinois Farmers Ins. Co.,* 520 N.W.2d 534 (Minn. Ct. App. 1994) In discovery, Plaintiff alleged mental anguish in the form of heightened awareness, depression, and anxiety. (*See* February 2020 – May 2020 Pl. Decl.) And, again his ability to document symptoms was mitigated by his lack of health insurance.

Outrageous Pattern of Conduct

Furthermore, Defendant has accused hundreds of me particularly black men – that she has never met or spoken to - of rape or improper conduct:[11]



Defendant has even accused underage boys of similar conduct. At the time of Defendant's actions, this individual was fifteen (15) or sixteen (16).

> If anyone's having a bad day, at least you aren't being attacked by an extreme feminist page on Instagram

(See https://twitter.com/benfield99/status/699320805101060096.) Defendant's "outrageous" conduct has been published where journalists have been alarmed by Defendant's #shirtlesshamers acts, and, most importantly, her blatant racism which is particularly troubling given George Floyd and Defendant's previous position as a Minneapolis cop.[12] (See Am. Compl ¶ 16 page 6; https://www.instagram.com/shirtlessshamers/?hl=en; .) Even more egregious, people have

---

[11] https://1.bp.blogspot.com/-v7hs1dylKV8/VvINdr5AijI/AAAAAAAA2yo/WriynH0kr3EkmL7zDo_lXgrMqBPNoH0BA/s1600/Lindsey.jpg

[12] https://avoiceformen.com/featured/racism-misogyny-misandry-and-lindsey-middlecamp/

literally come out of the woodwork to notify the court of Defendant's outrageous actions on the eve of its summary judgement ruling. (*See* August 20, 2020 Pl. Ltr.)  If the court would have referred Defendant's actions as a Minneapolis cop sooner, including actions where Defendant sent her goons to kneel on Plaintiff's neck, it could have literally prevented George Floyd, national protests, and riots.  The courts actions would have sparked policy changes in the Minneapolis police department.  On the eve of George Floyd, Plaintiff notified the court once again of its legal obligation to refer Defendant's misconduct to the Professional Responsibility board and prosecuting authorities.  What did the court do?  It attacked Plaintiff and attempted to vilify him in an attempt to "wash" their hands of Plaintiff.  Indeed, the court once again turned a blind eye.  The court should be absolutely ashamed of its actions and offer an immediate apology to Plaintiff and his family.  This courts actions in failing to protect cast a long shadow of shame on the federal judiciary for many years to come as it deals with the protests, riots, and impacts of George Floyd.  And, taints the courts record and legacy **forever**.  On August 20, 2020 President Trump stated in Old Forge, Pennsylvania that there are "smoldering ruins in Minneapolis", in part, because this court completely failed in addressing police brutality issues despite having literally years and hundreds of pages of documents to spark policy changes within Minneapolis law enforcement where Defendant used her position to unlawfully attack Plaintiff and kneel on his neck within his own home.  (*See* https://youtu.be/hDj4cEcPu9I?t=417.)  No person should ever go through what this court, Defendants, and Mr. Breyer put Plaintiff through.  The courts mistakes are deeply disturbing, unfathomable, absurd, and incredibly egregious considering that Plaintiff's life

was destroyed, he was tortured, kidnapped, assaulted, neck knelt on, and was deprived access of his dying mother.  It is time for the court to offer an immediate apology.

## CONCLUSION

For the reasons set forth above, Plaintiff requests the court deny Defendant's summary judgement motion in its entirety.

Dated: August 20, 2020

s/ Brock Fredin
Brock Fredin
(612) 424-5512 (tel.)
brockfredinlegal@icloud.com
Plaintiff, *Pro Se*