## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brock Fredin,

                        Plaintiff,              Court File No. 17-cv-03058 (SRN/HB)

v.

Lindsey Middlecamp,

                        Defendant.

Brock Fredin,

                        Plaintiff,              Court File No. 18-cv-466 (SRN/HB)

v.

Grace Miller, and
Catherine Schaefer,

                        Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT

Defendants Lindsey Middlecamp, Grace Miller, and Catherine Schaefer, by and through their undersigned Counsel, hereby submit this memorandum in support of their motion to declare Plaintiff Brock Fredin a vexatious litigant.

## **INTRODUCTION**

Plaintiff Brock Fredin is a serial harasser who has moved his abusive tactics from cyber-stalking to vexatious litigation. After having multiple restraining orders entered against him, he has flooded this court and others with inflammatory, offensive pleadings and frivolous motion practice. He has filed twelve lawsuits in the course of three years, all casting himself as the victim where in fact he is the perpetrator. His pleadings are full of misogyny, conspiracy theories, and threats of further retaliation against not only the defendants in this case, but their attorneys, judicial officers, and even the Court's clerks. In recent months, he has followed through on some of those threats, registering and creating at least twenty-two defamatory websites to harass judges, clerks, Defendants' attorneys, and even jurors and a court clerk.

Fredin's conduct—undeterred despite sanctions, dismissals, unsuccessful appeals, and even two criminal convictions arising from his harassment—has been aimed at a singular goal: not vindicating any legitimate legal interests, but instead retaliating against each and every person who has had any role holding him accountable for his misconduct. Because this pattern of bad faith litigation (and harassment of anyone involved in that litigation) will continue without this Court putting protections in place, Defendants respectfully ask the Court to declare Fredin a vexatious litigant and require leave of the Court prior to initiating any new suits against Defendants.

4848-7270-5486.1

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    FREDIN HAS SPENT YEARS HARASSING DEFENDANTS.

Defendants adopt and incorporate by reference the factual background set forth in the motions for summary judgment filed in these actions. (17-CV-3058, Doc. 180; 18-CV-466, Doc. 172.)

Middlecamp, Miller, and Schaefer have separately sought and have been awarded restraining orders against Fredin: first, in the form of two-year restraining orders. After each establishing multiple violations of their two-year restraining orders, Middlecamp, Miller, and Schaefer were each subsequently awarded 50-year restraining orders. Defendant Middlecamp's 50-year HRO is in the record at 17-CV-3058, Doc. 181-2. Defendant Miller's 50-year HRO is attached as Exhibit 1 to the Decl. of K. Jon Breyer. Defendant Schaefer's 50-year HRO is attached as Exhibit 2 to the Decl. of K. Jon Breyer.

Despite having restraining orders issued against him prohibiting Fredin from further harassment, Fredin has filed thousands of pages of pleadings across twelve lawsuits, numerous appeals, and writs either naming Defendants directly or including allegations regarding Defendants. The pleadings index below sets forth the filing dates and disposition of Fredin's suits and appeals that name Defendants as direct parties. However, the index does not account for the hundreds of pages of amended pleadings, correspondence to the Court, and motion practice.

| Filed Date | Caption | Description | Disposition |
|---|---|---|---|
| April 15, 2016 | *Miller v. Fredin*, A16-0613 (Mn. Ct. App.) | Fredin appealed Miller's 2-year HRO to Minnesota Court of Appeals | HRO Affirmed on January 23, 2017 |

| | | | |
|---|---|---|---|
| June 5, 2017 | *Fredin v. Middlecamp*, 62-CV-17-3994 (Ramsey County District Court) | Fredin commenced state court defamation action against Middlecamp | Administratively closed |
| July 18, 2017 | *Fredin v. Middlecamp*, 17-3058 (D. Minn.) | Fredin commenced Federal defamation action against Middlecamp | Summary Judgment Pending |
| October 20, 2017 | *Middlecamp v. Fredin*, A17-1646  (Mn. Ct. App.) | Fredin appealed Middlecamp's 2-year HRO to Minnesota Court of Appeals | Dismissed on November 12, 2017 for failure to pay fees by Fredin |
| July 9, 2018 | *Schaefer v. Fredin,* A18-1090 (Mn. Ct. App.) | Fredin appealed Ramsey County order finding Fredin in contempt of Schaefer's 2-year HRO | Dismissed on August 21, 2018 |
| July 16, 2018 | *Fredin v. Miller, et. al,* 18-466 (D.Minn.) | Fredin commenced Federal action against Miller and Schaefer | Summary Judgment Pending |
| February 22, 2018 | *Fredin v. Clysdale, et. al,* 18-CV-510 (D. Minn.) | Fredin commenced successive federal suit against Miller, Schaefer, and Middlecamp in addition to other parties | Dismissed on February 21, 2019 |
| May 18, 2018 | *Fredin v. Schaefer*, 2018CV000190 (St. Croix County, Wisconsin) | Fredin commenced a restraining order action against Schaefer in Wisconsin state court, without notifying the Wisconsin state court of the pre-existing restraining order against him. | Denied by Wisconsin state court |

4848-7270-5486.1

| April 8, 2019 | *Fredin v. Clysdale, et. al,* 19-1726 (8th Cir.) | Fredin appealed to Eighth Circuit following dismissal | Dismissal affirmed on February 20, 2020 |
|---|---|---|---|
| April 26, 2019 | *Schaefer v. Fredin* (Mn. Ct. App.) | Fredin appealed Schaefer's 50-year restraining order to the Minnesota Court of Appeals | Harassment Restraining Order affirmed on April 20, 2020 |
| October 13, 2019 | *In Re Fredin,* A19-1642 (Mn. Ct. App.) | Writ of Prohibition related to Middlecamp HRO | Denied |
| November 8, 2019 | *Fredin v. Street, et. al,* 19-CV-2864 (D. Minn.) | Fredin commenced a successive federal suit naming Middlecamp as party | Dismissed on May 5, 2020 |
| November 14, 2019 | *In Re Fredin,* A19-1642 (Mn. Sup. Ct.) | Petition for MN Supreme Court Review of Writ of Prohibition | Review denied |
| November 14, 2019 | *Fredin v. Miller,* 19-CV-2907 (D. Minn.) | Fredin commenced a successive federal suit naming Miller as party | Voluntarily dismissed on November 25, 2019 |
| December 9, 2019 | *Fredin v. Miller, et. al,* 19-CV-3051 (D. Minn.) | Fredin commenced a successive federal suit against Miller, Schaefer, and Middlecamp in addition to other parties | Dismissed June 10, 2020 |
| April 6, 2020 | *Middlecamp v. Fredin,* A20-0539 (Mn. Ct. App.) | Fredin appealed Middlecamp's 50-year HRO to Minnesota Court of Appeals | Pending panel review November 12, 2020 |
| May 25, 2020 | *In Re Brock Fredin,* 20-2034 (8th Cir.) | Writ of Mandamus action related to actions | Denied May 28, 2020 |

| | | involving Middlecamp, Miller, and Schaefer | |
|---|---|---|---|
| July 14, 2020 | *Fredin v. Miller, et. al* 20-2426 (8th Circuit) | Appeal by Fredin to Eighth Circuit of dismissal | Pending motion to show cause for failure to prosecute |

In addition to the suits and appeals naming Defendants directly, Fredin has taken care to include allegations against the Defendants in his pleadings, motions, and appeals even where the cases do not name the Defendants as parties.

For example, in his unsuccessful lawsuit against members of the St. Paul City Attorney's office, Fredin made a variety of conspiracy theory allegations against Middlecamp, Miller, and Schaefer, who were not parties to the suit:

> Major Grace Miller admitted to coaching a second baseless pile-own allegation to corroborate her claims. This allegation came from her personal friend, Catherine Schaefer, who had never met, spoken to, or known Plaintiff. Indeed these same tactics are being used against District of Columbia (DC) circuit Hon. Judge Brett Cavanaugh to collaterally attack his nomination to the United States Supreme Court. And, most importantly, Lindsey Middlecamp generated a fictitious rape allegation published to millions of people via @CardsAgstHrsmnt in conjunction with a false City Pages article. Lindsey Middlecamp is on the board of directors for a Washington, DC based organization that coordinates and secretly plans most #metoo style feminist take down campaigns.

(*Fredin v. Olson et. al*, 18 CV 2911 (D. Minn.), Doc.1 at 9.)

Similarly, in his unsuccessful suit against his former attorneys for malpractice, Fredin's Complaint begins with the allegation that "a desperate Assistant Minneapolis City Attorney named Lindsey Middlecamp began obsessively stalking Plaintiff and unlawfully leaking, using her public position, confidential Appellate decisions and posting obsessive

6

tweets on her personal anonymous revenge porn blog…" (*Fredin v. Hallberg Criminal Defense et al,* 19-CV-3068 (D. Minn.), Doc. 1 at 4.)

Even appealing the dismissal of that case, Fredin used his brief to highlight tirades against non-parties, alleging "[Judge Bowbeer] takes great care in protecting other German women like known racists and anti-semite's Lindsey (Myers) Middlecamp, Grace Miller, and Catherine Schaefer and took even greater care to favor their German lawyer Karl Johann Breyer – believed to be the direct descendant of Auschwitz guard Johann Breyer." (*Fredin v. Hallberg* Criminal Defense *et al*, 20-2205 (8th. Cir.), Appellant's brief at 24.)

Most recently, Fredin has filed a Complaint and an Amended Complaint against a third party rape victim. (*Fredin v. J.K.,* 20-CV-1929 (D. Minn.)) In both the Complaint and Amended Complaint, Fredin alleges at length that J.K. conspired with Defendants Middlecamp, Miller, and Schaefer to commit a variety of torts against Fredin.

## II.     FREDIN EXTENDS HIS HARASSMENT TO JUDICIAL OFFICERS, ATTORNEYS, JURORS, CLERKS, AND EVEN A COURT REPORTER

In the months that followed the October 2, 2017 entry of Middlecamp's 2-year HRO, Fredin registered and created a number of websites where he published defamatory aspersions against a number of individuals. Included among those websites were websites attacking Defendant Schaefer, Defendant Miller, and additional sites attacking Ramsey County District Court Referee Elizabeth Clysdale (who had presided over Middlecamp's HRO proceeding) and attorney Karmen McQuitty (who had represented Defendant Miller in her HRO proceeding.) *See* Breyer Decl., **Exhibit 3**. Under oath, Fredin denied knowledge of these websites. (*See* Breyer Decl., **Exhibits 4, 5**.) In a separate proceeding,

he pled the fifth rather than answer questions about the websites. (*See* Breyer Decl.,

**Exhibit 6** at 190-202.)

In recent months, Fredin has again elected to harass judicial officers and others who

have any connection to the HRO proceedings or other litigation involving Defendants

Middlecamp, Miller, and Schaefer. On October 7, 2020, Defendants discovered that

between July 2020 and September 2020, Fredin has registered and created over twenty-

two (22) individual websites which disparage and attack the individuals listed below. Each

site contains photographs of the individuals, professional and personal details, and a variety

of baseless, inflammatory attacks. *See* Breyer Decl., **Exhibit 7.**

1. JudgePatrickDiamond.com, registered on July 22, 2020. Judge Diamond is a Ramsey County District Court Judge who presided over HRO proceedings involving Fredin and Defendants.

2. KeithSellen.com, registered on July 22, 2020. Fredin identifies Sellen as the director of the Wisconsin Office of Lawyer Regulation, and appears to target him because the OLR dismissed Fredin's professional complaints against Defendants' attorney.

3. SusanHumiston.com, registered on July 22, 2020. Fredin identifies Humiston as the director of the Minnesota Office of Lawyers Professional Responsibility, and appears to target her because the OLPR dismissed Fredin's professional complaints against Defendant Middlecamp and Defendants' attorney.

4. JonathanZeisser.com, registered on July 22, 2020. Fredin identifies Zeisser as an investigator with the Wisconsin Office of Lawyer Regulation, and appears to target him because the OLR dismissed Fredin's professional complaints against Defendants' attorney.

5. ThomasSipkins.com, registered on July 23, 2020. Fredin identifies Sipkins as the Executive Secretary of the Minnesota Judicial Standards Board, and appears to target him for failing to discipline Judge Sophia Vuelo.

6. AttorneyPeterMayer.com, registered on July 25, 2020. Peter Mayer is an attorney who represented Defendant Schaefer in her HRO proceedings. Metadata for the site reveals that Fredin titled the photo of Peter Mayer with the filename "fag2.png."

7. YamyVang.com, registered on July 27, 2020. Vang is a prosecutor in the St. Paul City Attorney's Office who was involved in criminal prosecution involving Fredin's conduct against Defendants.

8. ClerkAnnMarieOneill.com, registered on August 4, 2020. Fredin identifies O'Neill as the clerk of the Minnesota Appellate Courts, and appears to target her for the Court of Appeal's adverse decisions against Fredin in matters involving the Defendants.

9. JudgeJeffreyBryan.com, registered on August 4, 2020. Fredin identifies Judge Bryan as a Minnesota Court of Appeals Judge, and appears to target her for the Court of Appeal's adverse decisions against Fredin in matters involving the Defendants.

10. ElizabethClysdale.com, registered on August 4, 2020. Judge Clysdale is a referee for Ramsey County District Court and presided over Defendant Middlecamp's 2017 HRO proceedings.

11. JudgeKevinGRoss.com, registered on August 4, 2020. Judge Ross authored a Minnesota Court of Appeals decision upholding Miller's HRO against Fredin.

12. LyndseyOlson.com, registered on August 4, 2020. Olson is a prosecutor in the St. Paul City Attorney's Office who was involved in criminal prosecution involving Fredin's conduct against Defendants.

13. JudgeDiamond.com, registered on August 9, 2020. This is a second site created by Fredin to attack Judge Diamond.

14. JudgeVuelo.com, registered on August 9, 2020. Judge Vuelo presided over the criminal case against Fredin involving his stalking of Defendant Miller.

15. JusticeMatthewWCooper.com, registered on August 16, 2020. Justice Cooper has no connection to Fredin; rather, he is connected to legal proceedings involving Fredin's friend Anthony Zappin.

16. CareyBollinger.com, registered on August 31, 2020. Bollinger served on the jury that convicted Fredin of stalking Defendant Miller. Fredin attacks Bollinger's appearance, professional qualifications, and integrity.

17. IreneZon.com, registered on August 31, 2020. Fredin identifies Zon as a Ramsey county Court Reporter, and appears to target her for her role in proceedings involving Fredin and Defendants.

18. NicoleSZemborski.com, registered on September 14, 2020. Fredin identifies Zemborski as a former clerk to Judge Diamond.

19. NicoleCornale.com, registered on September 14, 2020. This appears to be a duplicate site to NicoleSZemborski.com, suggesting Fredin investigated alternative names to attack Judge Diamond's former clerk.

20. AttorneyJacquelinePerez.com, registered on September 15, 2020. Perez appears to have been targeted based on her experience as a clerk for Judge Diamond

21. KJonBreyer.com, registered on September 18, 2020. K. Jon Breyer is the attorney to Defendants Middlecamp, Miller, and Schaefer.

22. JudgePatrickCDiamond.com, registered on September 18, 2020. This is the third website Fredin made attacking Judge Diamond under an additional URL.

In sum, each of these individuals (save for one) is connected to the HRO proceedings or other litigation involving Fredin and Defendants Middlecamp, Miller, and Schaefer, and for no reason other than their role as judicial officers, jurors, clerks, attorneys, or reporters, do they find themselves in Fredin's indiscriminate cross-hairs.

## ARGUMENT

### I.    PLAINTIFF IS A VEXATIOUS LITIGANT

The right of access to the court is not absolute or unconditional. *See Green v. White*, 616 F.2d 1054, 1055–56 (8th Cir. 1980). Defendants have a right to be free from "harassing, abusive, and meritless litigation," and federal courts have "a clear obligation to exercise their authority to protect litigants from such behavior." *In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988). An injunction may issue against a plaintiff who exhibits "a propensity for filing numerous meritless and vexatious lawsuits which clutter the docket of this court and put defendants to the time and expense of answering frivolous and frequently incomprehensible allegations." *Brown v. Gibson*, 571 F. Supp. 1075, 1077 (W.D. Mo. 1983); *see In re McDonald*, 489 U.S. 180 (1989); *Nelson v. Butler*, 929 F.Supp. 1252, 1260; *Kaminetzky v. Frost Nat. Bank of Houston*, 881 F. Supp. 276, 277 n. 1 (S.D. Tex. 1995) (citing cases enjoining certain litigants from filing pleadings and complaints when necessary to deter vexatious and frivolous litigation).

Here, Fredin has demonstrated a propensity for vexatious litigation. His suits are numerous and voluminous, and he has filed new suits even before earlier suits are resolved on the merits. Within each suit, his tactics with regard to motion practice, amending pleadings, and discovery all demonstrate bad faith. His language is intentionally inflammatory and abusive. Despite all of the foregoing, he has been given ample opportunity to have not only one day in court, but years' of consideration of his claims.

**A. Fredin has filed twelve lawsuits and numerous appeals all related to the same general events and issues.**

The number of suits a party files is not dispositive on the question of whether they are vexatious. However, the sheer number of lawsuits Fredin has filed (twelve) and the amount of overlap and redundancy of his claims are staggering. Every single lawsuit and appeal Fredin has filed in the past three years includes allegations and aspersions regarding Defendants Middlecamp, Miller, and Schaefer, even if they are not named as a party. Every lawsuit relates to events surrounding Defendants reporting Fredin's harassment, seeking restraining orders, and/or the criminal prosecutions and media coverage related to the same issues. Instead of waiting for his first two federal lawsuits against Defendants to conclude on the merits, Fredin filed successive, overlapping claims and appeals to ensure a constant barrage of filings against Defendants, with voluminous pleadings and zero evidence. It is not merely a matter of impatience that leads Fredin to file new suits while his original suits remain pending, but rather the vindictive purpose of bombarding defendants in bad faith.

**B. Minnesota state courts have already issued final orders finding that Fredin is a serial harasser.**

In addition to the volume of pleadings alone, there are other circumstances and factors that reveal Fredin's bad faith and weigh in favor of imposing an order preventing further frivolous litigation. First and foremost, Defendants ask the Court to consider the prior court findings that have declared Fredin a serial harasser.

Fredin is enjoined by three separate 50-year restraining orders that seek to protect each of the Defendants from any contact by Fredin. (17-3058, Doc. 181-2; Breyer Decl. Exs. 1, 2.) Fredin has had full opportunity to present evidence, cross examine the

12

Defendants, and appeal those orders on a number of occasions: in 2016 and 2017, when each of the Defendants separately sought and obtained 2-year restraining orders against Fredin; and later, when each of the Defendants separately established that Fredin had violated each of those orders on multiple occasions, and obtained subsequent 50-year restraining orders.

Many hours of evidentiary hearings have been held on the issue of Fredin's harassment. At each turn, the state courts properly concluded Fredin had engaged in harassment severe enough to warrant multiple 50-year restraining orders. He has been found in contempt on multiple occasions for violating HROs, and criminally prosecuted and convicted twice for violating them. His harassing activities included writing disparaging communications and complaints to Defendants' friends, colleagues, and employers for the purpose of harassing Defendants, and making hate-filled websites dedicated to each of the Defendants. *See* Breyer Decl. **Exhibit 18** at ¶¶ 6, 26, Order finding Fredin in contempt and the creator for various disparaging websites.

Unfortunately, Since 2017 vexatious litigation has served as a consistent loophole for Fredin to sidestep the protections of those restraining orders. Instead of making hate-filled websites and directing e-mails to employers or other persons in Defendants' lives, he now files voluminous screeds in his lawsuits, which the Defendants are required to read and respond to. Indeed, two state court orders have specifically found that Fredin has used litigation as a form of contact and harassment. (Breyer Decl**., Exhibit 8** at 7-10 (October 1, 2018 Order by Ramsey County District Court Judge Diamond finding that a Wisconsin suit commenced by Fredin was knowingly and intentionally misleading to the Wisconsin

13

court and was designed to communicate with and harass Schaefer); *see also* 17-CV-3058, Doc. 181-2 (finding in support of Middlecamp's 50-year restraining order that Fredin uses litigation to harass.))

### C.  The abusive language of Fredin's filings evidence Fredin's bad faith.

The harassing purpose of Fredin's litigation is also evident from the contents of Fredin's pleadings, correspondence, and declarations. As this Court is well aware, Fredin's filings are replete with inflammatory language and an unending stream of *ad hominem* attacks. In the course of his submissions, Fredin has, for example:

- commented upon each of the defendant's sexual orientations (for example, he has called Miller a lesbian (she is not); accused Miller and Schaefer of having an affair (they have not); and in turn, questioned Middlecamp being queer (she is));

- commented on Defendant Miller's physical appearance, calling her "manly" and linking to a photograph of her that he deems masculine (*See* 18-CV-466, Doc. 180 at 13);

- referred to Middlecamp as a real world "Lord Voldemort." (*See* Appellant's Brief, 19-1726 (8th Cir.) at 5);

- referred to Defendant Schaefer as "psychotic," "violent," and an "infant who cannot handle criticism" (18-CV-466, Doc. 180 at 9);

- repeatedly accused each of the Defendants of "identity rape," terrorism, catfishing, torture, revenge pornography, and other criminal conduct;

- made unsupported claims about the Defendants' mental health and disciplinary records;

- asserted Defendants have been fired from employment when they have not; (*see,* e.g., Breyer Decl., Exhibit 9 at 3 (Fredin's sanction motion, later denied by the Ramsey County district court, alleging baselessly that Middlecamp was fired from the City of Minneapolis);

- repeatedly connected Defendants and their attorneys to racism and antisemitism despite their commitment to social justice; and

- blamed the Defendants for all manner of tragic events, ranging from his mother's stroke to the death of George Floyd.

In addition to insults and disparagement, Fredin's inflammatory language extends to threats of his future actions. For example, in correspondence dated June 10, 2020, Fredin did not limit his request to the ostensible purpose (seeking leave to bring a motion to reconsider.) Instead, he included threats directly for Defendants' eyes: "I will be filing a new lawsuit specific to the fifty-year petitions Defendants fraudulently brought against me. I will not cease until Defendants face accountability for their violent actions." (19-3051, Doc. 95 at 2.) In another recent filing, from August 2020, Fredin wrote:

> "[his] biggest regret in life is not publishing a website immediately in 2017 through present exposing Ms. Middlecamp or her incredibly creepy and sycophant husband David. Indeed, David Middlecamp stores and publishes naked photos of black men and underage boys in concert with his wife. In 2020, Appellant will do so regardless of any unconstitutional order from this court."

(Breyer Decl., Exhibit 10 at 10-11.) He concluded that particular tirade by stating that Defendant Middlecamp is "most certainly going to hell." (*Id.*) None of these threats further Fredin's legal claims; instead, they are designed to intimidate and harass.

Fredin's scattershot approach is so generalized that Fredin has employed "copy and paste" to bring identical aspersions against whichever party he is pleading against. For example, in July 2017, Fredin wrote of Middlecamp: "Apart and aside from her law practice, Defendant Middlecamp is a militant feminist bent on pressing forward a radical sexist agenda and desperate for attention." (17-CV-3058, Doc. 1 at 2.) In February 2018, he regurgitated the same sentence against Defendant Miller: "Apart and aside from her

military career, Defendant Miller is also a militant feminist bent on pressing forward a radical sexist agenda and desperate for attention." (18-466, Doc. 1 at 9.)

### D. Fredin's suits are designed to keep Defendants in fear of continued stalking by Fredin.

Even when Fredin's language is restrained, his pleadings are designed to keep Defendants in fear of continued stalking. As to each of the Defendants, Fredin has taken great care to list Defendants' former employers, current employers, their educational background, the types of degrees they hold, and their places of residence. He does this not because it has any bearing on his claims, but instead to convey a clear message to the Defendants: I know where you live. I know where you work. I have not stopped watching you.

In 2017, Defendant Middlecamp moved to strike certain identifying details from Fredin's first complaint against her, arguing they were designed to invade her privacy and threaten her safety. The Court granted that request in part, advising Fredin in April of 2018 that Defendant Middlecamp's exact home address, educational background, and place of employment had "no logical connection" to his claims and should be stricken from the record. (17-CV-3058, Doc. 30 at 8). In defiance of that admonition, Fredin included the same details, as well as additional identifying details, in his next complaint against Middlecamp, and has included the same excessive identifying details against the other Defendants. (*See* 19-cv-03051, Doc. 1 at 3-4).

Fredin's evolving pleadings regarding Defendants Schaefer and Miller provide a perfect illustration of how this accomplishes Fredin's purpose of keeping Defendants in

16

fear of continued stalking. In his initial February 2018 suit against Schaefer, Fredin identifies Schaefer's home address in Pennsylvania but no other details. In his next suit against Schaefer, he adds that she has a PhD from Penn State University. (19-CV-3051, Doc. 1 at 4.) More recently, in his Complaint against J.K, Fredin wrote, "Plaintiff then used publicly available search tools to identify that Catherine Schaefer managed all PhD level research originating from the University of Minnesota Program in Sexual Health during overlapping time periods." That information only became available online in late 2019. Fredin's inclusion of that information is designed to signal to her that he continues to watch her every move.

Fredin has done the same to Miller through his pleadings. He first described Miller as follows: "Defendant Miller is a Major in the United States Air Force and commands the Aircraft Maintenance Squadron at the 934th Airlift Wing for the Minneapolis-St. Paul Air Reserve Station. In addition, she just finished her PhD in English Literature at the University of Minnesota." (18-CV-466, Doc. 1 at 6.)  In his next suit against Miller filed in December 2019, Fredin added the detail that Miller holds two master's degrees in addition to her PhD and lectures at the University of Minnesota. (19-cv-03051, Doc. 1 at 3-4). Most recently, on August 20, 2020, Fredin submitted two filings (a letter and a brief) both including additional details about Defendant Miller's more recent employment changes. (*See* 17-3058, Doc. 186 at 2)("…Defendant Miller is believed to be a current Air Force liaison to the United States Senate or House of Representative,") *see also* (18-466, Doc. 180 at 7-8 ("Grace Miller is a United States Air Force Major, commander of the 934th Airlift Wing, (former) instructor at the Air Force Academy, and current Air Force liaison

officer to the United States Senate.")) Significantly: Miller's appointment as an Air Force liaison has not even yet been confirmed, nor is it posted publicly anywhere. In fact, Miller had avoided making any public announcements regarding the position in order to avoid Fredin's discovery. Fredin does not include these details in order to further any legal claim; instead, he includes them to communicate to her that he is keeping close tabs on her every educational and professional move, and wants her to know it.

### E. Fredin shows extreme disdain and disrespect for the Court and its staff

As of late, Fredin has also begun evidencing his disdain for this Court and others. While he initiated these suits using appropriately formal language, he now refers to the presiding judicial officers in this matter as "Ms. Nelson" and "Ms. Bowbeer," calling for both judicial officers to retire, and directing demands of action to their judicial clerks.

In his most recent filing to the Minnesota Court of Appeals, Fredin included the following passage:

> This [c]ourt's failure to protect is despicable. Every single clerk, staff, and judge is going to be exposed in the tabloid media as a racist and have their career impacted and professional livelihoods tanked in the exact same tactics that Lindsey Middlecamp uses on her victims…
>
> …In addition, you will be reported to the Professional Responsibility and Judicial Standards Commission for failure to protect….
>
> …Dianne Bratvold and Jeffrey Bryan's dreams of becoming a Minnesota Supreme [c]ourt associate justice are now dashed. Indeed, deep state Mr. Bryan "co-signed" the original bogus unconstitutional HRO to gag Appellant and cover up a violent raid. Mr. Bryan also served with Referee Clysdale – who originally presided over hearings - in several Ramsey County law associations and hatched a scheme to work together to destroy Appellant's civil rights based on their incestuous relationship with Minneapolis and Ramsey county officials like Ms. Segal. Mr. Bryan is a co-conspirator in Middlecamp's torture and domestic terrorism. Mr. Bryan's assertions

18

of absolute judicial immunity certainly will not absolve Mr. Bryan of any of his wrongdoing. Mark these words, Mr. Bryan and Ms. Bratvold's elevation to the Minnesota Supreme [c]ourt or any federal court will never happen. If the court has any doubt to the veracity of these assertions, Appellant directs the [c]ourts attention to Kevin G. Ross. Appellant has written weekly to the Judicial Selection Commission describing Mr. Ross by exposing him for abusing his ex-wife and trying to steal her alimony by attempting to rig an appeal before this [c]ourt. Mr. Ross's unbelievably improper opinion in January 2017 – leaked by Middlecamp through Lori Gildae's clerk Emily Mawer – will go down as the single dumbest decision Mr. Ross has ever made (and there are many to choose from including appealing his own matrimonial order to this court). This [c]ourt, including its clerks, and staff is now cursed for the next three hundred (300) years. If you want, call it a Billy Goat curse or the curse of the Bambino. Appellant has engaged in a ceremony with religious experts.

(Breyer Decl. Exhibit 10 at 3-4). He later reiterates:

Remember, each clerk is going to get reported to the Professional Responsibility Board and websites are going up exposing you for your failure to protect.

(*Id.* at 10-11.)

As set forth above on pages 6 and 7 herein, Fredin has apparently followed through on those threats. He has registered the domain names and created at least twenty-two different websites to harass a variety of judges, attorneys, clerks, jurors, and even a court reporter. These insults include grotesque commentary on a juror's appearance and body odor, a judge's "effeminate" "creepy" voice, embedded reference to an attorney as a "fag," accusation of sexual and criminal misconduct by a judge, and other photos or youtube videos labeling his targets racist.

Of course, none of his disdain or threats have anything to do with his alleged claims. Fredin seems to be incapable of restraint, littering his pleadings with extraneous jabs and outrageous language. If this is not the hallmark of an individual whose litigation is vexatious and harassing, it is hard to imagine what is.

### F. Fredin's social media postings demonstrate the bad faith purpose of his litigation.

Fredin has repeatedly written about his litigation on social media in ways that demonstrate his bad faith:

- Fredin tweeted in May of 2018: "Their pro bono representation is next. Dropping some legal bombs on them…" within minutes of referring to Defendant Middlecamp as "autistic" and writing of Defendant Schaefer as someone "no one would drill." (Breyer Decl., Exhibit 11.)

- In September 2019, Fredin tweeted, "Dismiss one of my lawsuits and two shall take its place." (Breyer Decl., Exhibit 12.)

- At some point in 2019, Fredin edited his twitter profile to read, "I take down lawyers for a living." (*Id.*)

- In January 2020, Fredin tweeted repeatedly about his lawsuits, threatening to "destroy the Frankish empire" with "lawsuitboats," and boasting: "I know all of your legal tricks and doctrines. I also have perfect timing to employ these against you. You will suffer as I have suffered," and "I am always one step ahead of them. It is almost like I have a legal sixth (6) sense or some divine intervention. :)" *(Id.)*

- On January 21, 2020, Fredin tweeted, "I don't care if I get sanctioned." (*Id.*)

Fredin has also repeatedly uploaded his most inflammatory pleadings to hosting platforms in an effort to ensure others can access them without having a Pacer account, thereby maximizing his audience while also ensuring only his portion of the story reaches public eyes:

- The five websites Fredin made in late 2017 all contained links to Fredin's pleadings—including Middlecamp's employment details and home address—apparently in hopes that his allegations could reach wider public audiences rather than be behind the ECF paywall. (*See* Breyer Decl., Exhibit 3 (each containing hyperlinks to hosted pleadings).)

20

- In April 2018, Fredin uploaded a filing from one of his federal suits to scribd.com, a third-party hosting site with no paywall. Shortly thereafter, his friend Anthony Zappin authored a tweet containing a link to the upload, and directly tagged Defendant Middlecamp in his tweet, writing "Because the public shouldn't have to pay 10 cents per page to read about illegal conduct of "feminist" Lindsey Middlecamp." Within minutes, Fredin himself had tweeted, "In the words of Wheeler Walker Junior fuck you, bitch." (Breyer Decl., Exhibit 13).

- In May 2018, Fredin uploaded a different federal filing to scribd.com. Fredin then solicited attention to that filing by tagging a number of users on Twitter to his post, including Donald Trump, media personality Tucker Carlson, and most significantly, an account associated with Defendant Miller's employment (@934airliftwing). (Breyer Decl., Exhibit 11 at 5.) Fredin did not do so to vindicate legal interests; instead, he did so in hopes that his litigation claims may gain public attention and at the least, attention by Miller's employer.

- When Fredin was forced by the Ramsey County district court to remove the websites linking his pleadings, his friend, Anthony Zappin, subsequently uploaded additional federal court documents to a public hosting site scribd.com and, as recently as November 2019, did so again on a second hosing website called idoc.pub. (Breyer Decl., Exhibit 14.)

The foregoing pattern demonstrates that Fredin hopes to use lengthy, inflammatory pleadings as stand-ins for personal blog posts. He prefers court filings to having his own personal blog because pleadings appear official and therefore legitimate. Indeed: who would put something in a court filing if it were not true? Tellingly, Fredin does not separately publish or upload orders that are adverse to him, dismissals, rejected appeals, or pleadings by the Defendants. Instead, he cherry-picks his own rants with the legitimacy of a court caption on top in hopes that, even if his claims fail on the merits, he can do damage to Defendants' reputations.

**G. Fredin's motion and discovery practice demonstrate bad faith.**

Across his lawsuits, Fredin has brought multiple rounds of unsuccessful motions to disqualify counsel, motions for sanctions, and other miscellaneous requests which have been consistently denied. Additionally, he has demonstrated a pattern of fabricating evidence or otherwise misleading the courts. Some of his dishonesty is baseless and harmless (for instance, his unfounded allegation that Middlecamp called the police on Fredin's family at the Mall of America, when no such thing occurred.) Others are more malicious:

- He has repeatedly cropped and combined unrelated tweets and included them in Court filings to assert that Middlecamp is anti-semitic. He has persisted in doing so even after Middlecamp testified in an evidentiary hearing that the image Fredin created combines two completely unrelated tweets which have been pasted together to mislead others. (*See,* e.g., Appellants Brief, 19-1726 (8th Cir.) at 8 (containing Fredin's misleading doctored image.))

- Fredin has claimed to have video or audio recordings of interactions when no such evidence exists. (*See, e.g.,* 18-CV-510, Doc. 115 at 15, 48)

- Fredin has claimed in his pleadings to have no idea who the alleged rape victim (J.K.) is, when in fact he expressly requested communications between Middlecamp and J.K. in discovery he served in 2017. (*See* 17-3058, Docs. 204-1, 2014-2).

- Fredin has, at various turns, denied, claimed to be unable to remember, and asserted a fifth amendment right to avoid questions about his own conduct despite being under oath. (*See* Breyer Decl., Exhibits. 4, 5, and 6.)

- Fredin brought a specious motion for sanctions against Defendants alleging they had misused confidential information, without any evidence of such conduct by the Defendants. He was later sanctioned. (*See* 17-3058, Docs. 134, 144.)

In the pending lawsuits involving Defendants, Fredin refused to cooperate with discovery and to this day has failed to appropriately search his devices and produce relevant

evidence. For example, his brother testified under oath in state court that he had been witness to extensive emails and other communications between Fredin and a third party, Anthony Zappin, regarding Fredin's grievances against the Defendants, but Fredin has not produced a single communication with Zappin and refused to answer any questions about Zappin during his deposition. (*Compare* Breyer Decl., Exhibit 16 (Ryan Fredin testifying about communications between Fredin and Zappin) and (17-3048, Doc 114-1 at 23-25) (excerpted deposition testimony in which Fredin refused to answer questions about Zappin.))

In short, Fredin's discovery tactics are knowingly evasive and dishonest. He is not afraid to withhold evidence, fabricate evidence, or even lie to create confusion and avoid dismissal of his claims. These tactics are unacceptable in any venue, but particularly in federal court.

## II.   THE COURT SHOULD ENTER AN ORDER REQUIRING PLAINTIFF TO OBTAIN PRIOR COURT APPROVAL BEFORE COMMENCING SUIT

When a litigant engages in a pattern of filing frivolous claims, a court may enter an order requiring a litigant to obtain court approval before filing future lawsuits. *Sassower v. Carlson*, 930 F.2d 583, 584 (8th Cir. 1991). A restriction is particularly appropriate where a defendant has had a full opportunity to adjudicate his claims such that further suits would "uselessly consume" court resources. *Ruderer v. United States*, 462 F.2d 897, 899 (8th Cir. 1972).

Defendants request that the Court enter an order with the following provisions:

- Enjoining Fredin from filing any civil action naming as parties or otherwise asserting allegations against the Defendants without first obtaining leave of court;

- Enjoining Fredin from filing any civil action against judicial officers or clerks regarding their connection to suits involving the Defendants;

- Requiring Fredin, in seeking leave to file any action as set forth above, to certify that the claim or claims he wishes to present are not frivolous, malicious, or brought in bad faith; and

- Requiring Fredin, in seeking leave to file any action, to verify his pleadings under penalty of perjury.

## <u>CONCLUSION</u>

For the reasons outlined above, Defendant respectfully asks that the Court declare Fredin a vexatious litigant and issue an order restricting his ability to commence additional lawsuits.

Date:  October 12, 2020

**KUTAK ROCK LLP**

By: */s/ K. Jon Breyer*
K. Jon Breyer (302259)
60 South Sixth Street
Suite 3400
Minneapolis, Minnesota 55402
Telephone:   (612) 334-5057
Jon.breyer@kutakrock.com

*Pro Bono Counsel to Defendants Lindsey Middlecamp, Grace Miller, and Catherine Schaefer*

4848-7270-5486.1