## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brock Fredin,

                Plaintiff,          Court File No. 17-cv-03058 (SRN/HB)

v.

Lindsey Middlecamp,

                Defendant.

Brock Fredin,

                Plaintiff,          Case File No. 18-cv-466 (SRN/HB)

v.

Grace Elizabeth Miller, and
Catherine Marie Schaefer,

                Defendants.

Defendants Lindsey Middlecamp, Grace Miller, and Catherine Schaefer, by and through their undersigned Counsel, hereby submit this memorandum in support of their motion for a temporary restraining order.

### INTRODUCTION

Plaintiff Fredin has used these proceedings to retaliate against his victims, Defendants, their attorneys, the judicial officers overseeing the proceedings, and even the Court's clerks. Fredin has registered and created over twenty-two (22) individual websites that disparage and attack the individuals listed below. Each site contains photographs of

the individuals, professional and personal details, and a variety of baseless, inflammatory attacks. *See* Breyer Decl., Exhibit 7.

1. KJonBreyer.com, registered on September 18, 2020. K. Jon Breyer is the attorney to Defendants Middlecamp, Miller, and Schaefer.

2. JudgePatrickDiamond.com, registered on July 22, 2020. Judge Diamond is a Ramsey County District Court Judge who presided over HRO proceedings involving Fredin and Defendants.

3. KeithSellen.com, registered on July 22, 2020. Fredin identifies Sellen as the director of the Wisconsin Office of Lawyer Regulation, and appears to target him because the OLR dismissed Fredin's professional complaints against Defendants' attorney, K. Jon Breyer.

4. SusanHumiston.com, registered on July 22, 2020. Fredin identifies Humiston as the director of the Minnesota Office of Lawyers Professional Responsibility, and appears to target her because the OLPR dismissed Fredin's professional complaints against Defendant Middlecamp and Defendants' attorney, K. Jon Breyer.

5. JonathanZeisser.com, registered on July 22, 2020. Fredin identifies Zeisser as an investigator with the Wisconsin Office of Lawyer Regulation, and appears to target him because the OLR dismissed Fredin's professional complaints against Defendants' attorney, K. Jon Breyer.

6. ThomasSipkins.com, registered on July 23, 2020. Fredin identifies Sipkins as the Executive Secretary of the Minnesota Judicial Standards Board, and appears to target him for failing to discipline Judge Sophia Vuelo.

7. AttorneyPeterMayer.com, registered on July 25, 2020. Peter Mayer is an attorney who represented Defendant Schaefer in her HRO proceedings. Metadata for the site reveals that Fredin titled the photo of Peter Mayer with the filename "fag2.png."

8. YamyVang.com, registered on July 27, 2020. Vang is a prosecutor in the St. Paul City Attorney's Office who was involved in criminal prosecution involving Fredin's conduct against Defendants.

9. ClerkAnnMarieOneill.com, registered on August 4, 2020. Fredin identifies O'Neill as the clerk of the Minnesota Appellate Courts, and appears to target her for the Court of Appeal's adverse decisions against Fredin in

4816-5286-0878.1

matters involving the Defendants.

10. JudgeJeffreyBryan.com, registered on August 4, 2020. Fredin identifies Judge Bryan as a Minnesota Court of Appeals Judge, and appears to target her for the Court of Appeal's adverse decisions against Fredin in matters involving the Defendants.

11. ElizabethClysdale.com, registered on August 4, 2020. Judge Clysdale is a referee for Ramsey County District Court and presided over Defendant Middlecamp's 2017 HRO proceedings.

12. JudgeKevinGRoss.com, registered on August 4, 2020. Judge Ross authored a Minnesota Court of Appeals decision upholding Miller's HRO against Fredin.

13. LyndseyOlson.com, registered on August 4, 2020. Olson is a prosecutor in the St. Paul City Attorney's Office who was involved in criminal prosecution involving Fredin's conduct against Defendants.

14. JudgeDiamond.com, registered on August 9, 2020. This is a second site created by Fredin to attack Judge Diamond.

15. JudgeVuelo.com, registered on August 9, 2020. Judge Vuelo presided over the criminal case against Fredin involving his stalking of Defendant Miller.

16. JusticeMatthewWCooper.com, registered on August 16, 2020. Justice Cooper has no connection to Fredin; rather, he is connected to legal proceedings involving Fredin's friend Anthony Zappin.

17. CareyBollinger.com, registered on August 31, 2020. Bollinger served on the jury that convicted Fredin of stalking Defendant Miller. Fredin attacks Bollinger's appearance, professional qualifications, and integrity.

18. IreneZon.com, registered on August 31, 2020. Fredin identifies Zon as a Ramsey county Court Reporter, and appears to target her for her role in proceedings involving Fredin and Defendants.

19. NicoleSZemborski.com, registered on September 14, 2020. Fredin identifies Zemborski as a former clerk to Judge Diamond.

3

20. NicoleCornale.com, registered on September 14, 2020. This appears to be a duplicate site to NicoleSZemborski.com, suggesting Fredin investigated alternative names to attack Judge Diamond's former clerk.

21. AttorneyJacquelinePerez.com, registered on September 15, 2020. Perez appears to have been targeted based on her experience as a clerk for Judge Diamond

22. JudgePatrickCDiamond.com, registered on September 18, 2020. This is the third website Fredin made attacking Judge Diamond under an additional URL.

Each of these individuals are connected to the current proceedings before this Court involving Fredin and Defendants Middlecamp, Miller, and Schaefer.  Fredin has launched these attacks to threaten Defendants, their counsel, and this Court. The message is clear, if Fredin believes you are adverse to him in any manner, he tarnishes you with an online smear campaign.

Fredin has also employed the use of hate-filled websites and youtube videos to threaten Defendants and their *pro bono* counsel if they do not settle on his terms:

Let's see if you're telling the truth and if you're negotiating in good faith.  The website and video (which only contains truthful information) has been removed.  I expect <u>reasonable</u> terms by end of the working day (5PM CST).

*See* Breyer Decl., Exhibit 17, October 8, 2020 email from Fredin.  Fredin reposted the online slurs as soon as he did not get the settlement he desired.

Fredin's conduct is abhorrent and threatens the very justice system this  Court seeks to protect. He must be ordered to remove all of the offensive websites, youtube videos, and any other online media related to the persons identified above or who are otherwise involved in these proceedings, including your Honor, your clerks,

4816-5286-0878.1

court reporters or anyone else associated with Fredin's litany of lawsuits. Fredin should also be restrained from creating similar content going forward.

**ARGUMENT**

### I.      Temporary Restraining Order

Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates"); *see also De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990)("[T]here is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances."). "[A] district court has the inherent power to issue an injunction against litigants who harass their opponents." *Yates v. Belli Deli*, No. C 07-01405 WHA, 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007) (citing *De Long*, 912 F.2d at 1147); *see also Lewis v. S. S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976) ("Injunctive relief, where warranted, can be a useful tool to aid a court in controlling the conduct of litigants."); *see Myart v. Taylor*, No. SA 5:16-CV-736-DAE, 2016 WL 5376227, at *4 (W.D. Tex. Sept. 26, 2016) (concluding that the court has jurisdiction to prohibit a party's threatening and harassing conduct towards the other parties); *Test Masters Educational Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) (upholding a portion of the district court's injunction prohibiting Defendant "from threatening or

5

harassing [Plaintiff], its employees, its staff, [Plaintiff's] counsel, counsel's employees, or counsel's staff.").

Additionally, Federal Rule of Civil Procedure 65 authorizes a district court to grant injunctive relief in the form of a temporary restraining order. When determining whether a temporary restraining order is warranted, a district court considers four factors: (1) the probability that the movant will succeed on the merits, (2) the threat of irreparable harm to the movant, (3) the balance between this harm and the injury that an injunction would inflict on other parties, and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). The burden to establish that injunctive relief should be granted rests with the movant. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

### A.  Likelihood of Success on the Merits

In this context, the "merits" refers not to underlying claims, but rather to Defendants' ability to establish harassment that justifies injunctive relief. When determining whether to enjoin a litigant's harassing conduct, federal district courts may look to state substantive law on harassment, but apply the federal procedural rules under Federal Rule of Civil Procedure 65.

Therefore, the meaning of "harassment" is central to the requested relief for two reasons. The first is that only "harassing" speech is outside the constitutional ban on prior restraints and, therefore, is subject to being enjoined. The second reason is that, pursuant to Rule 65(d)(1)(C), any injunction must provide Fredin with sufficient notice of what he is forbidden to do. Minn. Stat. § 609.748, subd. 5(b)(3) defines harassment, in relevant part, as "repeated incidents of intrusive or unwanted acts, words, or gestures that have a

6

substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." Minn. Stat. § 609.748, subd. 1 (a)(1)(2018).

Fredin has maintained that his harassment is protected free speech. It is not. *See Middlecamp v. Fredin* Order Granting Harassment Restraining Order, Breyer Decl. Ex. 19. The right to free speech under the U.S. Constitution and the Minnesota State Constitution is not absolute, and certain categories of speech are unprotected, including harassment. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 383 (1992). "The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed." 505 U.S. at 382 (internal citations omitted). However, "[c]ourts have made a distinction between communication and harassment." *Singh*, 428 F.3d at 580 (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 503 (1949)). "The difference is one between free speech and conduct that may be proscribed." *Id.* (citing *R.A.V.*, 505 U.S. at 389). Accordingly, even under the First Amendment, "courts do have the power to enjoin harassing communication." *Singh*, 428 F.3d at 580; *see also Lewis*, 534 F.2d at 1122 ("There is no reason the current harassing conduct of a party in pursuit of a settlement may not be enjoined.").

In *Dunham v. Roer*, the Minnesota Court of Appeals specifically held that Minnesota's harassment statute does not violate the First Amendment because it restricts three categories of unprotected speech: (1) "fighting words," which are "likely to cause the average addressee to fight or protect one's own safety, security, or privacy"; (2) "true threats," which evidence "an intent to commit an act of unlawful violence against one's safety, security or privacy"; and (3) "speech or conduct that is intended to have a substantial

7

adverse effect, i.e., is in violation of one's right to privacy." 708 N.W.2d 552, 565-66 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006).

Accordingly, this Court has authority to restrict speech or conduct by Fredin so long as it finds there are reasonable grounds to conclude that Fredin has engaged in actions that were intended to have a substantial adverse effect on the safety, security, or privacy of others. *See, e.g., United States v. Osinger*, 753 F.3d 939, 946 (9th Cir. 2014)(rejecting the defendant's argument that he engaged in protected speech because the defendant "engaged in a course of conduct 'with the intent ... to harass, or intimidate, or cause substantial emotional distress to' [the victim]" by sending threatening text messages, designing a false Facebook page, and sending emails to the victim's co-workers containing nude photographs of the victim).

### B. Threat of Irreparable Harm

To obtain a temporary restraining order, a movant also must establish the threat of irreparable harm. *See Dataphase*, 640 F.2d at 114. To do so, "a party must show that the harm is certain and ... of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). Because damage to one's reputation is a harm that cannot be remedied by a later award of money damages, the threat of reputational harm may form the basis for preliminary injunctive relief. *Kroupa v. Nielsen*, 731 F.3d 813, 820 (8th Cir. 2013) (citing *United Healthcare Ins. Co. v. AdvancePCS,* 316 F.3d 737, 741 (8th Cir.2002)). Irreparable harm further exists by virtue of the constant intimidation and threat of an existing or newly developed online smearing campaign. Without a temporary restraining order, those associated with these cases will

suffer irreparable harm. Accordingly, this factor weighs heavily in favor of granting Defendants motion for a temporary restraining order.

### C. Balance of the Equities

The Court also weighs the threat of irreparable harm to the movant against any injury the restraining order would inflict on other parties. *See Dataphase*, 640 F.2d at 114. Here, there is no identifiable injury that Fredin may suffer if he is ordered to cease his harassment. Maintaining the status quo, in which Fredin is prohibited from causing irreparable harm, will not affect his interests in any material way. Therefore, the balance of the equities weighs in favor of granting the motion for a temporary restraining order.

### D. Public Interest

Finally, when deciding whether a temporary restraining order should issue, the Court considers the interests of the public. *See Dataphase*, 640 F.2d at 114. There can be no doubt that that is a strong public interest in restraining individuals such a Fredin who employ threats, intimidation, and pure harassment in order to thwart the justice system and disrupt the fair and civil proceedings of this Court.

On balance, the *Dataphase* factors favor granting Defendants' motion for a temporary restraining order.

<u>C<small>ONCLUSION</small></u>

For the reasons outlined above, Defendant respectfully requests that the Court issue

a Temporary Restraining Order:

1)     Ordering Fredin to permanently remove the following websites immediately:

KJonBreyer.com

www.youtube.com/watch?v=pWPAHCN3iZQ

JudgePatrickDiamond.com

KeithSellen.com

SusanHumiston.com,

JonathanZeisser.com

ThomasSipkins.com

AttorneyPeterMayer.com

YamyVang.com

ClerkAnnMarieOneill.com

JudgeJeffreyBryan.com

ElizabethClysdale.com

JudgeKevinGRoss.com

LyndseyOlson.com

JudgeDiamond.com

JudgeVuelo.com

JusticeMatthewWCooper.com

CareyBollinger.com

IreneZon.com

NicoleSZemborski.com,

NicoleCornale.com,

AttorneyJacquelinePerez.com,

JudgePatrickCDiamond.com

4816-5286-0878.1

2.      Restraining Fredin from creating any new websites, youtube videos or any other online content that is harassing to Defendants, Defendants' counsel, the above individuals, their family members, this Court or to Court staff or anyone else that is associated with any lawsuit involving Fredin.

3.      Referring this matter to the US Attorney's office for investigation and prosecution.

Date:  October 12, 2020                     **KUTAK ROCK LLP**

                                            By: */s/ K. Jon Breyer*
                                            K. Jon Breyer (302259)
                                            60 South Sixth Street
                                            Suite 3400
                                            Minneapolis, Minnesota 55402
                                            Telephone:   (612) 334-5057
                                            Jon.breyer@kutakrock.com

                                            ***Pro Bono Counsel to Defendants Lindsey Middlecamp, Grace Elizabeth Miller and Catherine Marie Schaefer***

11