# EXHIBIT 6

<u>Volume II</u>

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF RAMSEY                              SECOND JUDICIAL DISTRICT
_____

Lindsey Middlecamp,

       Petitioner,   Appellate Court File No. A20-0539

   vs.            District Court File No. 62-HR-CV-19-621

Brock William Fredin,                              TRANSCRIPT

       Respondent.

_____

    The above-entitled proceeding came before the Honorable James Street, Referee of District Court, on the 2nd day of March, 2020, in the Ramsey County Family and Juvenile Justice Center, City of St. Paul, County of Ramsey, State of Minnesota.

    APPEARANCES:

   Karl Johan Breyer, Esq., appeared for and with Petitioner.

    Respondent appeared pro se.

    Kristine Otterness, Official Court Reporter.

1       THE COURT:  All right.  So do you rest?
2       MR. FREDIN:  I have several more
3   questions, but I'm out of time.
4       THE COURT:  All right.  I take that as
5   you voluntarily resting.
6       All right.  Mr. Breyer, do you have any
7   re -- or, rebuttal?
8       MR. BREYER:  Well, if I understood,
9   Mr. Fredin is not going to testify today.
10      THE COURT:  Correct.
11      MR. BREYER:  If that's the case, I may
12  have an exhibit or two I'd like to get in through
13  Ms. Middlecamp, which would be brief, but if we
14  could take a 5 minute break for me to verify that?
15      THE COURT:  Let's take -- let's take our
16  mid-morning -- mid-afternoon break.  So we'll come
17  back in 20 minutes.  So 10 minutes to 4.
18      MR. BREYER:  Thank you.
19      **(WHEREUPON, court is in recess.)**
20      THE COURT:  All right.  We're back on the
21  record.
22      Mr. Breyer, did you have any rebuttal
23  testimony?
24      MR. BREYER:  Your Honor, we would choose
25  to call Mr. Fredin to the stand.

```
 1                  THE COURT:  Okay.  Mr. Fredin.
 2                  MR. FREDIN:  No, Your Honor.  I'm not
 3      going to testify.
 4                  THE COURT:  Well, that's not really a
 5      choice you have.  If -- you can go up there, and if
 6      Mr. Breyer asks a question you decline to testify,
 7      then you should be aware that the Court can make an
 8      adverse inference based on what you decline to
 9      answer.  But you do need to be subjected to the
10      questions.
11                  All right?  So, let's have you come up
12      here.
13                  MR. FREDIN:  Your Honor, can I ask just
14      for the record your basis for forcing me to
15      testify?  Because I'm, you know, in a civil matter
16      like this I have a right not to testify.
17                  THE COURT:  Well, actually, in a criminal
18      matter you have a right not to testify against
19      yourself.  That's the Fifth Amendment that you're
20      probably aware.
21                  MR. FREDIN:  Your Honor, I'm not -- I'm
22      not asserting the Fifth Amendment here.
23                  THE COURT:  Right.  Okay.  So I assume
24      this is in the form of rebuttal, Mr. Breyer,
25      because you did rest, so?
```

```
1            MR. BREYER:  Yes, Your Honor.
2            THE COURT:  All right.  So Ms. Middlecamp
3    has the right to ask questions limited to the
4    issues that may have come up during your
5    presentation of the case that -- that was new, and
6    so that -- or, were new, and they have a right to
7    present evidence on that.
8            So why don't you come up here and then
9    we'll see what they do, but it should be relatively
10   short, I would imagine.
11           MR. BREYER:  I promise that, Your Honor.
12           THE COURT:  And I remind you, Mr. Fredin,
13   you're under oath still.  Okay.
14           Go ahead, Mr. Breyer.
15           MR. BREYER:  Thank you, Your Honor.
```

**REBUTTAL DIRECT TESTIMONY**

**OF BROCK FREDIN**

```
18  BY MR. BREYER:
19  Q.  Mr. Fredin, you blame Ms. Middlecamp for a lot of
20      things that have happened in your life, including
21      the loss of your job; is that correct?
22  A.  I have a right not to testify.  I object to any
23      questions.
24  Q.  You continue to blame her for your unemployment;
25      correct?
```

```
1    A.   Again, I am aware that there's going to be an
2         adverse inference.  I unequivocally object to any
3         testimony in this matter.
4    Q.   You have blamed her in pleadings about your --
5         concerning your mother's death; is that true?
6    A.   Again, this is -- I understand that there's going to
7         be an adverse inference made.  I have a right not to
8         testify.
9    Q.   You blame her for your incarceration; correct?
10   A.   These questions are insulting, and, again, I am
11        asserting my right not to testify.
12             THE COURT:  Well, Mr. Breyer, what --
13        this isn't exactly information that was not
14        anticipated.  So why -- what -- what is the purpose
15        of this line of questioning?
16             MR. BREYER:  The purpose is to get at
17        Mr. Fredin's intent.
18   BY MR. BREYER:
19   Q.   Your intent, Mr. Fredin, in publishing the
20        LindseyMiddlecamp.com was to inflict harm on
21        Ms. Middlecamp personally and professionally; true?
22   A.   I'm not answering your question.
23   Q.   You developed LindseyCamp -- LindseyMiddlecamp.com;
24        correct?
25   A.   I'm not answering the question.
```

1  Q.  You did so perhaps with the assistance of an
2      individual by the name of Anthony Zappin?
3  A.  I am not answering the question.
4  Q.  You've got Exhibit 12 in front of you there, Mr.
5      Fredin.  I'd ask you to pick it up and turn to page
6      65.
7              THE COURT:  Just a second.
8  BY MR. BREYER:
9  Q.  If you turn to page 65, Mr. Fredin, there's a short
10     paragraph.  In the sentence that begins, "On April
11     10th -- or, April 10th" --
12             THE COURT:  Hold on.  He's trying to get
13     it here.
14             MR. BREYER:  Oh, sorry.  Page 65.
15             THE COURT:  Go ahead.
16 BY MR. BREYER:
17 Q.  The sentence reads, "On April 10th, 2017 a Honeypot
18     website was set up with the domain
19     www.LindseyMiddlecamp.com.  Within days of the city
20     attorney Middlecamp learning of this website IP logs
21     confirmed that defendant Schaefer was viewing the
22     website from State College Pennsylvania."  Do you
23     see that?
24 A.  Again, I'm not answering your question.  This is
25     outrageous that I'm being forced to testify.

1  Q.  This is your allegation in a federal complaint that
2      you filed in 18-CV-510; correct?
3  A.  I'm not answering your question, Mr. Breyer.
4  Q.  These are your statements?
5  A.  Again, I'm not answering questions, Mr. Breyer.
6  Q.  How would you not have some control over the
7      LindseyMiddlecamp.com site yet pull IP logs that
8      confirmed defendant Schaefer's viewing of that
9      website?
10 A.  This has absolutely no relevance to the adverse
11     inference that's going to be made because I'm not
12     answering questions.  Again, this is absolutely
13     outrageous that I'm being forced to testify.
14 Q.  If you turn to the next page, page 66 and 67, you go
15     on to allege that you pulled Google analytics to
16     make these determinations; correct?
17 A.  I'm not answering your question.
18 Q.  You did so because you had control over the
19     LindseyMiddlecamp.com website; true?
20 A.  Your attempts to taint the record with false
21     statements still has no basis on the adverse
22     inference that's going to be made.  I'm not
23     answering the question.
24          MR. BREYER:  Your Honor, may I approach
25     with the next exhibit in whatever order we left off

```
1            on?  I'm sorry.  I don't have that number in front
2            of me.
3                    THE COURT:  That would be Exhibit 19.
4                    MR. BREYER:  May I approach, Your Honor?
5                    THE COURT:  You may.
6      BY MR. BREYER:
7      Q.    Mr. Fredin, I've handed you what's been marked as
8            Exhibit 19, which I'll represent to you is a series
9            of tweets and other postings by you.  Do you see
10           that in front of you there?
11     A.    I'm not answering your question.
12     Q.    Are you the author of these tweets?
13     A.    I'm not answering the question.
14     Q.    I've tabbed the document for your ease.  If you go
15           to the first tab you'll see that there's a February
16           22nd date associated with the tweet in which you
17           reply, "Anthony Zappin is like the coronavirus.  He
18           cannot be contained.  No one can bring him down."
19           Who is Anthony Zappin?
20     A.    I'm not answering your question.
21     Q.    If you turn to the next tabbed page, this is a
22           February 8 entry by you in response to one by
23           Mr. Zappin.  And your response is,
24           "RobertWallack.com being developed."  Do you see
25           that?
```

1   A.   If you want to file a restraining order against any
2        individual whatsoever, that's your right and I think
3        you should do that.  I'm not answering the question.
4   Q.   Mr. Fredin, you created a website called
5        RobertWallock.com in exchange for Mr. Zappin's help
6        in creating LindseyMiddlecamp.com; correct?
7   A.   I'm not answering the question.
8   Q.   Mr. Fredin, what are you writing?
9   A.   I'm not answering your question.
10  Q.   May we see your writing?
11            THE COURT:  Why is that relevant,
12       Mr. Breyer?
13            MR. BREYER:  I'm understanding that he's
14       writing during the questioning, Your Honor.  I'd
15       like his undivided attention.
16            THE COURT:  Well, he can write notes.
17            MR. BREYER:  Your Honor, may I approach
18       with Exhibit 20?
19            THE COURT:  You may.
20            MR. BREYER:  Thank you, Your Honor.
21  BY MR. BREYER:
22  Q.   Mr. Fredin, Exhibit 20 has been marked and placed in
23       front of you.  That's a tweet from your Brock Fredin
24       account; correct?
25  A.   I'm not sure what you're getting at because I'm not

198

1  answering any of your questions.  If you feel as if
2  you need to file a restraining order against any
3  individual whatsoever, I don't think public policy
4  maintains that you should bring up those allegations
5  in a collateral --
6  Q.  Mr. Fredin, the question is, is this your account
7  Brock Fredin?
8  A.  I'm not answering your question.
9  Q.  The tweet says, "I want to congratulate my best
10  friend at Anthony Zappin."  Mr. Zappin is your best
11  friend; correct?
12  A.  Again, if you want to file a restraining order
13  against any individual whatsoever, that's within
14  your right and you should do that, but this petition
15  is about a restraining order from Lindsey Middlecamp
16  asserted against me, and I am again respectfully not
17  answering your question.
18  Q.  Mr. Fredin, you conspired with Mr. Zappin to create
19  a number of websites including the Lindsey
20  Middlecamp website and you supplied the content for
21  Mr. Zappin to post on that website; correct?
22  A.  I'm not answering your question.
23  Q.  And the content was intended to harass and harm
24  Ms. Middlecamp personally and in her professional
25  capacity; true?

1  A.  I am not answering your question.
2  Q.  Likewise, Mr. Fredin, you have moved harassment from
3      the online platform to the courts by filing no less
4      than five separate lawsuits against Ms. Middlecamp
5      personally; true?
6  A.  I'm respectfully not answering the question.
7              THE COURT:  This goes beyond rebuttal.
8      We knew about the lawsuits before.
9              MR. BREYER:  Okay.  Well, then let me ask
10     you this, Mr. Fredin.
11             This last exhibit, Your Honor.  May I
12     approach again?
13             THE COURT:  You may.
14 BY MR. BREYER:
15 Q.  Mr. Fredin, Exhibit 21 has been placed in front of
16     you.  And, again, it's from your Twitter account;
17     correct?
18 A.  I have a right not to testify.  This is outrageous.
19 Q.  In your tweet you proclaim, "Dismiss one of my
20     lawsuits and two shall take its place."  Do you see
21     that?
22 A.  This is outrageous that I'm being forced to testify.
23     I respectfully am not answering your question.
24 Q.  And you're talking about lawsuits that you brought
25     against Ms. Middlecamp in this tweet; correct?

1    A.    Again, it is outrageous that I'm being forced to
2          testify.  I respectfully decline to answer your
3          question.
4    Q.    And, in fact, when your lawsuits get dismissed you
5          bring another one; true?
6    A.    I -- again, this is outrageous that I'm being forced
7          to testify.  I -- I respectfully decline to answer
8          your question.
9    Q.    Mr. Fredin, you continued right up through December
10         and January of -- December of 2019 and again in
11         January 2020 to continue to harass Ms. Middlecamp
12         through court filings; correct?
13   A.    It's outrageous that I'm being forced to testify.  I
14         respectfully decline to answer your question.
15   Q.    You brought sanction motions in those Federal Court
16         cases; correct?
17   A.    Again, it's outrageous that I'm being forced to
18         testify.  I respectfully decline to answer your
19         question, Mr. Breyer.
20   Q.    You called Ms. Middlecamp a nazi and a feminist in
21         those pleadings; true?
22   A.    I'm not sure how this isn't already precluded based
23         on this Court's issue preclusion rulings, so I
24         object to that question.
25   Q.    You made those statements, did you not?

```
1    A.   I'm not answering the question.
2              THE COURT:  So the objection -- the
3         question was objected to.  I'm going to overrule
4         the objection because the question was about
5         statements made in pleadings January and February
6         2020, which would have been after we had commenced
7         this evidentiary hearing in December.  So
8         overruled.
9    BY MR. BREYER:
10   Q.   You've alleged that Ms. Middlecamp dabbles in
11        revenge porn, also pled in the lawsuit; true?
12   A.   Again, I'm respectfully declining to answer your
13        question.
14   Q.   Mr. Fredin, the purpose of the federal lawsuits and
15        the many, many pages that you filed in those cases
16        was to shame Ms. Middlecamp; correct?
17   A.   Again, from an argument perspective it's outrageous
18        that I'm being forced to testify, and, again, I
19        respectfully decline to answer your question.
20   Q.   And you've taken those same pleadings, affidavits,
21        and declarations in which you've said hideous things
22        towards Ms. Middlecamp and posted them online; true?
23   A.   I respectfully decline to answer your question, Mr.
24        Breyer.
25             MR. BREYER:  Your Honor, I don't have any
```

1       further questions.
2              THE COURT:  All right.  You're excused,
3       Mr. Fredin.
4              THE COURT:  Anything else, Mr. Breyer?
5              MR. BREYER:  No, Your Honor.
6              THE COURT:  All right.  Anything else,
7       Mr. Fredin?
8              MR. FREDIN:  Just a closing argument.
9       You mentioned the First Amendment preparation, so I
10      just wanted to touch whether or not we're going to
11      have a closing argument.
12             THE COURT:  All right.  Go ahead.
13             MR. FREDIN:  Okay.  Your Honor, first of
14      all, this is really insane that someone can file a
15      restraining order, not only to silence, but to
16      harass someone.  Ms. Middlecamp has destroyed my
17      professional livelihood.  I was out of work for
18      three years.  She's tampered with witnesses.  She's
19      admitted to now providing false information to
20      fabricate evidence.  She's tampering with pretrial
21      witnesses.  This is very serious stuff and it's
22      insane that she's able to get away with it because
23      she's a licensed attorney and she's a prosecutor.
24      And no other person would be be able to get away
25      with this stuff.  And I understand that if someone