# EXHIBIT 16

CROSS-EXAMINATION: RYAN FREDIN

1     with that idea?
2 A.  I am familiar with that.
3 Q.  And, in fact, that's what your brother has done?
4 A.  Okay. Yes.
5         RESPONDENT FREDIN: Objection; relevance.
6         THE COURT: Overruled.
7         RESPONDENT FREDIN: Grounds, Your Honor?
8         THE COURT: I believe it's relevant.
9 BY MR. MAYER:
10 Q.  And you testified earlier that you weren't sure of
11     when in 2017 your brother moved to Wisconsin, but you
12     are you sure it was the year 2017; is that right?
13 A.  That is correct.
14 Q.  And you thought that it was, maybe, when it was
15     getting warmer? Is that what you said?
16 A.  I believe so, yes.
17 Q.  But, you're not sure 100-percent, one way or another?
18 A.  I'm not sure of the exact date. It was 2017 for
19     sure.
20 Q.  And did Mr. Fredin ever tell you about creating any
21     websites about Ms. Schaefer?
22 A.  Yes, he did.
23 Q.  And what websites were those?
24 A.  I do not know. I have not viewed them, specifically.
25 Q.  Did he tell you he created any websites about

1  Ms. Schaefer?
2  A. Yes.
3  Q. And did he tell you that he understood that he was
4     not supposed to be contacting Ms. Schaefer under the
5     terms of the harassment restraining order?
6  A. Yes. He never, specifically, said that. He was --
7     his creation of the websites was under his First
8     Amendment right to speech.
9  Q. And well, I understand that's your conclusion. But,
10    are you aware that a number judges and courts have
11    evaluated this and have said that there are some
12    exceptions? Well, I will withdraw that.
13 A. I believe the First Amendment is inalienable right of
14    any American citizen, correct?
15 Q. That's right. But, it -- Well, I don't want to get
16    into debating the finer points of Constitutional law
17    but there are, of course, exceptions. And one of the
18    exceptions is -- as Mr. Fredin may have told you, um,
19    has been a pretty big focus of his life -- and, well,
20    withdrawn.
21    Do you think -- Did Mr. Fredin tell you every single
22    time that he entered or exited Ramsey County in 2016,
23    2017, and 2018?
24 A. No.
25 Q. And so, if he testified earlier that there were times

REDIRECT-EXAMINATION:  RYAN FREDIN

```
 1       when he was in Ramsey County, other than just for
 2       court appearances, would you believe that to be true
 3       or untrue?  Would you know that was true or untrue,
 4       rather?
 5  A.   That would probably be true.  I mean, we have
 6       brothers that live in Ramsey County.
 7  Q.   Did Mr. Fredin ever tell you where he was when he
 8       created these websites that you discussed earlier?
 9  A.   He did not.
10  Q.   Do you recall when he told you about these websites?
11  A.   Not specifically.
12  Q.   Is it possible that it could have been in early 2017?
13  A.   It's possible.
14  Q.   But, you're not sure one way or another?
15  A.   I do not have specific knowledge of dates of that.
16              MR. MAYER:  Okay.
17              Nothing further.  Thank you.
18              THE COURT:  Mr. Fredin.
19                    REDIRECT-EXAMINATION
20  BY RESPONDENT FREDIN:
21  Q.   Is it possible that these websites were created by
22       someone else?
23              MR. MAYER:  Objection -- well, never mind.
24              Withdrawn, I apologize.
25              THE COURT:  You can answer.
```

```
 1                THE WITNESS:  It is possible.
 2   BY RESPONDENT FREDIN:
 3   Q.  Is it possible that someone else may have felt
 4       attacked by Catherine Schaefer, because she has
 5       attacked many men, correct?
 6                MR. MAYER:  Objection; calls for the
 7           witness to speculate, argumentive, and compound
 8           question.
 9                THE COURT:  What's your question?
10                RESPONDENT FREDIN:  Did I ever tell you
11           anyone else who may have created the websites?
12                MR. MAYER:  Objection; hearsay.
13                THE COURT:  Sustained.
14   BY RESPONDENT FREDIN:
15   Q.  Is it possible that these websites were created prior
16       to November of 2016?
17                MR. MAYER:  Objection; calls for the
18           witness to speculate.
19                THE COURT:  Overruled.
20                You can answer.
21                THE WITNESS:  It's possible.  I don't know
22           the exact dates, though.
23   BY RESPONDENT FREDIN:
24   Q.  Do you recall me moving to Wisconsin in mid-to-late
25       2016?
```

REDIRECT-EXAMINATION: RYAN FREDIN

1  A. I don't remember.
2  Q. Did I --
3           THE COURT: Hold on a minute.
4           Deputy, I don't know who is in charge, but
5      will whoever is in charge, please approach.
6      (WHEREUPON, a brief discussion was held off
7      the record.)
8           THE COURT: All right.
9           Let's -- I hate to do this, but we're going
10     to have to --
11          We have a Deputy available to transport you
12     until 5:00 p.m. So, Mr. Fredin, what I am
13     looking at is we need to finish up with this
14     witness in five minutes or less.
15          RESPONDENT FREDIN: Okay.
16          THE COURT: That means that I need you to
17     finish. I will give you three or four minutes
18     more. And then after that, you will get ten
19     minutes apiece to close.
20          All right? We're going to be done with by
21     5:00 p.m.
22          RESPONDENT FREDIN: Okay.
23          THE COURT: Okay. All right.
24 BY RESPONDENT FREDIN:
25 Q. Do you recall me working with anyone else in the

```
 1     creation of these alleged websites?
 2  A. Yes.
 3  Q. Is it possible that any of the websites that were
 4     created were up for, merely, a day or two?
 5  A. It's possible.  I think the bigger piece, too, is I
 6     think that you may have lost control, because there
 7     is a third party, and that third party is not me.
 8  Q. Is it possible that I don't know who that third party
 9     is?
10  A. I think you know who that third party is.
11  Q. Have you visited these websites?
12  A. No.
13  Q. Do you believe these websites to be active,
14     currently?
15  A. I don't know.  I haven't visited them.
16            RESPONDENT FREDIN:  No further questions.
17            THE COURT:  Recross.
18                  RECROSS-EXAMINATION
19  BY MR. MAYER:
20  Q. Do you know who this third party is that you and your
21     brother are talking about?
22  A. I do.
23  Q. What is his name?
24  A. Anthony Zappin.
25            MR. MAYER:  Nothing further.
```

FURTHER REDIRECT-EXAMINATION: RYAN FREDIN

```
1         THE COURT:  Mr. Fredin?
2             FURTHER REDIRECT-EXAMINATION
3  BY RESPONDENT FREDIN:
4  Q. Is it possible that I have no idea if a website is
5     created by another person, including the person that
6     you just mentioned?
7  A. It is possible that you would have no clue.
8  Q. Could he have created these websites?
9  A. He certainly could have.
10 Q. Did you witness this person creating the websites?
11 A. No.  I have never, actually, met this person.  I have
12    talked to them over the phone and over texts.  I have
13    never, actually, physically -- I don't even know that
14    that's the person's real name.  I have never seen
15    identification or any proof of whoever that is.
16 Q. Have you ever seen me creating a website with this
17    person?
18 A. No.
19 Q. Have you ever seen me write content, which is shown
20    in the -- Unfortunately, you haven't seen the
21    exhibits -- But, have you seen any of the actual
22    content?
23         MR. MAYER:  I think we're outside the scope
24      of recross-examination.  I just asked about
25      identity.  I had two questions.
```

FURTHER RECROSS-EXAMINATION: RYAN FREDIN

```
 1                THE COURT:  I will allow it.
 2                THE WITNESS:  Could you restate the
 3       question, please?
 4  BY RESPONDENT FREDIN:
 5  Q.  Have you ever seen me create content for these
 6       websites?
 7  A.  Again, I haven't viewed the websites.  So, I wouldn't
 8       know if the content was that.  I do know of you
 9       sending content to this third party.  And, I mean, I
10       know that that's happened.  I have been copied on
11       some of those e-mails.
12  Q.  Could this person have posted the content without my
13       consent?
14  A.  Certainly could have.
15  Q.  Is this person located in Minnesota?
16  A.  No.
17  Q.  Is this person located in Ramsey County?
18  A.  No.
19  Q.  Is this person located in Pennsylvania?
20  A.  No.
21                RESPONDENT FREDIN:  No further questions.
22                MR. MAYER:  Just a couple, if I may?  Do we
23       have time, Your Honor?
24                THE COURT:  Sure.
25                FURTHER RECROSS-EXAMINATION
```

FURTHER RECROSS-EXAMINATION: RYAN FREDIN

```
 1  BY MR. MAYER:
 2  Q.  Now, earlier when you weren't here, your brother
 3      testified that he couldn't remember who the third
 4      person was.  Has your brother told you before that he
 5      knew the identity of this third person?
 6  A.  He introduced me to the third party.
 7  Q.  And based on the information that you were copied on,
 8      how extensive was the communication between your
 9      brother and this third person, Anthony Zappin?
10  A.  Extensive.
11  Q.  And when you say "extensive," do you mean 10
12      messages?  100 messages?  A week?  A month?  A year?
13  A.  I couldn't quantify it.
14  Q.  Is it possible that it has been going for over a year
15      and over a 100 messages?
16  A.  It's possible.
17  Q.  Now, earlier your brother testified that he never
18      sent any content that appeared on a number of
19      websites to Anthony Zappin.  Is it your testimony
20      today --
21              RESPONDENT FREDIN:  Objection; relevance.
22              MR. MAYER:  -- that you were copied on
23          messages that he did sent content to
24          Anthony Zappin?
25              RESPONDENT FREDIN:  Calls for legal
```

RAMSEY COUNTY DISTRICT COURT

November 20, 2018, Page 79

```
 1         conclusion.
 2              THE COURT:  Overruled.
 3              THE WITNESS:  It wasn't so much as content
 4         -- it was the story of what was happening.  So, I
 5         don't know.  Again, I haven't viewed these
 6         websites.  So, I don't know if it's content.
 7         But, I mean, the narrative of what has happened
 8         to Brock's life was shared with this third party.
 9  BY MR. MAYER:
10  Q.  And those were on e-mails that you have seen
11      personally that you were a party to?
12  A.  Yes.
13  Q.  And at any point, did you brother send any images or
14      screenshots or photos or anything like that to
15      Anthony Zappin on anything that you were contacted on
16      -- or were copied on?  Excuse me.
17  A.  Without reviewing -- I mean, without reviewing
18      e-mails, I wouldn't be able to say affirmatively that
19      they were screenshots or any -- you know, I wouldn't
20      be able to speak, specifically, to the content of
21      those e-mails, other than the subject line that "they
22      have been added."
23              MR. MAYER:  Thank you.  Nothing further.
24              THE COURT:  Very briefly.
25                   FURTHER REDIRECT-EXAMINATION
```

FURTHER REDIRECT-EXAMINATION: RYAN FREDIN

```
 1  BY RESPONDENT FREDIN:
 2  Q.  Has this person, to the best of your knowledge,
 3      created websites about other people?
 4  A.  Yes.
 5  Q.  Is it possible that I would have no idea that they
 6      created or used any content, whatsoever, for these
 7      websites?
 8  A.  Yes.
 9  Q.  Do you believe any communication that you,
10      personally, witnessed was in an effort to harass
11      Ms. Schaefer?
12  A.  No.
13              RESPONDENT FREDIN:  No further questions.
14              MR. MAYER:  Nothing.  Thank you.
15              THE COURT:  All right.
16              Thank you.  You can step down.
17              THE WITNESS:  May I stay in the courtroom?
18              THE COURT:  Yes.  You are going to have to
19      give up your phone if you are going to stay in
20      the courtroom.  All right.
21              The petitioner is the one seeking the
22      restraining order.
23              Go ahead, Mr. Mayer.
24              MR. MAYER:  Thank you, Your Honor.
25              The question before this Court is whether
```