# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

Brock Fredin,

                         Plaintiff,                Court File No. 17-cv-03058 (SRN/HB)

v.

Lindsey Middlecamp,

                         Defendant.

_____


Brock Fredin,

                         Plaintiff,                Case File No. 18-cv-466 (SRN/HB)

v.

Grace Elizabeth Miller, and
Catherine Marie Schaefer,

                         Defendants.

_____

### Defendants' Reply Memorandum in Support of Motion for Preliminary Injunction and Motion to Declare Plaintiff a Vexatious Litigant and Memorandum in Opposition to Plaintiff's Motion for Sanctions

Defendants Lindsey Middlecamp, Grace Miller, and Catherine Schaefer, by and

through their undersigned Counsel, hereby submit this reply memorandum in support of

their motion for a preliminary injunction (Doc. 189, 212), their motion to declare Plaintiff

Brock Fredin ("Fredin") a vexatious litigant (Doc. 186, 209), and in opposition to Fredin's motion for "cross sanctions" (Doc. 202, 233)[1].

## INTRODUCTION

Plaintiff Fredin continues to victimize Defendants, their *pro bono* attorneys, the judicial officers overseeing the parties' proceedings, the Court's clerks, jurors who served on juries that convicted Fredin of criminal violations of Defendants' HROs against him, and even the staff attorneys of the Office of Lawyers Professional Responsibility in Minnesota and Wisconsin who declined to investigate Fredin's meritless claims of misconduct against Defendant Middlecamp and her counsel.

Fredin has registered and created numerous websites and YouTube videos that disparage and humiliate individuals associated with Defendants and in many instances misrepresents the creator of the website as "Brought to you by BLACK LIVES MATTER." *See* Doc. 215-7. Each of the individuals Fredin has attacked are intimately connected to the current proceedings before this Court. Fredin's smear campaign is designed to directly threaten Defendants, malign this Court, defame the legal system, and discourage not only *pro bono* representation of Defendants, but indeed, any involvement or participation in cases involving Fredin. The message is clear: whether you are a court reporter, a juror, a clerk, or an attorney, any connection to the Defendants or Fredin's claims against them will be punished in the most public way possible.

---

[1] The filings in these two matters are identical and, consequently, throughout the brief reference will only be made to document numbers associated with 17-cv-03058.

The campaign is also intended to improperly create leverage in settlement. *See* Doc. 215-17 ("Let's see if you're telling the truth and if you're negotiating in good faith. The website and video (which only contains truthful information) has been removed. I expect reasonable terms by end of the working day (5PM CST)").

Since the filing of Defendants' motion on October 12, 2020, a number of additional websites and YouTube videos have appeared, including two YouTube videos attacking Magistrate Bowbeer and criticizing her handing of these cases posted mere hours after the brief was filed:

- https://www.youtube.com/watch?v=cKZQ-cgv974 (published on October 12, 2020 and juxtaposing images of Judge Bowbeer with footage depicting a woman's hand removing a condom from a carrot.)

- https://www.youtube.com/watch?v=SV7QSEob3fI (published on October 12, 2020 and described with a hashtag "#laughingstockofthe8thcircuit".)

Also, within hours of the October 12, 2020 TRO filing, Fredin emailed Defendant's counsel a simple taunting message: "Karl Johann, You forgot a bunch of sites and videos." Second Breyer Declaration ("Sec. Breyer Decl.") ¶ 2.

To date, it is unclear whether Defendants have identified the full extent of Fredin's efforts in registering websites and publishing YouTube videos. However, additional content has surfaced. In addition to the 22 websites identified in the initial motion, Fredin has registered and created additional disparaging websites and YouTube videos including the following:

- <u>Jamie-kreil.com</u>: Registered October 21, 2020. Ms. Kreil has alleged that Fredin raped her. Her tweet is the subject of the defamation claim now pending before this court. Fredin has also sued her in a separate suit pending before this court.

- <u>Attorneykjonbreyer.com</u>: Registered October 21, 2020. This is the second website created attacking Defendants' *pro bono* counsel. An additional YouTube video has also been posted by Fredin attacking Defendants' counsel and his wife since the October 12, 2020 TRO filing: https://www.youtube.com/watch?v=EqeNUf3CXpQ (published October 17, 2020.)

- <u>Careyjeanbollinger.com</u>: Registered October 21, 2020. This is the second website created regarding Ms. Bollinger. She served on the jury that convicted Fredin of stalking Defendant Miller.

- <u>Lawyerhayneshansen.com</u> and <u>Hayneshansen.net</u>: Both registered October 21, 2020. Mr. Hansen is an associate at Robins Kaplan and is one of the *pro bono* attorneys representing Jamie Kreil. Two YouTube videos have also been published by Fredin attacking Mr. Hansen since the October 12, 2020 TRO filing: https://www.youtube.com/watch?v=LNOTm082pS8 (published October 19, 2020, alleging that Mr. Hansen "pees sitting down,") and https://www.youtube.com/watch?v=8OKrqkvOCZM (published October 27, 2020, featuring sexually explicit language and homophobic innuendo.)

- <u>Enakovacevic.com</u>: Registered October 21, 2020. Ms. Kovacevic is an associate at Robins Kaplan and is one of the *pro bono* attorneys representing Jamie Kreil. Fredin published a YouTube video attacking Ms. Kovacevic on October 19, 2020. https://www.youtube.com/watch?v=lUGyNosr974

- <u>Annelockner.com</u> and <u>Annmlockner.com</u>: Both registered October 21, 2020. Ms. Lockner is a partner at Robins Kaplan and is one of the *pro bono* attorneys representing Jamie Kreil. Fredin also published three YouTube videos attacking Ms. Lockner since Defendant's October 12, 2020 TRO: https://www.youtube.com/watch?v=tdyWcPA5k0I (published October 19, 2020); https://www.youtube.com/watch?v=QFVYNQnIecg (published October 27, 2020); and https://www.youtube.com/watch?v=_JSkH5r52ao (published November 11, 2020.) Fredin added a comment on November 15, 2020 to the most recent video which reads: "We double as the official PornHub sanctioned and accredited Lawyer Continuing Education ("CLE") and provide credits yearly to active attorneys. For example, Anne M. Lockner, has as of right now, has at least 817 credits towards her yearly CLE requirement for being Minneapolis' sexiest attorney!!! Let's give the sexy young lady some applause!!! She will be coming on again in another hour so get your dollars ready!! She's also offering half priced retainers, err, lap dances for the rest of her shift!!!"

- <u>Refereejamesstreet.com</u>: Registered October 15, 2020. Referee James Street is a Ramsey County District Court Referee who presided over HRO proceedings

involving Fredin and Middlecamp. Fredin sued Referee Street in this Court 19-CV-2864.

Although Fredin's latest websites and YouTube videos do not reference any of the Defendants by name, they are clearly aimed at and are intended to reach Defendants. For example, many of Fredin's videos include disparaging references to a United States Attorney (Middlecamp) and a "mule in the military" (an apparent reference to Miller who is in the Air Force.) In addition, on November 11, 2020, Fredin published a new video targeting Anne Lockner which includes a message directly taunting Miller with sexual innuendo:



While the content of these websites and videos are hurtful and demeaning, they are even more damaging because the URL contains the name of the person Fredin seeks to smear. Consequently, these vile websites and videos appear any time an online search for these individuals is performed. In certain circumstances, Fredin has even purchased ad banners through Google so that the disparaging website is the first to appear in the search.

5

Despite these childish and illegal acts,  Fredin proclaims repeatedly that "[u]nder no conditions will any of these websites or videos ever be taken down." (Doc. 234 at 5.) This Court must employ its inherent power and order these websites and YouTube videos be taken down and that Fredin be restrained from creating new ones[2].

<u>**ARGUMENT**</u>

**I.      Preliminary Injunction**

Fredin contends that Defendants do not have standing to request relief that benefits the non-parties Fredin has attacked and humiliated online. He claims that in order for a temporary injunction to issue regarding these websites and YouTube videos, that each affected individual needs to file their own lawsuit. Fredin misunderstands the nature of Defendants' motion and ignores the inherent power of this Court.

Federal courts have the inherent power to control the conduct of those who appear before them, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991), to issue an injunction against litigants who harass their opponents, *Yates v. Belli Deli*, 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007)  and prohibit a party from threatening or harassing defendants' counsel, *Test Masters Educational Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005).

Courts "have inherent power, within certain limits, to control the conduct of the parties who have subjected themselves to the jurisdiction of the courts. Injunctive relief, where warranted, can be a useful tool to aid a court in controlling the conduct of litigants." *Myart v. Taylor*, 2016 WL 5376227 at *4 (W.D. Tex Sept. 26, 2016) (quoting *Lewis v. S.S.*

---

[2] A proposed order accompanies this memorandum detailing the requested relief.

*Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005)("courts do have the power to enjoin harassing communication" especially when a party has demonstrated "immaturity" and mean-spiritedness".)

Fredin's disparaging websites and videos arise from the context of this lawsuit and his claims against Defendants. They were created during the course of this lawsuit to send a message to Defendants, Defendants' counsel, and this Court, that Fredin intends to threaten and harass those that hold him accountable for his misconduct. The websites and videos were also created during a time Fredin was retaliating against the rulings of this Court and was attempting to force settlement. Conduct that Defendants might not have standing to pursue under different circumstances becomes so here, because it is obvious that Fredin is improperly trying to intimidate anyone who dares to oppose him. Each and every website and video involve an individual intimately related to the actions complain of in the pleadings before this Court (with the sole exception of two videos attacking Matthew Cooper, a judge associated with Fredin's friend Anthony Zappin.) Several of the videos directly attack Defendants' counsel and the Magistrate Judge presiding over these cases. The Court is well within its inherent power to order the removal of this online content and prohibit Fredin from creating new content to replace it.

If the Court does not exercise its inherent power to end the harassment, then Fredin will get what he ultimately desires, additional lawsuits initiated by those who he believes have wronged him, which in turn will allow him to continue to use the dockets of the Courts

to attack his victims. Defendants' motion to declare Fredin a vexatious litigant seeks to prevent Fredin from using the Courts in this manner.

### A.     Success on the Merits

This factor should be understood as a determination of whether the moving party has shown the need for an injunction. *Myart*, 2016 WL 5376227, at *4. Fredin claims that Defendants will not succeed on the merits of their requested injunction because the First Amendment protects his hate speech. Fredin is incorrect.

Courts have made a distinction between First Amendment communication and harassment. *See Singh*, 428 F.3d at 580; *R.A.V.*, 505 U.S. at 389. Minnesota Courts have specifically held that the speech implicated here is not protected by the First Amendment *Dunham v. Roer*, the 708 N.W.2d 552, 565-66 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006).  This is consistent with Courts around the country. *See, e.g., United States v. Osinger*, 753 F.3d 939, 946 (9th Cir. 2014)(rejecting the defendant's argument that he engaged in protected speech because the defendant "engaged in a course of conduct 'with the intent ... to harass, or intimidate, or cause substantial emotional distress to' [the victim]" by sending threatening text messages, designing a false Facebook page, and sending emails to the victim's co-workers containing nude photographs of the victim).

Fredin states that "Defendants and Attorney Breyer are all public officials", seemingly to insinuate that his harassment of them is permissible[3]. First, neither

---

[3] None of the purported biographical information regarding Defendants  has anything to do with arguing that Defendants are public figures. Instead, Fredin's recitation of Defendants'

Defendants nor their counsel is a public official. Even if Defendants and their counsel were public figures, it would only mean that they would have to establish that Fredin acted with actual malice – a task easily met under these circumstances. The First Amendment prohibits public officials or public figures from recovering damages for defamatory falsehoods concerning issues of public interest and concern unless they prove "that the statement was made with 'actual malice' -- that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 956 (8th Cir. 2020) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). Even though Defendants and their counsel are not public figures and, therefore, not held to this higher standard, they would have no trouble proving that Fredin's conduct arises to actual malice. However, the issue at this stage is not quantifying Defendants' damages, it is whether there is sufficient proof of Fredin's misconduct to establish a need for the preliminary injunction to issue. This burden has been met.

### B.      Threat of Irreparable Harm

Fredin argues that irreparable harm does not exist as Defendants are not the subject of his websites and videos. Fredin is mistaken.

While Defendants are not expressly named in the smear campaign, they are described in many of the videos and are the intended audience. By attacking their counsel

---

biographical information is intended to demonstrate that he is still stalking them in violation of the HROs.

and the other *pro bono* attorneys that have assisted them, Fredin is intimidating Defendants and actively trying to dissuade *pro bono* representation of Defendants. Fredin's vicious attack on the judges who issued and enforced Defendants' HROs and Fredin's disgusting YouTube videos concerning the Magistrate Judge in these cases serve a dual purpose. First, they are intended to directly threaten Judges that rule in Fredin's cases and, second, they are intended to send a direct message to Defendants that Fredin has no bounds of decency and will even go after the judiciary. The same is true with regard to Fredin's attacks upon the members of the Minnesota Office of Lawyers Professional Responsibility and Wisconsin Office of Lawyer Regulation, who refused to investigate Fredin numerous meritless complaints regarding Defendant Middlecamp and her counsel.

On November 16, 2020 Fredin wrote to the Minnesota Appellate Court Justices empaneled to hear Fredin's appeal of Middlecamp's 50 -year HRO. Sec. Breyer Decl. ¶3. In the letter Fredin demands the names of the Judges' clerks and staff who took part in the appeal – presumably so he can make websites and videos about them when the ruling is issued. *Id*. Fredin even includes links to websites and YouTube videos he created for Judge Patrick Diamond, one of the Judges involved in Middlecamp's HRO, as a direct threat to the Justices and their staff. *Id*. He then misrepresents the findings of this Court claiming that Judge Nelson "released an order repeatedly stating several times that Ms. Middlecamp admitted to 'fabricat[ing] . . .unique false information' in an effort to assault and terrorize me." *Id*.

Irreparable harm exists because Fredin is directly threatening the judiciary and, simultaneously, Defendants ability to seek redress for Fredin's actions. Irreparable harm

also exists by virtue of the intimidation and constant threat of the existing or newly developed online smearing campaign. Without a preliminary injunction, Defendants and those associated with their cases will suffer irreparable harm. Accordingly, this Court should issue a preliminary injunction order.

### C.    Balance of the Harms

Fredin claims that he has been harmed by "torture, extrajudicial renditions, thousands of dollars in legal expenses, loss of a connection to his beloved dogs, loss of access to his dying mother, ruined career, and false imprisonment." All of this "harm" was self-inflicted as a result of Fredin's own misconduct.  In any event, these are all purported harms that Fredin admits have already occurred and, therefore, are not harms that would result from the issuance of the requested temporary restraining order.

Here, there is no identifiable injury that Fredin may suffer if he is ordered to cease his harassment. Maintaining the status quo, in which Fredin is prohibited from causing irreparable harm, will not affect his interests in any material way. Therefore, the balance of the harms weighs in favor of granting the motion for a preliminary injunction.

### D.    Public Interest

Finally, there is strong public interest in ensuring the fair administration of justice. Fredin's smear campaign is designed to threaten the fair administration of justice by attacking all facets of the judicial system, including Defendants, their counsel, Judges, court staff, jurors and members of the Office of Professional Responsibility.  A preliminary injunction would also ensure that Defendants and their counsel can fully participate in this lawsuit without the fear of harassing communications from Fredin.

4830-6889-5698.1

There can be no doubt that that is a strong public interest in restraining individuals such a Fredin who employ threats, intimidation, and pure harassment in order to thwart the justice system and disrupt the fair and civil proceedings of this Court. A preliminary injunction is warranted.

### E.    No Bond Should be Required

Federal Rule of Civil Procedure 65 provides that the Court "may issue a preliminary injunction ... only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). The "amount of the bond rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion." *Stockslager v. Carroll Elec. Coop. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976).

Courts in this circuit typically have required a bond before issuing a preliminary injunction, "but exceptions have been made where the defendant has not objected to the failure to require a bond or where the damages resulting from a wrongful issuance of an injunction have not been shown." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Engr's*, 826 F.3d 1030, 1043 (8th Cir. 2016) (citations omitted).    Here, Fredin has not objected to a waiver of the bond requirement nor has he demonstrated any costs or monetary damages that may result from issuance of the injunction. Under the circumstances, the Court should exercise its discretion and waive Rule 65(c)'s bond requirement. *First Lutheran Church v. City of St. Paul*, 326 F. Supp. 3d 745, 769 (D. Minn. 2018).

## II.      Fredin's Motion for "Cross-Sanctions" is Meritless

Although Fredin asserts that he is bringing a motion for "cross sanctions" he makes no effort to articulate the basis for the motion or the specific conduct Fredin claims is sanctionable.  In his rambling and often incoherent introduction to his brief, Fredin makes a number of grandiose allegations (none of which are supported by any evidence) proclaiming that Defendants and their Counsel are running a "corrupt *pro bono* scheme." Later, Fredin claims that "Attorney Breyer and Kutak Rock is (sic) operating in (sic) some racketeering scheme with numerous attorneys to provide free legal representation from top tier high dollar Minneapolis law firms to anyone opposed to Plaintiff . . ." Lastly, Fredin appears to argue that Defendants should be sanctioned for having filed their preliminary injunction motion.

 Rule 11 provides that, by presenting a motion to a court, the attorney certifies that to the best of that person's knowledge, information, and belief, formed after an inquiry under the circumstances "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). In determining whether sanctions are warranted, the court considers "whether a reasonable and competent attorney would believe in the merit of [the] argument." *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003)(internal quotations omitted).

Providing *pro bono* services to Fredin's victims is neither a "corrupt *pro bono* scheme" nor a "racketeering scheme." It is out of a moral and ethical duty that lawyers represent those who cannot adequately represent themselves. *See Mallard v. U.S. Dist.*

*Court for S. Dist. of Iowa,* 490 U.S. 296, 310(1989) (A "lawyers' ethical obligation to volunteer their time and skills *pro bono* [] is manifest.") These obligations "do not exist to prompt the lawyer to be a 'good' person, respected in the profession. Rather, they are a recognition of the critical role of the lawyer in ensuring the fair and just adjudication of disputes, and the need for such advocacy in ensuring the existence of the system." *Bothwell v. Republic Tobacco Co.*, 912 F. Supp. 1221, 1234 (D. Neb. 1995). Rule 11 applies to pleadings and motions filed with the Court. It does not apply to counsel's arrangement to provide free legal services to those who Fredin harasses.

To the extent Fredin's motion for sanctions is directed at Defendants' preliminary injunction motion, Defendants' motion is firmly grounded in the law and is supported by Fredin's admitted misconduct. Merely because Fredin prefers not to face a motion that requires his disparaging websites and YouTube videos be removed, and that he be prohibited from creating new ones, is not the proper basis to assert a sanctions motion, particularly one that fails to adequately identify the purported sanctionable conduct. Fredin's motion should be denied.

Fredin also falsely claims that Middlecamp sent "six threatening messages" to Fredin through his YouTube account on October 12, 2020. Fredin apparently made the same accusation to the Hudson, Wisconsin police department, which in turn contacted Middlecamp to discuss the allegation. As Middlecamp told law enforcement and reiterates under penalty of perjury, she did not author any communications or comments to Fredin or his YouTube channel, nor did she direct anyone else to do so. (Middlecamp Decl. ¶ 2.) Middlecamp sought and obtained an HRO in order to cease unwanted attention from

14

Fredin; she has no interest or intention of voluntarily communicating with him on any platform. Tellingly, the messages Fredin includes in his Declaration are all redacted by Fredin so as to hide information from this Court and Defendants that would likely result in the identification of the sender.

Nonetheless, and with no evidence to support his claim, Fredin asks this Court to sanction Middlecamp for messages she did not write. Fredin characterizes the messages as "threatening and abusive" and analogizes this case to cases in which courts have imposed sanctions against litigants for sending threatening letters. Fredin's dissonance is staggering: he claims on the one hand that he should not be punished for making websites and videos which contain baseless sexist, homophobic, and racist language, but in turn calls the police and seeks sanctions when an unidentified person submits several factually accurate comments explaining the procedural background motivating his harassing content. Fredin's motion for sanction should be denied.

### III.    Fredin is a Vexatious Litigant

Fredin makes little to no effort in refuting the basis for Defendants' motion seeking to declare Fredin a vexatious litigant. Instead, Fredin claims that Defendants' motion "is not based on any actual vexatious litigation in any court particularly the District of Minnesota or the Eighth (8th) Circuit." (Doc. 234 at 4.) And that "Defendants bring in pleadings that are irrelevant and not part of this proceeding." (*Id.*) As detailed in Defendants' initial brief (Doc. 211), Fredin has filed thousands of pages of pleadings across twelve lawsuits, numerous appeals, and writs.

However, it is not the sheer volume or number of lawsuits he has filed that make Fredin a vexatious litigant, it is his propensity for using litigation to continue to harass and abuse his victims and force them to respond to frivolous and frequently incomprehensible allegations. *See In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988)(Defendants have a right to be free from "harassing, abusive, and meritless litigation," and federal courts have "a clear obligation to exercise their authority to protect litigants from such behavior."); *Brown v. Gibson*, 571 F. Supp. 1075, 1077 (W.D. Mo. 1983)(An injunction may issue against a plaintiff who exhibits "a propensity for filing numerous meritless and vexatious lawsuits which clutter the docket of this court and put defendants to the time and expense of answering frivolous and frequently incomprehensible allegations.")

The amount of redundancy in the allegations and claims in the now thirteen lawsuits he has filed is extraordinary. Every lawsuit fredin has filed includes allegations and aspersions regarding Defendants Middlecamp, Miller, and Schaefer, even if they are not named as a party. Every lawsuit repeats the same allegations concerning defendants reporting Fredin's harassment, being awarded HROs, and the criminal prosecutions stemming from Fredin's violation of those orders.

To avoid dismissal of his claims, Fredin filed successive, overlapping lawsuits to ensure continued access to Defendants, even though the HROs sought to prohibit such direct communication. Ultimately, Fredin has produced zero evidence supporting any of his claims and instead appears content spewing conspiracy theories. As demonstrated by the content of his filings, he uses the courts not as place to seek redress, but rather as an instrument to mock, disparage and humiliate his victims. When he suspects one case may

16

be unsuccessful, he files a new case preemptively to ensure a constant barrage against Defendants. For example: on October 16, 2020, while summary judgment was pending in the current case and after Defendants' motion to declare Fredin a vexatious litigant was filed, Fredin initiated a new disciplinary complaint against Middlecamp raising the same issues and events from 2017 and 2018 that he has hashed again and again. (Middlecamp Decl. ¶ 3.) Fredin's complaint was yet again declined for investigation, but not without harm: the complaint was, necessarily, mailed to Middlecamp at her place of work, allowing Fredin yet another direct line of abusive communication.

For nearly four years Defendants have had to endure Fredin's vexatious litigation. All of Fredin's lawsuits have been dismissed for failure to assert a claim. Fredin has undoubtedly had ample time and access to the courts to pursue his claims. He must now be prohibited from pursuing further meritless litigation involving Defendants.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue a preliminary injunction order, declare Fredin a vexatious litigant and deny Fredin's motion for sanctions.

4830-6889-5698.1

Date:  November 17, 2020              **KUTAK ROCK LLP**

                                     By: _/s/ K. Jon Breyer_____
                                     K. Jon Breyer (302259)
                                     60 South Sixth Street
                                     Suite 3400
                                     Minneapolis, Minnesota 55402
                                     Telephone:    (612) 334-5057
                                     Jon.breyer@kutakrock.com

                                     ***Pro Bono Counsel to Defendants Lindsey
                                     Middlecamp, Grace Elizabeth Miller and
                                     Catherine Marie Schaefer***